**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Teamsters Local Union No. 727 Health & Welfare Fund, by and through its Board of Trustees, John Coli Jr., Caleen Carter-Patton, Nick Micaletti, Mike Degard, Carl Tominberg, Robert Sheehy, Greg Youmons, and John McCarthy, | ) ) ) ) ) | Case No. |
| | ) | |
| and | ) | Hon. |
| | ) | |
| Teamsters Local Union No. 727 Pension Fund, by and through its Board of Trustees, John Coli Jr., Caleen Carter-Patton, Nick Micaletti, Mike Degard, David Glass, Sean McGough, Carl Tominberg, Robert Sheehy, Greg Youmons, John McCarthy, Robert Higgins, and John Nesse | ) ) ) ) ) ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| Teamsters Local Union No. 727 Legal and Educational Assistance Fund, by and through its Board of Trustees, John T. Coli, Jr., Michael DeGard, Caleen Carter-Patton, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy, | ) ) ) ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| Parking Industry Labor Management Committee Trust, by its Trustees, John Coli, Jr., James Buczek, Michael Prussian, and Nicholas Micoletti, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| 209 East Lakeshore Drive Corp., | ) ) | |
| | ) | |
| Defendant. | ) | |

**<u>COMPLAINT</u>**

Plaintiffs Teamsters Local Union No. 727 Health and Welfare Fund, Teamsters Local

Union No. 727 Pension Fund, and Teamsters Local Union No. 727 Legal and Educational Fund,

1

(collectively, "Plaintiffs" or the "Funds"), pursuant to the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145 and the Labor Management Relations Act of 1947, as amended (the "LMRA"), 29 U.S.C. §185, complain as follows against Defendant 209 East Lakeshore Drive Corp. ("Defendant" or "209 East").

## Nature of the Case

1. Defendant knowingly violated ERISA and breached collective bargaining agreements ("CBAs") with Plaintiffs by failing and refusing to pay required contributions.

2. Plaintiffs request a judgment that orders Defendant to: (a) pay amounts equal to all contributions found to be owed to each Plaintiff by a payroll audit conducted by Plaintiffs' auditors; (b) pay any additional amounts that may be found due and owing to Plaintiffs during the pendency of this litigation; and (c) pay all interest, liquidated damages, audit fees, attorneys' fees, and costs owed to Plaintiffs.

## Jurisdiction, Venue, and Parties

3. This dispute arises under the laws of the United States.

4. The Court has jurisdiction over this action pursuant to section 301(a) of the LMRA, 29 U.S.C. § 185(a); and Sections 502(a)(3), 502(e)(1), 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), 1132(g)(2) and 1145.

5. The Defendant in this action is in Cook County, Illinois. Therefore, jurisdiction in the Eastern Division of the U.S. District Court for the Northern District of Illinois is appropriate.

6. Venue is proper in this District pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a); Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2); and 28 U.S.C. § 1391(b).

7. **Plaintiff Welfare Fund.** Plaintiff Teamsters Local Union No. 727 Health & Welfare Fund ("Welfare Fund") is a jointly administered multiemployer welfare plan within the

meaning of Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6), and §§ 3(1) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002 and (37)(A). The Welfare Fund's business address is 1300 W. Higgins Road, Suite 303, Park Ridge, IL 60068.

8. The Welfare Fund is administered by a Board of Trustees ("Welfare Trustees") in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and exists for the exclusive purpose of providing health care benefits to its participants and defraying the reasonable expenses of administering the welfare plan, in accordance with Section 404 of ERISA, 29 U.S.C. §1104.

9. The Welfare Fund receives contributions from employers who are parties to a collective bargaining agreement with the International Brotherhood of Teamsters Local Union No. 727 (the "Union").

10. John Coli Jr., Caleen Carter-Patton, Nick Micaletti, Mike Degard, Carl Tominberg, Robert Sheehy, Greg Youmons, and John McCarthy are Trustees of the Welfare Fund pursuant to the Welfare Fund's Agreement and Declaration of Trust ("Welfare Fund Trust Agreement"). *Exhibit A, Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund.* Coli Jr., Carter-Patton, Micaletti, Degard, Tominberg, Sheehy, Youmons, and McCarthy are fiduciaries of the Welfare Fund as that term is defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

11. The business address for Coli, Jr., Carter-Patton, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy as Trustees of the Welfare Fund is 1300 W. Higgins Road, Suite 303, Park Ridge, IL 60068.

12. **Plaintiff Pension Fund.** Plaintiff Teamsters Local Union No. 727 Pension Fund ("Pension Fund") is a jointly administered, multiemployer employee pension plan within the

meaning of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and sections 3(2) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(3) and (37)(A). The Pension Fund's business address is 1300 W. Higgins Road, Suite 303, Park Ridge, IL 60068.

13. The Pension Fund is administered by a joint labor-management Board of Trustees (the "Pension Trustees") in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and exists for the exclusive purpose of providing retirement benefits to its participants and beneficiaries and defraying the reasonable expenses of administering the plan, in accordance with section 404 of ERISA, 29 U.S.C.§ 1104. The Pension Fund receives contributions from employers that are parties to collective bargaining agreements with the Union.

14. Plaintiffs John Coli Jr., Caleen Carter-Patton, Nick Micaletti, Mike Degard, David Glass, Sean McGough, Carl Tominberg, Robert Sheehy, Greg Youmons, John McCarthy, Robert Higgins, and John Nesse are Trustees of the Pension Fund pursuant to the Pension Fund's Agreement and Declaration of Trust ("Pension Fund Trust Agreement"). *Exhibit B, Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund.* Coli, Jr., Carter-Patton, DeGard, Micaletti, McGough, Tominberg, Sheehy, Youmons, McCarthy, Higgins, and Nesse are fiduciaries of the Pension Fund as that term is defined in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

15. The business address for Coli, Jr., Carter-Patton, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy as Trustees of the Pension Fund is 1300 W. Higgins Road, Suite 303, Park Ridge, IL 60068.

16. **Plaintiff Legal Fund.** Plaintiff Teamsters Local Union No. 727 Legal & Educational Assistance Fund ("Legal Fund") is a jointly administered, multiemployer employee benefit fund within the meaning of Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6), and

4

Sections 3(1) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002 and (37)(A). The Legal Fund's business address is 1300 W. Higgins Road, Suite 303, Park Ridge, IL 60068.

17. The Legal Fund is administered by a Board of Trustees ("L&E Trustees") and exists for the exclusive purpose of providing legal and educational assistance to its participants and defraying the reasonable expenses of administering the Legal Fund, in accordance with Section 404 of ERISA, 29 U.S.C. §1104. The L&E Fund receives contributions from employers that are parties to a collective bargaining agreement with the Union.

18. Plaintiffs John Coli Jr., Caleen Carter-Patton, Nick Micaletti, Mike Degard, Carl Tominberg, Robert Sheehy, Greg Youmons, and John McCarthy are Trustees of the L&E Fund pursuant to the L&E Fund's Agreement and Declaration of Trust. *Exhibit C. Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Legal and Educational Assistance Fund*. Coli, Jr., Carter-Patton, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy are fiduciaries of the Plan as that term is defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

19. The business address for these Plaintiffs as Trustees is 1300 W. Higgins Road, Suite 303, Park Ridge, IL 60068.

20. **Defendant 209 East Lakeshore Drive Corp**. Defendant is an Illinois corporation. Defendant manages the condominium property at 209 East Lakeshore Drive in Chicago.

21. Defendant is an employer within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a); and Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

22. Defendant is a member of the Apartment Building Owners and Managers Association ("ABOMA").

23. By virtue of its membership in ABOMA, Defendant is bound to a Collective Bargaining Agreement ("CBA") with a term of November 1, 2021 to October 31, 2026 with the International Brotherhood of Teamsters, Local Union No. 727. A copy of the CBA is attached as *Exhibit D*.

24. Under the terms of the ABOMA CBA, Defendant is obligated to make contributions to the Funds on behalf of individuals whose employment is covered by the CBA.

25. The individuals covered by the CBA worked as parking lot attendants and served Defendants' condominium owners at 209 East Lakeshore Drive in Chicago.

<u>**Collective Bargaining Agreement Obligations**</u>.

26. Article 20 of the CBA sets out Defendant's obligation to contribute to the Pension, Welfare Fund and L&E Funds. *Exhibit D, p. 15-18.*

27. Sections 20.1 and 20.4 of the CBA set forth the contribution rate to be paid by Defendant to the Welfare Fund on behalf of employees covered by the CBAs.

28. Sections 20.2 and 20.4 set forth the contribution rate to be paid to the Pension Fund on behalf of employees covered by the CBAs.

29. Article 20.3 and 20.4 sets forth the contribution rate to be paid to the L&E Fund on behalf of employees covered by the CBAs.

**Trust Agreement Obligations**

30. By the execution of the CBA, Defendant authorized the "Trustees to enter into appropriate trust agreements necessary for the administration of such funds, and [t]hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority." *Exhibit D, § 20.8.*

6

31. Article 6, Section 6.01(b) of the Pension Fund's, Welfare Fund's, and the L&E Fund's respective Trust Agreements each include a provision for the collection of delinquent contributions, which states:

   a. The Trustees may compel and enforce the payment of Contributions in any manner which they deem proper but without limitation upon any rights and privileges the Union may have in this connection. *Exhibit A, Welfare Fund Trust Agreement p. 19, § 6.01(b); Exhibit B, Pension Fund Trust Agreement p. 18, § 6.01(b); Exhibit C, L&E Fund Trust Agreement pp. 18-19, § 6.01(b).*

32. Article 6, Section 6.02 of the Funds' respective Trust Agreements provides:

   a. The Trustees shall have the right to adopt rules and regulations relating to the collection of Employer Contributions, including provisions for time of payment, collection of interest, audit fees, attorneys' fees at the rate set by the Trustees in their sole discretion, costs, and liquidated damages as specified in this Section. An Employer in default as of the date established by the Collective Bargaining Agreement or the Trustees for payment of Contributions shall be liable for an additional amount of twenty percent (20%) of the delinquent payment or $50.00, whichever is greater, and interest at the rate set forth in the Plan or the rules and regulations [established by the Trustees]. *Exhibit A, Welfare Fund Trust Agreement pp. 19-20, § 6.02; Exhibit B Pension Fund Trust Agreement pp. 18-19, § 6.02; Exhibit C, L&E Fund Trust Agreement p.19, § 6.02.*

33. Additionally, Article 6, Section 6.03 of the Pension Fund's, Welfare Fund's, and the L&E Fund's respective Trust Agreements provides:

   a. Each Employer and its affiliated or related companies or businesses shall furnish to the Trustees on demand the names of all employees, their Social Security numbers, the time worked by each employee, the Contributions due or payable to the Trust Fund, and such other information, including cash journals, wage and payroll records, income tax records, and other business records, as the Trustees or their agents may reasonably require in connection with the administration of the Trust. The Trustees, or their authorized representative, shall have the right to examine and audit the pertinent books and records (as determined by the Trustees) of each employer and its affiliated or related companies whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. *Exhibit A, Welfare Fund Trust Agreement pp. 20-21, §*

> *6.03; Exhibit B, Pension Fund Trust Agreement p. 19, § 6.03; Exhibit C, L&E Fund Trust Agreement p. 20, § 6.03.*

34. Consistent with the Funds' respective Trust Agreements, the Trustees of each Plaintiff Fund established a policy for the collection of contributions which requires employers to submit signed remittance reports together with their monthly contributions. *Exhibit E, Collection Policy.*

35. The Trustees for Plaintiffs also established a policy for conducting payroll audits of employers. *Exhibit F, Audit Policy.*

36. Copies of Plaintiffs' Collection Policy and the Audit Policy were provided to Defendant. *Exhibit E, Collection Policy; Exhibit F, Audit Policy.*

37. Plaintiffs' Audit Policy permits Plaintiffs to select employers for an audit. *Exhibit F, Audit Policy § I.*

38. Confirmation of the precise number of contributions owed by an employer and the accuracy of hours reported is achieved by a payroll audit.

39. Defendant is obligated to submit to payroll audits to determine the accuracy of the information provided and contributions paid to Plaintiff Funds.

40. Consistent with the Plaintiffs' Trust Agreements, the Plaintiffs' Trustees commissioned an audit of Defendant's records for the period of March 1, 2023 through February 28, 2025 ("Audit") to determine that the company was compliant in its contribution obligations to the Funds. A copy of the Audit Report is attached as Exhibit G.

41. The Audit Report found that Defendant had failed to pay $10,612.41 in contributions due under the CBA.

42. Plaintiff sent the Audit Report, which is a request for payment, to defendant on April 30, 2026. Defendant failed and refused to pay the amounts due under the CBA. *Exhibit H.*

**ERISA Enforcement**

43.     Section 404 of ERISA, 29 U.S.C. § 1104 imposes a duty on fiduciaries to determine the contributions owed to the plan as well as a responsibility to assure full and prompt collection of all contributions owed to the plan.

44.     Section 515 of ERISA, 29 U.S.C. § 1145, states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

45.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), further provides that "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan – (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by Defendant, and (E) such other legal or equitable relief as the court deems appropriate."

**COUNT I**
**Unpaid Contributions – Health and Welfare Fund**

46.     Plaintiffs reallege paragraphs 1 through 45.

47.     Pursuant to the CBAs executed by Defendant, the Defendant is obligated to pay contributions to the Pension Fund on behalf of all employees performing bargaining unit work.

9

48. Consistent with the Plaintiffs' Trust Agreements, the Plaintiffs' Trustees had an audit conducted of Defendant's records for the period of March 1, 2023 through February 28, 2025 to determine whether the Company was compliant in its contribution obligations to the Welfare Fund.

49. The Audit found that Defendant is delinquent in contributions to the Welfare Fund for the period beginning March 1, 2023 through February 28, 2025, in the amount of $7,265.94. See *Exhibit G.*

50. As of April 30, 2026 interest on said delinquent contributions as discovered by the Audit to the Welfare Fund totals $1,564.36. Interest will continue to accrue until the contributions are paid in full. *Id.*

51. Defendant owes liquidated damages, as discovered by the Audit, to the Welfare Fund in the amount of $1,453.19. See *Ex. A* § 6.02; 29 U.S.C. § 1132(g)(2)(C); *Ex. G.* Liquidated damages may increase where the accruing interest due on the delinquent contributions exceeds this amount. *Id.* (providing that liquidated damages shall be either (a) 20% of delinquent contributions or (b) the interest due thereon, whichever is greater).

52. Pursuant to Section 6.02 of the Welfare Fund's Trust Agreement (*Exhibit A*) and 29 U.S.C. § 1132(g)(2)(D), Defendant is required to reimburse the Fund for reasonable attorneys' fees and costs, including audit fees, that the Fund incurs to collect the contributions owed. Defendant owes the Welfare Fund payroll audit fees in the amount of $1,007.40.

53. The Welfare Fund has demanded payment of the amounts owed, but the Defendant has failed and/or refused to pay the contributions.

54. The Welfare Fund has been economically harmed by the Defendant's failure to make contribution payments as required by the CBAs and the Trust Agreement.

55.     Defendant's failure and refusal to pay contributions to the Welfare Fund as required by the CBA violates section 515 of ERISA, 29 U.S.C. § 1145.

WHEREFORE, the Welfare Fund prays that the Court grant the following relief:

A.  Final judgment in favor of Plaintiff and against Defendant ordering the Defendant to pay all contributions owed to the Welfare Fund, plus interest, liquidated damages, audit fees, and reasonable attorney's fees and costs;

B.  Final judgment in favor of Plaintiff and against Defendant for any additional contribution amounts that may be found due and owing to the Welfare Fund during the pendency of this litigation, together with interest, liquidated damages, audit fees, reasonable attorney's fees and costs; and

C.  That the Court order such other relief that the Court deems just and appropriate.

**COUNT II**
**Unpaid Contributions – Pension Fund**

56.     Plaintiffs reallege paragraphs 1 through 45.

57.     The Audit revealed that the Defendant is delinquent in its contributions to the Pension Fund in the amount of $2,573.53.  *Exhibit G.*

58.     As of April 30, 2026, interest on delinquent contributions owed to the Pension Fund as discovered in the Audit totals $548.62.  Interest will continue to accrue until the contributions are paid in full.  *Id.*

59.     Defendant owes liquidated damages, as discovered by the Audit, to the Pension Fund in the amount of $514.71.  *See Exhibit B,* § 6.02; 29 U.S.C. § 1132(g)(2)(C); *Exhibit G.* Liquidated damages may increase where the accruing interest due on the delinquent contributions exceeds this amount. *See Id.* (providing that liquidated damages shall be either (a) 20% of delinquent contributions or (b) the interest due thereon, whichever is greater).

60.     Pursuant to Section 6.02 of the Pension Fund's Trust Agreement (Exhibit B) and 29 U.S.C. § 1132(g)(2)(D), Defendant is obligated to reimburse the Plaintiff Pension Fund reasonable attorneys' fees and costs, including audit fees, that the Fund incurs to collect the contributions owed.  The Defendant owes the Pension Fund payroll audit fees in the amount of $350.40

61.     Plaintiffs have demanded payment of the amounts owed, but Defendant has failed and/or refused to pay the contributions.

62.     The Pension Fund has been economically harmed by the Defendant's failure to make contribution payments as required by the CBAs and the Trust Agreement.

63.     The Defendant's failure and refusal to pay contributions to the Pension Fund as required by the CBA violates section 515 of ERISA, 29 U.S.C. § 1145.

WHEREFORE, Plaintiff Pension Fund prays that the Court grant the following relief:

A.  Final judgment in favor of Plaintiff and against Defendant ordering Defendant to pay all contributions owed to the Pension Fund, plus interest, liquidated damages, audit fees, and reasonable attorney's fees and costs;

B.  Final judgment in favor of Plaintiff and against Defendant for any additional contribution amounts that may be found due and owing to the Pension Fund during the pendency of this litigation, together with interest, liquidated damages, audit fees, reasonable attorney's fees and costs; and

C.  Such other relief that the Court deems just and appropriate.

### COUNT III
### Unpaid Contributions – Legal and Educational Assistance Fund

64.     Plaintiffs reallege paragraphs 1 through 45.

65.     The Audit revealed that Defendant is delinquent in contributions to the L&E Fund in the amount of $772.94.  See *Exhibit G*.

66.     As of April 30, 2026, interest on the delinquent contributions owed to the L&E Fund totals $168.10.  Interest will continue to accrue until the contributions are paid in full.  *Id*.

67.     Defendant owes liquidated damages, as discovered by the Audit, to the L&E Fund in the amount of $154.59.  *See* Ex. C § 6.02; 29 U.S.C. § 1132(g)(2)(C).  Liquidated damages may increase where the accrued interest due on the delinquent contributions exceeds this amount.  *Id*. (providing that liquidated damages shall be either (a) 20% of delinquent contributions or (b) the interest due thereon, whichever is greater).

68.     Pursuant to Section 6.02 of Exhibit C and 29 U.S.C. § 1132(g)(2)(D), Defendant is required to reimburse the Fund reasonable attorneys' fees and costs, including audit fees, that the Fund incurs to collect the contributions owed.  The Defendant owes the L&E Fund payroll audit fees in the amount of $87.60.

69.     The L&E Fund demanded payment of the amounts owed, but Defendant failed and refused to pay the contributions.

70.     The L&E Fund has been economically harmed by Defendant's failure to make contribution payments as required by the CBA and the Trust Agreement.

71.     Defendant's failure and refusal to pay contributions to the L&E Fund as required by the CBA violates section 515 of ERISA, 29 U.S.C. § 1145.

WHEREFORE, the L&E Fund prays that the Court grant the following relief:

   A. Final judgment in favor of the Plaintiff and against Defendant ordering the Defendant to pay all contributions owed to L&E Fund, plus interest, liquidated damages, audit fess, and reasonable attorney's fees and costs;

13

B.  Final judgment in favor of Plaintiff and against Defendant for any additional contribution amounts that may be found due and owing to the L&E Fund during the pendency of this litigation, together with interest, liquidated damages, audit fees, reasonable attorney's fees and costs;

C.  Such other relief that the Court deems just.

**COUNT IV**
**Contribution Shortages, Interest and Liquidated Damages for Late-Paid Contributions Under Federal Common Law – Plaintiff Welfare Fund**

72.  The Welfare Fund realleges paragraphs 46-55.

73.  Pursuant to the CBA and Pension Fund Trust Agreement, Defendant is obligated to pay contributions, and interest and liquidated damages to the Welfare Fund for late-paid contributions.

74.  As of April 30, 2026, Defendant owes the Welfare Fund $11,290.89 for delinquent contributions, audit fees, interest and liquidated damages for work performed in the months of March 2023 through February 2025. *Exhibit G.*

75.  The Welfare Fund demanded payment of the contributions, interest and liquidated damages owed, but the Defendant failed and refused to pay.

76.  The Welfare Fund has been economically harmed by Defendant's failure to pay these contributions, audit fees, interest and liquidated damages as required by the CBA and the Welfare Fund Trust Agreement.

77.  The Defendant's failure and refusal to pay these contributions, audit fees, interest and liquidated damages that Defendant incurred constitutes a violation of the CBA and the Welfare Fund Trust Agreements.

WHEREFORE, the Welfare Fund prays that the Court grant the following relief:

A. That the Court enter judgment in favor of the Welfare Fund and ordering Defendant to pay all delinquent contributions for March 1, 2023 through February 28, 2025 and related interest, liquidated damages, and fees;

B. Such other relief that the Court deems just.

### COUNT V
### Contribution Shortages, Interest and Liquidated Damages for Late-Paid Contributions Under Federal Common Law – Plaintiff Pension Fund

78. The Pension Fund realleges paragraphs 56 through 63.

79. Pursuant to the CBA and Pension Fund Trust Agreement, the Defendant is obligated to pay contributions, audit fees, interest and liquidated damages to the Pension Fund for late-paid contributions.

80. As of April 30, 2026, Defendant owes the Pension Fund $3,987.26 for delinquent contributions, audit fees, interest and liquidated damages for work performed in the months of March 2023 through February 2025. *Exhibit G.*

81. Plaintiff Pension Fund has demanded payment of the contributions, audit fees, interest and liquidated damages owed, but the Defendant has failed and/or refused to pay.

82. The Pension Fund has been economically harmed by Defendant's failure to pay these contributions, audit fees, interest and liquidated damages as required by the CBA and the Pension Fund Trust Agreement.

83. The Defendant's failure and refusal to pay these contributions, audit fees, interest and liquidated damages that Defendant incurred constitutes a violation of the CBA and the Pension Fund Trust Agreements.

WHEREFORE, the Pension Fund prays that the Court grant the following relief:

A.  That the Court enter judgment in favor of the Plaintiff Pension Fund and ordering

Defendant to pay all delinquent contributions for March 1, 2023 through February

28, 2025 and related interest, liquidated damages, and fees;

B.  Such other relief that the Court deems just and appropriate.

**COUNT V**
**Contribution Shortages, Interest and Liquidated Damages for Late-Paid**
**Contributions Under Federal Common Law – Plaintiff L&E Fund**

84.     The L&E Fund realleges paragraphs 64 through 71.

85.     Pursuant to the CBA and L&E Fund Trust Agreement, the Defendant is obligated

to pay contributions, audit fees, interest and liquidated damages to the L&E Fund for late-paid

contributions.

86.     As of April 30, 2026, Defendant owes the L&E Fund $1,183.23 for delinquent

contributions, audit fees, interest and liquidated damages for work performed in the months

of March 2023 through February 2025. *Exhibit G.*

87.     The L&E Fund demanded payment of the contributions, interest and liquidated

damages owed, but Defendant failed and refused to pay.

88.     The L&E Fund has been economically harmed by Defendant's failure to pay these

contributions, audit fees, interest and liquidated damages as required by the CBA and the L&E

Fund Trust Agreement.

89.     The Defendant's failure and refusal to pay these contributions, audit fees, interest

and liquidated damages that Defendant incurred constitutes a violation of the CBA and the L&E

Fund Trust Agreements.

WHEREFORE, the L&E Fund prays that the Court grant the following relief:

16

A.  That the Court enter judgment in favor of the Plaintiff L&E Fund and ordering

Defendant to pay all delinquent contributions for March 1, 2023 through February

28, 2025 and related interest, liquidated damages, and fees;

B.  Such other relief that the Court deems just and appropriate.

*Counsel to Plaintiffs Teamsters Local Union*
*No. 727 Benefit Funds and Trustees*

By: */s/ Scott Browdy*
One of their Attorneys

CTM Legal Group
77 W. Washington St., Suite 2120
Chicago, Il 60602
P: 312-818-6700
F: 312-492-4804
SBrowdy@ctmlegalgroup.com

17

## CERTIFICATE OF SERVICE

I, Scott Browdy, hereby certify that I have this 30th day of June, 2026 forwarded a copy of the Complaint and exhibits in the foregoing matter to the persons listed below, by certified mail, postage prepaid, United States Postal Service: Keith Sonderling, Acting Secretary U.S. Department of Labor Office of Public Affairs 200 Constitution Ave., N.W. Room S-1032 Washington, DC 20210; Scott Bessent, Secretary United States Department of Treasury 1500 Pennsylvania Avenue, N.W. Washington, D.C. 20220.


Dated: June 30, 2026                    */s/ Scott Browdy*

# Exhibit A

RESTATED AGREEMENT AND DECLARATION OF TRUST
OF THE
TEAMSTERS LOCAL UNION NO. 727
HEALTH AND WELFARE FUND

THIS RESTATED AGREEMENT AND DECLARATION OF TRUST (herein sometimes referred to as the "Restated Agreement") is made and entered into as of this 25th day of July, 2000, by and between the Trustees, JOHN T. COLI, BECKY STRZECHOWSKI, THOMAS J. MORIARTY and DAVID WOLPIN, who, with their successors designated in the manner herein provided, are hereinafter called the "Trustees" or "Board of Trustees."

WITNESSETH

WHEREAS, the Union and Employers are parties to Collective Bargaining Agreements requiring periodic payments by Employers of Contributions for the purpose of providing and maintaining hospitalization, medical, dental, vision, life insurance, disability benefits, and other welfare benefits ("health & welfare benefits") to Participants; and

WHEREAS, a Trust Agreement was adopted and a Trust Fund established in order to fund health & welfare benefits pursuant to the terms of the "Health and Welfare Plan" or "Plan"; said Trust and Plan to conform with applicable provisions of the Labor-Management Relations Act of 1947, as amended, and other applicable federal laws, and to qualify as a "qualified trust" and as an "exempt trust," pursuant to the Internal Revenue Code; and

WHEREAS, the signatory Trustees, who were appointed pursuant to the terms of the Trust Agreement, desire to update the aforesaid Trust Agreement into a Restated Agreement and Declaration of Trust and to make such changes as may be appropriate for the continued viability of the Trust Fund; and

WHEREAS, said Trustees are authorized by the Trust Agreement to enact this

Restatement;

NOW, THEREFORE, the Trustees hereby accept and adopt all of the provisions of this Restated Agreement. The Trustees declare that they will receive and hold the Contributions, and any other money or property which may come into their hands as Trustees, with the powers and duties and for the uses and purposes as hereinafter set forth:

## ARTICLE ONE

## NAME

This Trust Fund shall be designated and known as the "TEAMSTERS LOCAL UNION NO. 727 HEALTH AND WELFARE FUND" and is sometimes referred to herein as the "Trust", "Fund", " Health and Welfare Fund" or "Trust Fund".

## ARTICLE TWO

## PURPOSES

2.01. The purpose of the Trust Fund is to provide, for the sole and exclusive benefit of eligible Participants and their Dependents, coverage for hospitalization, medical, dental and vision benefits, life insurance, disability benefits and such other benefits of like nature as shall be permissible under applicable Federal or state laws.

2.02. The Trustees intend, within the terms of this Restated Agreement and acting within their exclusive discretion, to provide the maximum amount of benefits possible, consistent with good business practice, after taking into consideration the reasonable reserves to be established. The Trustees shall have the exclusive authority to increase or decrease the various types of benefits which in their judgment can best be provided from the Fund's assets. All of the parties intend that the benefits are limited to those which can be financed as a result of Contributions and investment earnings. It is expressly understood and agreed that there is no liability upon the Union, any Employer or association, or the Trustees for the furnishing of any specific type or

2

amount of benefit to Participants or Dependents.

## ARTICLE THREE

## DEFINITION OF TERMS

Unless the context clearly indicates otherwise, the following terms shall be construed as hereinafter defined:

3.01.  The term "Union" shall mean Auto Livery Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxi Cab Drivers, Miscellaneous Garage Employees, Car Washers, Greasers, Polishers and Wash Rack Attendants Union, Local No. 727, an affiliate of the International Brotherhood of Teamsters ("I.B.T.").

3.02.  The term "Employer" shall mean all employers who are obligated to make Contributions to the Trust Fund pursuant to the terms of any Collective Bargaining Agreement.  For the purposes of the Plan only, the Union, this Trust Fund ("Health and Welfare Fund"), the Teamsters Local Union No. 727 Pension Fund (" Pension Fund"), and the Teamsters Local Union No. 727 Legal and Educational Assistance Fund ("Legal and Educational Assistance Fund") will be considered Employers with respect to the officers and employees of each for whom Contributions are paid, but shall not participate in the selection or removal of Employer Trustees as hereinafter provided.

3.03.  The term "Employee" shall mean any individual who is represented for collective bargaining purposes by the Union, employed by an Employer, and/or for whom the Employer is obligated to make a Contribution to this Fund; provided, however, that the Trustees may set up standards for eligibility for benefits.  In addition, provided the requisite Contributions are made, the term "Employee" may include the following:  (a) employees engaged in any capacity by an Employer who are accepted for participation by the Trustees; and (b) the Trustees, officers and employees of this Fund, the  Pension Fund, the Legal and Educational Assistance Fund, and the Union.

3

3.04. The term "Participant" shall mean any Employee who has satisfied the Plan's eligibility requirements to receive health & welfare benefits provided by the Plan, as well as any eligible Dependents.

3.05. The terms "Trustees" or "Board" shall mean the Trustees designated in this Restated Agreement together with their successors designated and appointed in accordance with the terms and procedures of this Trust Agreement.

3.06. The term "Trust Agreement" shall mean this Restated Agreement and Declaration of Trust, including any amendments, modifications, revisions or extensions hereof.

3.07. The terms "Fund", or " Health and Welfare Fund" or "Trust Fund" shall mean the funds held in trust for the purposes of this Trust Agreement, and shall consist of all monies due the Trust as Contributions, and any other property or income received and held by the Trustees for the uses and purposes set forth in this Trust Agreement.

3.08. The term "Dependents" shall mean the spouse of an Employee or an unmarried child of an Employee, all as determined in detail by such rules and regulations as the Trustees may adopt from time to time.

3.09. The term "Contributions" shall mean the payments required to be made by Employers to the Trust Fund pursuant to Collective Bargaining Agreements. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Health and Welfare Plan, except as required by law.

3.10. The terms "Plan" or " Health and Welfare Plan" shall mean the Teamsters Local Union No. 727 Health and Welfare Plan, and any program, rules or regulations established by the Trustees, as from time to time amended, concerning benefits to be provided eligible Participants. The Trustees may adopt more than one Plan with different benefits, contribution levels, and other provisions. If more than one Plan is adopted, each shall be covered by the term "Plan" or " Health and Welfare Plan" as used in this Trust Agreement.

4

3.11. The term "Custodian" shall mean the bank or trust company, if any, selected by the Board of Trustees to hold the assets comprising the Trust Fund or to perform such functions in the administration of the Plan and the administration and investment of the Trust Fund as the Trustees may designate.

3.12. The term "Collective Bargaining Agreement" shall mean any collective bargaining agreement in force and effect from time to time between the Union and any association or any Employer which provides for Contributions to the Trust Fund. Such term shall also be deemed to include other written agreements by which any person or an Employer is obligated to make Contributions to the Trust Fund.

3.13. The term "Code" means the Internal Revenue Code of 1986, as amended.

3.14. The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

## ARTICLE FOUR

### APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of four Trustees, two of whom shall be designated as Employer Trustees and shall be appointed by the Employers or their representative, and two of whom shall be designated as Union Trustees and shall be appointed by the Union.

Thomas J. Moriarty and David Wolpin have been appointed as the Employer Trustees. John T. Coli and Becky Strzechowski have been appointed as the Union Trustees.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.02. (a) Each Trustee shall serve until his death, incapacity, resignation,

5

removal, or replacement as herein provided.

(b)    A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under Section 4.05 of this Article.

4.03.    Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office at any time by a weighted vote of the Employers who have made Contributions to the Fund during the three months preceding the voting.  Each such Employer shall have a number of votes equal to the amount of Contributions (other than delinquent Contributions) paid by that Employer during said three-month period.  Such vote shall be conducted whenever a request is supported by Employers who have contributed at least twenty-five percent (25%) of the Contributions (other than delinquent Contributions) received by the Fund during the three (3) months preceding the request.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or the Employers, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.04.    (a)    In the event of the death, removal, incapacity to act or resignation of an Employer Trustee, a successor Employer Trustee shall be appointed by the remaining  Employer Trustee, if any.  If no Employer Trustee is serving, nominations shall be solicited and an election shall be conducted in accordance with the procedures set forth in Section 4.03.  In the event of the death, removal, incapacity to act or resignation of a Union Trustee, a successor Union Trustee shall be appointed by the Union.

(b)    Any successor Trustee, by whomsoever designated, shall file his written

6

acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities and properties of a Trustee. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust pending the filling of any vacancy or vacancies. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments.

4.05. A Trustee upon signing this Trust Agreement, or upon written acceptance filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.06. The Trustees shall select from among the Trustees a Chairman and a Secretary, one of whom shall be an Employer Trustee and the other a Union Trustee. The term of office for such officers shall be for two (2) years or until his or their successors have been elected.

4.07. No successor Trustee shall be liable or responsible for any acts or defaults of any other Trustee or predecessor Trustee, or for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of the Trust Fund prior to his becoming a Trustee. A successor Trustee shall not be required to inquire into or take any notice of the prior administration of the Trust Fund.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from

7

time to time.

4.09. (a) Regular meetings of the Trustees may be held at such time or times as may be established by the Trustees but not less than annually. Meetings may also be held at any time without notice if all of the Trustees consent. Meetings may be held in conjunction with Trustee meetings of other Trust Funds covering Participants. Special meetings may be called at any time by the Chairman or the Secretary of the Board, upon giving five (5) days' written notice to all other Trustees. Notice may be waived by agreement of all Trustees. Minutes of all meetings shall be kept, but not necessarily verbatim and copies thereof shall be furnished to the Trustees.

(b) Any action by the Trustees may be taken either at a meeting, by a phone poll, in a conference call, or in writing without a meeting. Concurrence of all the Trustees, evidenced by their written signatures, shall be required for action taken without a meeting.

(c) Two Trustees shall constitute a quorum at any regular or special meeting of the Trustees, provided that one Union Trustee and one Employer Trustee are present.

(d) Unless otherwise specified herein, the concurring vote of a majority of the Trustees present and voting shall be required to carry any motion or resolution. Each Union Trustee and each Employer Trustee shall be entitled to cast one (1) vote on each motion or resolution; provided, however, that the vote of any absent Trustee shall be allocated among the group of Trustees of which he is a member so that both groups will have an equal number of votes.

(e) A deadlock of the Trustees shall be deemed to exist if a quorum is not present at two successive properly scheduled meetings, or if the vote of the Trustees is equal on any proposal. Whenever a deadlock exists, the Trustees shall first seek mediation in an endeavor to break such deadlock, and if that proves unavailing (or if the Trustees agree to waive mediation), either group of Trustees may advise the other

group of Trustees that they wish to submit the deadlocked issue for arbitration by an impartial person to be selected by the Trustees. Should they fail to agree on the impartial person within ten (10) days, any Trustee may petition the American Arbitration Association for a list of five (5) impartial arbitrators experienced in employee benefit fund disputes. The Trustee groups shall alternately and expeditiously strike names from said list and the remaining name shall be the impartial arbitrator. The order of striking shall be determined by chance. The arbitrator's decision shall be final and binding on the Trustees and his fees and expenses, as well as the joint expenses incidental to his activities and the arbitration, shall be paid from the Trust Fund.

4.10. (a) The Health and Welfare Fund and the Board of Trustees shall be bound by the signatures of the Chairman and Secretary. In addition, any instrument may be executed on behalf of the Board by one or more Trustees designated for that purpose by the Board, or by the signature of any other person or persons designated for that purpose by the Board.

(b) Upon the signing of any instrument by an authorized person, all persons, partnerships, corporations or associations may rely thereon that such instrument has been duly authorized by action of the Board of Trustees.

## ARTICLE FIVE
### POWERS, DUTIES AND OBLIGATIONS OF THE TRUSTEES

5.01. The Trustees shall supervise the operation of the Trust and shall conduct the business and activities of the Trust. The Trustees shall hold, manage, care for, and protect the Trust Fund and shall collect the income and Contributions made to the Fund.

5.02. The Trustees are hereby empowered to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Plan and Trust solely in the interest of the Participants and for the exclusive purpose of (1) providing benefits to Participants; and

9

(2) defraying reasonable expenses of administering the Plan and Trust.

5.03. The Trustees are authorized, empowered and directed to invest and reinvest the funds of the Trust in any property or undivided interest therein, including but not limited to bonds, notes, real estate, common and preferred stocks, and interests in trusts, including common trust funds, without being limited by any statute or rule of law concerning investments by trustees. The Trustees may sell or otherwise dispose of such securities or property at any time and may, in their sole discretion, invest the Trust Fund or any part thereof in group contracts, and such other forms of contracts, if the contracts are issued by insurance companies authorized to do business in the State of Illinois, for the purpose of providing for all or a part of the benefits provided under this Trust. The Trustees shall have power (in addition to, and not in limitation of, common law and statutory authority) to exercise in respect to any stocks, bonds, or other property, real or personal, all such rights, powers, and privileges as might be lawfully exercised by any person owning similar stocks, bonds, or other property in his own right.

All or any part of the Trust assets may be invested in any collective investment trust fund qualified as tax exempt under Section 501(a) of the Internal Revenue Code, or amendments thereof, which is then maintained by any bank or trust company whether or not acting as a trustee, co-trustee, or agent for the Trustees hereunder. The document governing each such collective investment trust, as amended from time to time, shall govern any investment therein, and is hereby made a part of this Trust Agreement.

The Trustees shall have the power to borrow from any bank, savings and loan association, insurance company, or any other money lending firm or institution, such sums, and on such terms and conditions, which the Trustees may from time to time determine. The Trustees may hypothecate, mortgage, pledge or otherwise collateralize or secure any indebtedness so created with assets of this Trust; provided, however, that

any resolution presented to the Trustees pursuant to the powers contained in this paragraph must be adopted by the affirmative vote of not less than three-fourths of the Trustees, regardless of the number of Trustees present at any meeting.

Such investment actions shall be taken with the care, skill, prudence and diligence, under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Such actions shall include the diversification of the Fund's investments so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so, and all such actions shall be in accordance with the documents and instruments governing the Trust and Plan insofar as such documents and instruments are consistent with applicable law.

If one or more Investment Managers have been appointed in accordance with the terms of this Restated Agreement, no Trustee shall be liable for the acts or omissions of any such Investment Manager(s) or under any obligation to invest or otherwise manage any asset of the Fund which is subject to the management of any such Investment Manager.

5.04. The Trustees are hereby empowered to allocate fiduciary responsibilities among the Trustees and to designate persons other than Trustees to carry out fiduciary responsibilities as provided in this Restated Agreement. The power to allocate fiduciary responsibility shall not apply to the application of the responsibility to manage the assets of the Fund other than the power to appoint an Investment Manager or Managers.

The Trustees shall have exclusive authority and discretion to manage and control the assets of the Fund except to the extent that such authority to manage, acquire, or dispose of the assets of the Fund is delegated to one or more Investment Managers in accordance with the following paragraph.

The Trustees are empowered to appoint an Investment Manager(s) to manage, acquire, or dispose of any assets of the Fund. An "Investment Manager" is any

11

fiduciary who has been designated by the Trustees to manage, acquire or dispose of any assets of the Fund, who has acknowledged in writing that it is a fiduciary with respect to the Fund and who is: (i) registered as an investment adviser under the Investment Advisers Act of 1940; or (ii) is a bank, as defined in that Act; or (iii) is an insurance company qualified to perform such services under the laws of more than one state.

5.05. The Board and each Trustee, to the extent permitted by applicable law, shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons and shall be under no duty to make any investigation of, or inquiry as to, any statement contained in such record, but may accept the same as conclusive evidence of the truth of the statements therein contained.

No Trustee shall be liable for any acts or defaults of any prior Trustee, any other Trustee, any other fiduciary, any party in interest or any other person except to the extent required by applicable law; it being the intent and purpose of the parties hereto that, to the extent permitted by law, each Trustee shall be liable only for his own acts or omissions occurring during his term of service as Trustee.

5.06. The cost and expenses of any action, suit or proceeding brought by or against the Board or any Trustee, including counsel fees, shall be paid from the Trust Fund if permitted by law, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that the Board or such Trustee was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

5.07. No individual or person may act as agent for the Fund or the Plan unless specifically authorized by this Restated Agreement or in writing by the Trustees. Neither an Employer nor the Union, or any representative of an Employer or the Union, in such capacity, is authorized to interpret the Plan or Trust Agreement, nor can any such person act as agent of the Trustees. Only the Board of Trustees is authorized to

12

interpret the Plan or Trust Agreement.

5.08. The Trustees shall keep true and accurate books of account and a record of all their transactions, meetings and the actions taken at such meetings or by informal action of the Trustees.

5.09. The Trustees shall procure an audit of the books of the Trust by a Certified Public Accountant not less frequently than once for each fiscal year and a copy of each such audit shall be furnished, upon request, to each Trustee, and a copy of such audit shall be kept available for inspection by authorized persons during business hours at the office of the Trustees for the time required by law and/or for the time required by the rules and regulations of the Fund.

5.10. The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust or Plan. All rules and regulations adopted by majority action of the Trustees for the administration of the Trust Fund shall be final and binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees shall have the exclusive authority and discretion to interpret and apply this Trust Agreement and the Health and Welfare Plan, including questions involving eligibility for benefits and the standard of proof to be required in any matter, and all such interpretations and applications shall be final and binding upon all parties and claimants. Benefits under the Plan will be paid only if the Board of Trustees determines in its discretion that the individual is entitled to the benefits.

5.11. The Trustees shall use and apply the Trust Fund for the following purposes:

(a) To pay or provide for the payment of all expenses of collecting the Contributions and administering the affairs of this Trust, including the employment of such administrative, custodial, legal, actuarial, accounting, expert, and clerical

13

assistance as may be necessary, the purchase or the lease of such premises as may be necessary for the operation of the affairs of the Trust, and the purchase or lease of such materials, supplies and equipment as the Trustees in their discretion find necessary or appropriate to the performance of their duties.

(b)     To pay or provide for benefits to eligible Participants and their Dependents.

(c)     To pay or provide for the payment of expenses incidental to the operation of an office, as well as incidental matters affecting Participants and their interests, such as attendance at Union-related activities concerning Participants and their Dependents.

(d)     To pay or provide for the payment of expenses and lawful compensation of Trustees and/or Fund employees in connection with attendance at educational conferences and seminars.

5.12. The receipt of the Trustees for any money or property received by them shall discharge the person or persons paying or transferring the same.

5.13. All Trust Funds not invested shall be deposited by the Trustees in such depository or depositories ("Custodian") as the Trustees shall from time to time select and any such deposit or deposits shall be made in the name of the Trust. Any Trustee authorized to deposit, transfer or withdraw funds held in a trust account(s) shall have the authority to transfer, by wire or phone, such funds to a benefit or checking account.

Except as provided otherwise by Resolution of the Trustees, all such funds may be disbursed by check or draft signed by at least one Employer Trustee and one Union Trustee.

To the extent permitted by law, no Trustee shall be liable in any manner for any loss to the Fund occasioned by the fault or negligence of any Custodian selected by the Trustees in good faith and in the exercise of reasonable business judgment.

5.14. The Trustees are empowered to determine the terms and conditions upon which either an additional craft or class of employees or an additional employer and its

14

employees may participate in the Fund, and to enter into reciprocal agreements with trustees of other trust funds when to do so, in the opinion of the Trustees, would effectuate the purposes of this Trust Agreement.

5.15. Statements, documents, or notices to the Trustees, the Union, or any Employer hereunder shall, unless otherwise specified, be sufficient if in writing and delivered to or sent by pre-paid first class mail or by facsimile.

5.16. The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) To formulate, adopt and administer one or more Health and Welfare Plans, for the exclusive benefit of eligible Participants and, thereafter, to amend said Plans whenever the Trustees deem it advisable. The Trustees may provide for benefits for the Dependents of Participants. The Health and Welfare Plan and all amendments thereto shall be filed by the Trustees as part of the records and minutes of the Trustees. Any benefits provided to a Participant, and/or Dependent, shall be paid solely out of the assets of the Trust Fund.

(b) To promulgate and establish rules and regulations for the administration and operation of the Health and Welfare Plan in order to effectuate the purposes thereof; and in pursuance thereof (but without limitation on the powers of the Trustees by reason of such enumeration), to formulate and establish the conditions of eligibility, qualifications for benefits, the method of providing benefits, and any and all matters which they, in their discretion, may deem necessary or proper to effectuate the purposes and intent of the Health and Welfare Plan. No rule or regulation shall conflict with the terms of this Trust Agreement.

(c) To enter into any and all contracts and agreements for carrying out the terms of this Restated Agreement and for the administration of the Trust Fund and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts, agreements and acts shall be binding and conclusive on the parties and the

Participants.

(d)     To keep property and securities registered in the name of the Trustees or in the name of the Custodian or a nominee(s), or in unregistered or bearer form, without disclosure of any fiduciary relationship.

(e)     To establish and accumulate as part of the Trust Fund a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of the Trust and Plan.

(f)     To pay out of the funds of the Trust all real and personal property taxes, income taxes and other taxes of any and all kind levied or assessed under existing or future laws upon or in respect to the Trust Fund or any money, property or securities forming a part thereof.

(g)     To compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or understanding due or owing from or to the Health and Welfare Fund on such terms and conditions as the Trustees, in their sole discretion, may deem advisable.

(h)     To consult with legal counsel with respect to the meaning or construction of this Restated Agreement and the Plan, or their obligations and duties hereunder, or with respect to any action or proceeding, or any question of law, and shall be fully protected, to the extent permitted by law, with respect to any action taken or omitted by them in good faith pursuant to the advice of counsel.  Legal counsel may, but need not be, counsel to the Union or any Employer.

(i)     To do all acts, whether or not expressly authorized herein, which the Trustees deem necessary or proper.

5.17.   The Trustees shall provide for fidelity bonds, in such form and amounts as may be required by statute, for their fiduciaries and every person who handles funds or other property of the Trust Fund.  If no such statutory requirement shall exist, such bonds shall be in such form and amounts as the Trustees may determine.  In addition,

16

the Trustees may purchase insurance for their fiduciaries and for themselves to cover liabilities or losses occurring by reason of the act or omission of a fiduciary; provided, however, that any such insurance policies shall be in the form and manner permitted by law.

5.18. The Board may employ a Fund Manager who may, but need not be, a Trustee, and delegate to such Fund Manager the authority to act upon all matters in connection with the administration of the Trust and Plan, including the authorization to execute those documents which, in the sole discretion of the Trustees, are deemed necessary for the day-to-day administration of the Trust and Plan; the responsibility of accounting for the Contributions made to the Trust Fund and the collection of delinquent Contributions; and such other function as the Board may deem advisable. Any Fund Manager so appointed may be employed part-time, may provide similar services for other funds and may engage in unrelated employment activities.

5.19. The Trustees shall have and maintain an office in the State of Illinois which shall be deemed the situs of the Trust Fund, and which may be in the office building of the Union.

5.20. It is further agreed and understood that there is no liability upon the Union, any Employer, the Trustees, or the Fund for the direct payment of any benefit which has been contracted for by the Trustees in the case of a default of any insurance carrier or otherwise. In the event of any failure or omission by any insurance carrier to pay any benefit, the sole right of any Participant or Dependent hereunder shall be to assert a claim against said insurance company.

5.21. The Union and the Employers assume no obligation or responsibility to any person for any act or failure to act of the Trustees, the attorneys, any insurance company, or any Participant. The Trustees shall have no obligation or responsibility regarding any action required by the Collective Bargaining Agreement, the Plan or this Trust Agreement to be taken by the Union or the Employers, any insurance company, or

any other person, or for the result of the failure of any of the above to act. Any person or entity providing professional services to any Participant or Dependent shall maintain professional liability insurance or agree in writing to indemnify and hold harmless the Trustees for any liability imposed upon the Trustees as result of the actions of the professional.

5.22. In order to be eligible for any hospital, surgical, medical, or disability benefits payable to or on behalf of any Employee or Dependent who is a Participant with respect to an injury or illness for which the Employee or Dependent has a right of recovery against any person, company, policy, or organization, the Participant (including the Employee or spouse on behalf of a minor Dependent) shall reimburse the Fund to the full extent of such payments, regardless of whether it is the Employee or the Dependent who makes the recovery or receives the settlement or is entitled to the recovery or settlement. The Trustees may provide for the offset of future claims of any Employee or Dependent to recoup any sum not reimbursed. The Employee, Dependent, and his/her attorney shall be required to sign an Agreement to Repay and to furnish such information and to execute and deliver such documents deemed necessary in order to determine whether the Fund is entitled to reimbursement. The Agreement to Repay shall include the Employee's, Dependent's, and attorney's agreement that no attorney's fees shall be deducted from the Fund's recovery and that this Agreement to Repay shall be governed by federal law and the terms of the Trust Agreement and Plan. Included in the right to reimbursement is the right to be subrogated to all such rights as the Employee or Dependent may have, but the right to recovery shall be independent of any right of subrogation. The Trustees determined that the substantive benefits provided under the Plan would be adversely affected by the Fund's inability to enforce the provisions of this Section.

## ARTICLE SIX

## CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Health and Welfare Plan, except as required by law.

(b) The Trustees may compel and enforce the payment of Contributions in any manner which they may deem proper but without limitation upon any rights and privileges the Union may have in this connection. Expenses incurred in the collection of such Contributions shall be paid from the Trust Fund, even though such expenses are subject to reimbursement by the delinquent Employer.

6.02. The failure of an Employer to pay Contributions by the date established by the Collective Bargaining Agreements or, if no date is set by the Collective Bargaining Agreement, by the rules and regulations adopted by the Trustees shall constitute a violation of the applicable Collective Bargaining Agreement between such Employer and the Union, as well as a violation of the Employer's obligations hereunder.

The Trustees shall have the right to adopt rules and regulations relating to the collection of Employer Contributions, including provisions for time of payment, collection of interest, audit fees, attorneys' fees at the rate set by the Trustees in their sole

discretion, costs, and liquidated damages as specified in this Section. An Employer in default as of the date established by the Collective Bargaining Agreement or the Trustees for payment of Contributions shall be liable for an additional amount of twenty percent (20%) of the delinquent payment or $50.00, whichever is greater, and interest at the rate set forth in the Plan or the rules and regulations. In the absence of a rate set forth in the Plan or rules and regulations, the interest rate used each month shall be the prime rate plus one percent (1%), as reported in the Wall Street Journal on the first business day of each month. Liquidated damages shall compensate the Fund for some or all of the damages arising from lost earnings, administrative costs, uncertainties causing difficulties in forecasting earnings and managing investments, the disruptive effects to the benefit system of unequal performance of obligations among Employers, and the potential liability of Trustees for transactions prohibited by federal law.

The Trustees may require a delinquent Employer or new Employer to deposit with the Trustees, in cash, or by a bond with corporate surety, an amount not to exceed three (3) months' estimated Contributions, as determined by the Trustees.

The Trustees may waive all or part of the liquidated damages and interest where Contributions are found by the Trustees to have been delinquent as a result of clerical errors or administrative problems beyond the control of an Employer and where there have been good faith efforts by the Employer to comply with the applicable rules and regulations for payment of Contributions.

6.03. Each Employer and its affiliated or related companies or businesses shall furnish to the Trustees on demand the names of all employees, their Social Security numbers, the time worked by each employee, the Contributions due or payable to the Trust Fund, and such other information, including cash journals, wage and payroll records, income tax records, and other business records, as the Trustees or their agents may reasonably require in connection with the administration of the Trust. The

20

Trustees, or their authorized representative, shall have the right to examine and audit the pertinent books and records (as determined by the Trustees) of each Employer and its affiliated or related companies whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All Employers shall annually furnish to the Trustees, if requested by them, a statement showing whether (a) the Employer is a corporation and the names of all of its officers and shareholders (and the percentage of stock held by each) or (b) if not a corporation, a statement showing that it is a partnership or an individual proprietorship and furnishing the names of the partners or the name of the individual proprietor.

6.04. Nothing in this Restated Agreement shall prevent a Contribution which is made by an Employer by a mistake of fact or law to be returned by the Trustees to such Employer, upon written request, within twelve months after the Trustees determine that the Contribution was made by such a mistake.

6.05. The Trustees may require Employers to deposit with the Trustees, in advance as a guarantee for the payment of monthly contributions, an amount to be determined by the Trustees as a condition to such Employer's participation herein and to require that said guarantee be continuously maintained by such Employer as a condition to the continued participation herein.

## ARTICLE SEVEN
## CONTROVERSIES AND DISPUTES

7.01. In any controversy, claim, demand, suit at law or other proceeding between any Employee, Dependent, or any other persons and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union, affiliated employee benefit funds, or with any Employer, any facts certified to the Trustees by the Union or any Employer, any facts which are of public record, and any other evidence pertinent to

21

the issue involved.

7.02. All questions or controversies arising in any manner between any parties or persons in connection with the Trust Fund or its operation, whether as to any claim for any benefits by an Employee, Dependent or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund shall be submitted to the Board of Trustees for decision. The decision of a majority of the Board shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

## ARTICLE EIGHT

## SPENDTHRIFT CLAUSE

No monies, property, equity or interest of any nature whatsoever in the Trust Fund, or in any benefits or monies payable therefrom, shall be subject, in any manner by any Participant, Dependent, or person claiming through such person, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void. If a Participant or Dependent shall attempt to or shall alienate, sell, transfer, assign, pledge, mortgage or otherwise encumber his benefits under the Health and Welfare Plan or any part thereof, or if by reason of his bankruptcy or other event happening at any time, such benefits would devolve upon anyone else or would not be enjoyed by him, the Trustees in their discretion may terminate his interest in any such benefit and hold it to, or apply it for, the benefit of such Participant, or his Dependent, in such manner as the Trustees may deem proper.

22

## ARTICLE NINE

## PAYMENT TO PERSONS UNDER LEGAL DISABILITY

If any benefit payments become payable to a person under legal disability or to a person not adjudicated incompetent but who, by reason of mental or physical disability, is unable in the opinion of the Trustees to administer properly such payments, then such payments may be paid out by the Trustees for the benefit of such person in any of the following ways:

(a)     Directly to any such person;

(b)     To the legally appointed guardian or conservator of such person;

(c)     To any spouse, child, parent, brother or sister of such person for his welfare, support and maintenance;

(d)     By the Trustees using such payments directly for the support, maintenance and welfare of any such person.

The Trustees shall have no duty or obligation to see that any such payments are used or applied for the purpose or purposes for which paid.


## ARTICLE TEN

## AMENDMENT OF AGREEMENT

It is anticipated that in the administration of this Trust conditions may arise that are not foreseen at the time of the execution of this Restated Agreement. It is the intention of the parties that the power of amendment, which is hereinafter given, be exercised in order to carry out the provisions of this Trust, among which is to pay the largest benefits possible which are consistent with the number of Participants becoming and likely to become eligible for such payments, the amount of funds which are available and which will probably become available, and sound actuarial practice. Therefore, the Trustees are given the power to amend this Restated Agreement by majority vote at any time, and from time to time, and all parties to the Trust and all

persons claiming an interest thereunder shall be bound thereby.

No Participant or any other person shall have any vested interest or right in the Trust Fund or in any payments from the Trust Fund, except to the extent granted by the Health and Welfare Plan. The Trustees shall have full authority, if consistent with federal law, to amend, repeal, add to, or take away any right or payment, retroactive or otherwise, that they deem proper for the preservation of this Trust Fund; provided, however, in no event shall the Trust Fund be used for any purpose other than the purposes set forth in this Restated Agreement and for the purposes of paying the necessary expenses incurred in the administration of this Trust.

## ARTICLE ELEVEN
## TERMINATION AND MERGER OF TRUST

11.01. In the event the obligation of all Employers to make Contributions shall cease, or the Trust Fund, in the opinion of the Trustees, is inadequate to carry out the intent and purposes of the Trust, the Trustees shall apply the Trust Funds to the payment of expenses and to the purposes specified in Article Two so far as possible; any balance of the Trust Fund which cannot be applied shall be applied to such other uses as, in the opinion of the Trustees, will best accomplish the purposes for which the Trust was established. Upon the disbursement of the entire Trust Fund, the Trust shall terminate. In no event, upon termination, shall any assets of the Trust Fund revert to any Employer.

11.02. In the event this Trust is subject to the rule against perpetuities as existing in the law of the State of Illinois, at the time in this Article fixed for the termination of the Trust, the Trust shall terminate twenty (20) years after the date of the death of the last of the Participants covered by this Restated Agreement at the time of the execution of this Restated Agreement.

11.03. Upon termination, the Trustees shall notify the Union and each Employer

24

contributing to the Fund, and any other person, partnership, corporation or association with whom they are dealing, and shall continue as Trustees for the purpose of dissolution.

11.04. In lieu of the distribution and liquidation upon termination as set forth in Section 11.01, the Trustees may, after all obligations of the Trust have been satisfied, turn over any surplus monies and property in the Fund to any future health and welfare trust that may be created by and between Employers and the Union pursuant to collective bargaining agreements.

11.05. In addition to any other authority granted under this Trust Agreement, the Trustees shall have the authority to merge this Trust Fund with another trust fund providing for the same or similar benefits. The terms and conditions of such a merger shall be within the sole discretion of the Trustees.

## ARTICLE TWELVE
### MISCELLANEOUS

12.01. In no event shall the Employers, directly or indirectly, receive any refund of Contributions, except as provided in Section 6.04, participate in the disposition of the Trust Fund, or receive any benefits from the Trust Fund. Upon payment to the Trustees, all responsibilities of the Employers for Contributions shall cease and the Employers shall have no responsibilities for the acts of the Trustees. No Participant or Dependent shall have any individual right, title, interest or claim against any Employer, Employer's Contribution, or the Trust Fund, except as may be expressly provided for in this Restated Agreement.

12.02. The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and judicial determination of any questions in connection with their duties and obligations under this Trust, or in connection with the administration or distributions thereof.

25

12.03. In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees in their sole discretion, is made or the Trustees have been adequately indemnified against loss.

12.04. Where used in this Restated Agreement, words in the masculine shall be read and construed as in the feminine and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

12.05. The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Restated Agreement or be construed as part thereof.

12.06. This Restated Agreement shall in all respects be construed according to, and be governed by, the laws of the State of Illinois, except as may be otherwise provided by federal law.

12.07. Neither this Trust Agreement nor any amendments thereto, nor any rules and regulations adopted for the administration of the same, nor any award of any arbitrator appointed hereunder shall modify the Collective Bargaining Agreements between the Union and any association or any Employer or add to or alter the obligations of the Employers or the Union thereunder. The provisions of this paragraph shall in no event be subject to amendment.

12.08. No Employer nor the Union shall at any time, and under any circumstances or conditions, have any financial obligations under this Trust or the Health and Welfare Plan other than the payment of any required Contributions and such other amounts as may be provided for under Article Six.

## ARTICLE THIRTEEN

## SAVINGS CLAUSE

Should any provision of this Restated Agreement be held to be unlawful, such fact shall not adversely affect the other provisions herein contained, or the application of said provisions, unless such illegality shall make impossible the functioning of the Trust or Plan.  Except to the extent required by law, no Trustee shall be held liable for any act done or performed in pursuance of any provision hereof prior to the time such act or provisions shall be held unlawful by a court of competent jurisdiction.

IN WITNESS WHEREOF, the Trustees have caused this Restated Agreement to be executed this 25th day of July, 2000.

UNION TRUSTEES:

EMPLOYER TRUSTEES:

27

**Amendment to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727
Health and Welfare Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to increase the number of Trustees representing contributing employers and Local 727,

Now, therefore, it is hereby resolved effective February 24, 2005, that Article Four is amended, in part, to provide as follows:

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of six (6) Trustees, three (3) of whom shall be designated as Employer Trustees, and three (3) of whom shall be designated as Union Trustees.

Thomas J. Moriarty and Carl Tominberg have been appointed as the Employer Trustees. John T. Coli and Becky Strzechowski have been appointed as the Union Trustees. Effective February 24, 2005, the incumbent Employer Trustees shall have the authority to appoint the third Employer Trustee; the Union Trustee shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.02. (a)   Each Trustee shall serve until his death, incapacity, resignation, removal, or replacement as herein provided.

(b)   A Trustee may resign at any time by giving at least then (10) days' notice in writing to the remaining Trustees.  The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date.

4.03.  Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office by the unanimous vote of the other two (2) Employer Trustees.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or by the Employer Trustees, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.04. (a)   In the event of the death, removal, incapacity to act, or resignation of an Employer Trustee, a successor Trustee(s) shall be appointed by the remaining Employer Trustee(s).   In the event of the death, removal, incapacity to act, or resignation of a Union Trustee, a successor Union Trustee shall be appointed by the Union.

(b)   Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities and properties of a Trustee.  No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust pending the filling of any vacancy or vacancies.  Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments.

2

3

This Amendment is approved and adopted this 24th day of February 2005.

**UNION TRUSTEES**

John T. Coli

Becky Stiechowski

**EMPLOYER TRUSTEES**

Thomas J. Moriarty

3

**Amendment to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727
Health and Welfare Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to allow employee contributions,

Now, therefore, it is hereby resolved that effective November 21, 2006, that Article SIX is amended, in part, to provide as follows:

## ARTICLE SIX

## CONTRIBUTIONS

6.01. (a)    The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may contribute to the Trust in order to establish or maintain eligibility in accordance with rules established by the Trustees from time to time.

This Amendment is approved and adopted this 21st day of November 2006.

UNION TRUSTEES:

_____

_____

EMPLOYER TRUSTEES:

_____

_____

-2-

**Amendment No. 3 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727
Health and Welfare Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to increase number of Trustees representing contributing employers and Local 727,

Now, therefore, it is hereby resolved that effective December 19, 2007, that Article Four is amended, in part, to provide as follows:

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of eight (8) Trustees, four (4) of whom shall be designated as Employer Trustees, and four (4) of whom shall be designated as Union Trustees.

Thomas J. Moriaty, Carl Tominberg and Greg Youmans have been appointed as the Employer Trustees. John T. Coli and Becky Stzechowski have been appointed as the Union Trustees. Effective December 19, 2007, the incumbent Employer Trustees shall have the authority to appoint the fourth Employer Trustee; the Union Trustees shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.03. Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office by the unanimous vote of the other three (3) Employer Trustees.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or by the Employer Trustees, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

This Third Amendment is approved and adopted this 19th day of December 2007.

UNION TRUSTEES:                              EMPLOYER TRUSTEES:

-2-

**Amendment No. 4 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Health and Welfare Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to clarify the potential sources of contributions to the Trust,

Now, therefore, it is hereby resolved that effective November 1, 2011, that Article Six, section 6.01(a) is amended, to replace the existing text with the following:

## ARTICLE SIX

### CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Health and Welfare Plan, except in the case of Supplemental Contributions and COBRA continuation coverage.

This Fourth Amendment is approved and adopted this 1st day of November 2011.

UNION TRUSTEES:                          EMPLOYER TRUSTEES:

-2-

**Amendment No. 5 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Health and Welfare Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to revise certain definitions,

Now, therefore, it is hereby resolved that Article Three is amended to read as follows:

## ARTICLE THREE

## DEFINITION OF TERMS

3.02    The term "Employer" shall mean all employers who have a Collective Bargaining Agreement or other written agreement with the Union or Other Labor Organization which requires Contributions be made to the Trust Fund.   For the purposes of the Plan only, the Union, this Trust Fund ("Health and Welfare Fund"), the Teamsters Local Union No. 727 Pension Fund ("Pension Fund"), and the Teamsters Local Union No. 727 Legal and Educational Assistance Fund ("Legal and Educational Assistance Fund") will be considered Employers with respect to the officers and employees of each for whom Contributions are paid, but shall not participate in the selection or removal of Employer Trustees as hereinafter provided.

3.12    The term "Collective Bargaining Agreement" shall mean any collective bargaining agreement in force and effect from time to time between the Union or Other Labor Organization and any association or any Employer which provides for Contributions to the Trust Fund.  Such term shall also be deemed to include other written agreements by which any person or an Employer is obligated to make Contributions to the Trust Fund.

3.15.    The term "Other Labor Organization" shall mean any labor organization which has been accepted by the Trustees for participation in the Plan.  An Employer obligated to contribute to the Trust Fund pursuant to a written Agreement with an Other Labor Organization

shall be accepted for participation only upon the execution of a Participation Agreement acceptable to the Trustees.

This Amendment No. 5 is approved this 25th day of April 2012.

UNION TRUSTEES:                          EMPLOYER TRUSTEES:

## Amendment No. 6 to the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to clarify the potential sources of contributions to the Trust;

Now, therefore, it is hereby resolved that effective November 1, 2012, that Article Six, Section 6.01(a) is amended, to replace the existing text as follows:

### ARTICLE SIX

### CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Health and Welfare Plan, except in the case of Supplemental Contributions, COBRA continuation coverage, and for those participants employed by a public sector employer who are permitted to self-pay for continuing eligibility for health coverage after retirement pursuant to an applicable state law (to the extent permitted by the Trustees).

**Therefore**, this Sixth Amendment is approved and adopted this 1st day of November 2012.

UNION TRUSTEES:                    EMPLOYER TRUSTEES:

727HW/Amendment No. 6 -2-

Amendment No. 7 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Health and Welfare Fund


Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees desires to clarify the potential sources of contributions to the Trust with respect to Employees covered by the collective bargaining agreement, in effect from July 1, 2013 through June 30, 2018, commonly referred to as the "Valet Agreement";

Now, therefore, it is hereby resolved that: (1) effective May 1, 2016, Article Six, Section 6.01(a) is amended to add a new sentence to the end thereof as set forth below; and (2) effective upon the expiration of the current Valet Agreement on June 30, 2018, Article Six, Section 6.01(a) shall revert to the language in effect before the adoption of this Amendment No. 7 by deleting the last sentence thereof as added by this Amendment and set forth below:

## ARTICLE SIX
## CONTRIBUTIONS


6.01.(a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Health and Welfare Plan, except in the case of Supplemental Contributions, COBRA continuation coverage, and for those participants employed by a public sector employer who are permitted to self-pay for continuing eligibility for health coverage after retirement pursuant to an applicable state law (to the extent permitted by the Trustees). Notwithstanding the above, for the period commencing May 1, 2016 through June 30, 2018, the Fund shall accept Contributions from Employees covered by the collective bargaining agreement, in effect from July 1, 2013 through June 30, 2018, commonly referred to as the "Valet Agreement," for the purpose of obtaining dependent child health care coverage under the Bronze Plan for the dependent children of such Employees, provided the Employer of such Employees has entered into a separate Letter of Understanding with the Union providing for such Contributions through the expiration date of the Valet Agreement on June 30, 2018.

Therefore, this Seventh Amendment is approved and adopted this 27th day of July, 2016.

UNION TRUSTEES:

_____

_____

_____

_____

EMPLOYER TRUSTEES:

_____

_____

_____

_____

**Eighth Amendment to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Health and Welfare Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Health and Welfare Fund, and

Whereas, the Board of Trustees deems it prudent to change the appointing authority of the Employer Trustees to be the Funeral Directors Services Association of Greater Chicago as set forth in the original trust document and subsequent restatement as well as the Apartment Building Owners and Managers Association,

Now, therefore, it is hereby resolved effective March 1, 2023, that Sections 4.01 through 4.05, and Section 4.08 of Article Four are amended and replaced in their entirety to provide as follows:

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of eight (8) Trustees. Four (4) of whom shall be designated as Employer Trustees, two (2) of whom shall be appointed by the Funeral Directors Services Association of Greater Chicago ("FDSA"), and two (2) of whom shall be appointed by the Apartment Building Owners and Managers Association ("ABOMA"). Four (4) of whom shall be designated as Union Trustees and shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

1

In the event the FDSA is unable or unwilling to appoint an Employer Trustee, ABOMA shall assume the FDSA's appointment authority. In the event that ABOMA is unable or unwilling to appoint an Employer Trustee, the FDSA shall assume ABOMA's appointment authority.

4.02. (a) Each Trustee shall serve until his death, incapacity, resignation, or replacement, as provided herein.

(b) A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under this Article.

4.03. In the event of the death, incapacity to act, resignation or removal of a Trustee, his successor Trustee shall be appointed by the party having responsibility for the appointment and designation of such Trustee. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee hereunder. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to act in the manner herein provided to administer the affairs of the Trust pending the filling of any vacancy or vacancies.

4.04. The Union, at any time, may remove a Union Trustee and appoint a successor Trustee to fill any vacancy. The FDSA, at any time, may remove an Employer Trustee appointed by it and appoint a successor Trustee to fill any vacancy. ABOMA, at any time, may remove an Employer Trustee appointed by it and appoint a successor

2

Trustee to fill any vacancy. Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union, the FDSA or ABOMA, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.05. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments. A Trustee upon signing this Trust Agreement, or upon written acceptance filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer, the FDSA, ABOMA, or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from time to time.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Signature page follows*

3

IN WITNESS WHEREOF, the Trustees have caused this Eighth Amendment to be approved and adopted this 24th day of February 2023.

UNION TRUSTEES:                    EMPLOYER TRUSTEES:

_____           _____

_____           _____

_____           _____

_____           Carl Tominberg / RJL

4

# Exhibit B

## RESTATED AGREEMENT AND DECLARATION OF TRUST
## OF THE TEAMSTERS LOCAL UNION NO. 727
## PENSION FUND

THIS RESTATED AGREEMENT AND DECLARATION OF TRUST (herein sometimes referred to as the "Restated Agreement") is made and entered into as of this 25th day of July, 2000, by and between the Trustees, JOHN T. COLI, BECKY STRZECHOWSKI, THOMAS J. MORIARTY and DAVID WOLPIN, who, with their successors designated in the manner herein provided, are hereinafter called the "Trustees" or "Board of Trustees."

### WITNESSETH

WHEREAS, the Union and Employers are parties to Collective Bargaining Agreements requiring periodic payments by Employers of Contributions for the purpose of financing retirement benefits to Participants; and

WHEREAS, a Trust Agreement was adopted and a Trust Fund established in order to fund retirement benefits pursuant to the "Pension Plan" or "Plan"; said Trust and Plan to conform with applicable provisions of the Labor-Management Relations Act of 1947, as amended, and other applicable federal laws, and qualify as a "qualified trust" and as an "exempt trust," pursuant to the Internal Revenue Code; and

WHEREAS, the signatory Trustees, who were appointed pursuant to the terms of the Trust Agreement, desire to update the aforesaid Trust Agreement into a Restated Agreement and Declaration of Trust and to make such changes as may be appropriate for the continued viability of the Trust Fund; and

WHEREAS, said Trustees are authorized by the Trust Agreement to enact this Restatement;

NOW, THEREFORE, the Trustees hereby accept and adopt all of the provisions of this Restated Agreement. The Trustees declare that they will receive and hold the Contributions, and any other money or property which may come into their hands as

Trustees, with the powers and duties and for the uses and purposes as hereinafter set forth:

## ARTICLE ONE

## NAME

This Trust Fund shall be designated and known as the "TEAMSTERS LOCAL UNION NO. 727 PENSION FUND" and is sometimes referred to herein as the "Trust", "Fund", "Pension Fund" or "Trust Fund".

## ARTICLE TWO

## PURPOSES

2.01. The purpose of the Trust Fund is to provide, for the sole and exclusive benefit of eligible Participants and their Spouses or Beneficiaries, retirement and other benefits pursuant to a Pension Plan. The benefits may include supplemental retirement benefits, total disability benefits, survivors' benefits, lump sum separation payments to Participants who withdraw from covered employment, and such other benefits of like nature as shall be permissible under applicable Federal or state laws.

2.02. The Trustees intend, within the terms of this Restated Agreement and acting within their exclusive discretion, to provide the maximum amount of benefits possible, consistent with good business practice, after taking into consideration the reasonable reserves to be established. The Trustees shall have the exclusive authority to increase or decrease the various types of benefits which in their judgment can best be provided from the Fund's assets. All of the parties intend that the benefits are limited to those which can be financed as a result of Contributions and investment earnings. It is expressly understood and agreed that there is no liability upon the Union, any Employer or association, or the Trustees for the furnishing of any specific type or amount of benefit to Participants or their Spouses or Beneficiaries.

2

## ARTICLE THREE

## DEFINITION OF TERMS

Unless the context clearly indicates otherwise, the following terms shall be construed as hereinafter defined:

3.01. The term "Union" shall mean Auto Livery Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxi Cab Drivers, Miscellaneous Garage Employees, Car Washers, Greasers, Polishers and Wash Rack Attendants Union, Local No. 727, an affiliate of the International Brotherhood of Teamsters ("I.B.T.").

3.02. The term "Employer" shall mean all employers who are obligated to make Contributions to the Trust Fund pursuant to the terms of any Collective Bargaining Agreement. For the purposes of the Plan only, the Union, this Trust Fund, the Teamsters Local Union No. 727 Health and Welfare Fund ("Health & Welfare Fund"), and the Teamsters Local Union No. 727 Legal and Educational Assistance Fund ("Legal and Educational Assistance Fund") will be considered Employers with respect to the officers and employees of each for whom Contributions are paid, but shall not participate in the selection or removal of Employer Trustees as hereinafter provided.

3.03. The term "Employee" shall mean any individual who is represented for collective bargaining purposes by the Union, employed by an Employer, and for whom that Employer is obligated to make a Contribution to this Fund; provided, however, that the Trustees may set up standards for eligibility for benefits. In addition, provided the requisite Contributions are made, the term "Employee" may include the following: (a) employees engaged in any capacity by an Employer who are accepted for participation by the Trustees; and (b) the Trustees, officers and employees of this Fund, the Health & Welfare Fund, the Legal and Educational Assistance Fund, and the Union.

3.04. The term "Participant" shall mean any Employee, former Employee, or retired Employee who has satisfied the Plan's eligibility requirements for participation,

3

as well as any eligible Spouse or Beneficiary.

3.05. The terms "Trustees" or "Board" shall mean the Trustees designated in this Restated Agreement together with their successors designated and appointed in accordance with the terms and procedures of this Restated Agreement.

3.06. The term "Trust Agreement" shall mean this Restated Agreement and Declaration of Trust, including any amendments, modifications, revisions or extensions hereof.

3.07. The terms "Fund", or "Pension Fund" or "Trust Fund" shall mean the funds held in trust for the purposes of this Trust Agreement, and shall consist of all monies due the Trust as Contributions, and any other property or income received and held by the Trustees for the uses and purposes set forth in this Restated Agreement.

3.08. The term "Contributions" shall mean the payments required to be made by Employers to the Trust Fund pursuant to Collective Bargaining Agreements. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Pension Plan, except as required by law.

3.09. The terms "Plan" or "Pension Plan" shall mean the Teamsters Local Union No. 727 Pension Plan, and any program, rules and regulations established by the Trustees, as from time to time amended, concerning benefits to be provided eligible Participants. The Trustees may adopt more than one Plan with different benefits, contribution levels, and other provisions. If more than one Plan is adopted, each shall be covered by the term "Plan" or "Pension Plan" as used in this Trust Agreement.

3.10. The term "Custodian" shall mean the bank or trust company, if any, selected by the Board of Trustees to hold the assets comprising the Trust Fund or to perform such functions in the administration of the Plan and the administration and investment of the Trust Fund as the Trustees may designate.

3.11. The term "Collective Bargaining Agreement" shall mean any collective bargaining agreement in force and effect from time to time between the Union and any

4

association or any Employer which provides for Contributions to the Trust Fund. Such term shall also be deemed to include other written agreements by which any person or an Employer is obligated to make Contributions to the Trust Fund.

3.12. The term "Code" means the Internal Revenue Code of 1986, as amended.

3.13. The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of four Trustees, two of whom shall be designated as Employer Trustees and shall be appointed by the Employers or their representative, and two of whom shall be designated as Union Trustees and shall be appointed by the Union.

Thomas J. Moriarty and David Wolpin have been appointed as the Employer Trustees. John T. Coli and Becky Strzechowski have been appointed as the Union Trustees.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.02. (a) Each Trustee shall serve until his death, incapacity, resignation, removal, or replacement as herein provided.

(b) A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under Section 4.05 of this

5

Article.

4.03. Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office at any time by a weighted vote of the Employers who have made Contributions to the Fund during the three months preceding the voting. Each such Employer shall have a number of votes equal to the amount of Contributions (other than delinquent Contributions) paid by that Employer during said three-month period. Such vote shall be conducted whenever a request is supported by Employers who have contributed twenty-five percent (25%) of the Contributions (other than delinquent Contributions) received by the Fund during the three (3) months preceding the request.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or the Employers, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.04. (a) In the event of the death, removal, incapacity to act, or resignation of an Employer Trustee, a successor Trustee shall be appointed by the remaining Employer Trustee, if any. If no Employer Trustee is serving, nominations shall be solicited and an election conducted in accordance with the procedures set forth in Section 4.03. In the event of the death, removal, incapacity to act, or resignation of a Union Trustee, a successor Union Trustee shall be appointed by the Union.

(b) Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities and properties of a Trustee. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust pending the filling of any vacancy or vacancies. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments.

4.05. A Trustee upon signing this Trust Agreement, or upon written acceptance

6

filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.06. The Trustees shall select from among the Trustees a Chairman and a Secretary, one of whom shall be an Employer Trustee and the other a Union Trustee. The term of office for such officers shall be for two (2) years or until his or their successors have been elected.

4.07. No successor Trustee shall be liable or responsible for any acts or defaults of any other Trustee or predecessor Trustee, or for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of the Trust Fund prior to his becoming a Trustee. A successor Trustee shall not be required to inquire into or take any notice of the prior administration of the Trust Fund.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from time to time.

4.09. (a) Regular meetings of the Trustees may be held at such time or times as may be established by the Trustees but not less than annually. Meetings may also be held at any time without notice if all of the Trustees consent. Meetings may be held in conjunction with Trustee meetings of other Trust Funds covering Participants. Special meetings may be called at any time by the Chairman or the Secretary of the Board, upon giving five (5) days' written notice to all other Trustees. Notice may be

7

waived by agreement of all Trustees. Minutes of all meetings shall be kept, but not necessarily verbatim and copies thereof shall be furnished to the Trustees.

(b) Any action by the Trustees may be taken at a meeting, by a phone poll, in a conference call, or in writing without a meeting. Concurrence of all the Trustees, evidenced by their written signatures, shall be required for action taken without a meeting.

(c) Two Trustees shall constitute a quorum at any regular or special meeting of the Trustees, provided that one Union Trustee and one Employer Trustee are present.

(d) Unless otherwise specified herein, the concurring vote of a majority of the Trustees present and voting shall be required to carry any motion or resolution. Each Union Trustee and each Employer Trustee shall be entitled to cast one (1) vote on each motion or resolution; provided, however, that the vote of any absent Trustee shall be allocated among the group of Trustees of which he is a member so that both groups will have an equal number of votes.

(e) A deadlock of the Trustees shall be deemed to exist if a quorum is not present at two successive properly scheduled meetings, or if the vote of the Trustees is equal on any proposal. Whenever a deadlock exists, the Trustees shall first seek mediation in an endeavor to break such deadlock, and if that proves unavailing (or if the Trustees agree to waive mediation), either group of Trustees may advise the other group of Trustees that they wish to submit the deadlocked issue for arbitration to an impartial person to be selected by the Trustees. Should they fail to agree on the impartial person within ten (10) days, any Trustee may petition the American Arbitration Association for a list of five (5) impartial arbitrators experienced in employee benefit fund disputes. The Trustee groups shall alternately and expeditiously strike names from said list and the remaining name shall be the impartial arbitrator. The order of striking shall be determined by chance. The arbitrator's decision shall be final and binding on the Trustees and his fees and expenses, as well as the joint expenses incidental to his

activities and the arbitration, shall be paid from the Trust Fund.

4.10. (a) The Pension Fund and the Board of Trustees shall be bound by the signatures of the Chairman and Secretary. In addition, any instrument may be executed on behalf of the Board by one or more Trustees designated for that purpose by the Board, or by the signature of any other person or persons designated for that purpose by the Board.

(b) Upon the signing of any instrument by an authorized person, all persons, partnerships, corporations or associations may rely thereon that such instrument has been duly authorized by action of the Board of Trustees.

## ARTICLE FIVE
### POWERS, DUTIES AND OBLIGATIONS OF THE TRUSTEES

5.01. The Trustees shall supervise the operation of the Trust and shall conduct the business and activities of the Trust. The Trustees shall hold, manage, care for, and protect the Trust Fund and shall collect the income and Contributions made to the Fund.

5.02. The Trustees are hereby empowered to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Plan and Trust solely in the interest of the Participants, Spouses and Beneficiaries and for the exclusive purpose of (1) providing benefits to Participants and their Spouses and Beneficiaries; and (2) defraying reasonable expenses of administering the Plan and Trust.

5.03. The Trustees are authorized, empowered and directed to invest and reinvest the funds of the Trust in any property or undivided interest therein, including but not limited to bonds, notes, real estate, common and preferred stocks, and interests in trusts, including common trust funds, without being limited by any statute or rule of law concerning investments by trustees. The Trustees may sell or otherwise dispose of such securities or property at any time and may, in their sole discretion, invest the Trust

9

Fund or any part thereof in group contracts, and such other forms of contracts, if the contracts are issued by insurance companies authorized to do business in the State of Illinois, for the purpose of providing for all or a part of the benefits provided under this Trust. The Trustees shall have power (in addition to, and not in limitation of, common law and statutory authority) to exercise in respect to any stocks, bonds, or other property, real or personal, all such rights, powers, and privileges as might be lawfully exercised by any person owning similar stocks, bonds, or other property in his own right.

All or any part of the Trust assets may be invested in any collective investment trust fund qualified for tax exemption under Section 501(a) of the Internal Revenue Code, or amendments thereof, which is then maintained by any bank or trust company whether or not acting as a trustee, co-trustee, or agent for the Trustees hereunder. The document governing each such collective investment trust, as amended from time to time, shall govern any investment therein, and is hereby made a part of this Trust Agreement.

The Trustees shall have the power to borrow from any bank, savings and loan association, insurance company, or any other money lending firm or institution, such sums, and on such terms and conditions, which the Trustees may from time to time determine. The Trustees may hypothecate, mortgage, pledge or otherwise collateralize or secure any indebtedness so created with assets of this Trust; provided, however, that any resolution presented to the Trustees pursuant to the powers contained in this paragraph must be adopted by the affirmative vote of not less than three-fourths of the Trustees, regardless of the number of Trustees present at any meeting.

Such investment actions shall be taken with the care, skill, prudence and diligence, under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Such actions shall include the diversification of the

Fund's investments so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so, and all such actions shall be in accordance with the documents and instruments governing the Trust and Plan insofar as such documents and instruments are consistent with applicable law.

If one or more Investment Managers have been appointed in accordance with the terms of this Restated Agreement, no Trustee shall be liable for the acts or omissions of any such Investment Manager(s) or under any obligation to invest or otherwise manage any asset of the Fund which is subject to the management of any such Investment Manager.

5.04. The Trustees are hereby empowered to allocate fiduciary responsibilities among the Trustees and to designate persons other than Trustees to carry out fiduciary responsibilities as provided in this Restated Agreement. The power to allocate fiduciary responsibility shall not apply to the application of the responsibility to manage the assets of the Fund other than the power to appoint an Investment Manager or Managers.

The Trustees shall have exclusive authority and discretion to manage and control the assets of the Fund except to the extent that such authority to manage, acquire, or dispose of the assets of the Fund is delegated to one or more Investment Managers in accordance with the following paragraph.

The Trustees are empowered to appoint an Investment Manager(s) to manage, acquire, or dispose of any assets of the Fund. An "Investment Manager" is any fiduciary who has been designated by the Trustees to manage, acquire or dispose of any assets of the Fund, who has acknowledged in writing that it is a fiduciary with respect to the Fund and who is: (i) registered as an investment adviser under the Investment Advisers Act of 1940; (ii) is a bank, as defined in that Act; or (iii) is an insurance company qualified to perform such services under the laws of more than one state.

5.05. The Board and each Trustee, to the extent permitted by applicable law,

11

shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons and shall be under no duty to make any investigation of, or inquiry as to, any statement contained in such record, but may accept the same as conclusive evidence of the truth of the statements therein contained.

No Trustee shall be liable for any acts or defaults of any prior Trustee, any other Trustee, any other fiduciary, any party in interest or any other person except to the extent required by applicable law; it being the intent and purpose of the parties hereto that, to the extent permitted by law, each Trustee shall be liable only for his own acts or omissions occurring during his term of service as Trustee.

5.06. The cost and expenses of any action, suit or proceeding brought by or against the Board or any Trustee, including counsel fees, shall be paid from the Trust Fund if permitted by law, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that the Board or such Trustee was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

5.07. No individual or person may act as agent for the Fund or the Plan unless specifically authorized by this Restated Agreement or in writing by the Trustees. Neither an Employer nor the Union, or any representative of an Employer or the Union, in such capacity, is authorized to interpret the Plan or Trust Agreement, nor can any such person act as agent of the Trustees. Only the Board of Trustees is authorized to interpret the Plan or Trust Agreement.

5.08. The Trustees shall keep true and accurate books of account and a record of all their transactions, meetings and the actions taken at such meetings or by informal action of the Trustees.

5.09. The Trustees shall procure an audit of the books of the Trust by a Certified Public Accountant not less frequently than once for each fiscal year and a copy of each such audit shall be furnished, upon request, to each Trustee, and a copy of such audit

12

shall be kept available for inspection by authorized persons during business hours at the office of the Trustees for the time required by law and/or for the time required by the rules and regulations of the Fund.

5.10. The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust or Plan. All rules and regulations adopted by majority action of the Trustees for the administration of the Trust Fund shall be final and binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees shall have the exclusive authority and discretion to interpret and apply this Trust Agreement and the Pension Plan, including questions involving eligibility for benefits and the standard of proof to be required in any matter, and all such interpretations and applications shall be final and binding upon all parties and claimants. Benefits under the Plan will be paid only if the Board of Trustees determines in its discretion that the individual is entitled to the benefits.

5.11. The Trustees shall use and apply the Trust Fund for the following purposes:

(a)     To pay or provide for the payment of all expenses of collecting the Contributions and administering the affairs of this Trust, including the employment of such administrative, custodial, legal, actuarial, accounting, expert, and clerical assistance as may be necessary, the purchase or the lease of such premises as may be necessary for the operation of the affairs of the Trust, and the purchase or lease of such materials, supplies and equipment as the Trustees in their discretion find necessary or appropriate to the performance of their duties.

(b)     To pay or provide for benefits to eligible Participants, Spouses, and Beneficiaries.

(c)     To pay or provide for the payment of expenses incidental to the operation of an office, as well as incidental matters affecting Participants and their interests, such

13

as attendance at Union-related activities concerning retirees.

(d)     To pay or provide for the payment of expenses and lawful compensation of Trustees and/or Fund employees in connection with attendance at educational conferences and seminars.

5.12.   The receipt of the Trustees for any money or property received by them shall discharge the person or persons paying or transferring the same.

5.13.   All Trust Funds not invested shall be deposited by the Trustees in such depository or depositories ("Custodian") as the Trustees shall from time to time select and any such deposit or deposits shall be made in the name of the Trust.  Any Trustee authorized to deposit, transfer or withdraw funds held in a trust account(s) shall have the authority to transfer, by wire or phone, such funds to a benefit or checking account.

Except as provided otherwise by Resolution of the Trustees, all such funds may be disbursed by check or draft signed by at least one Employer Trustee and one Union Trustee.

To the extent permitted by law, no Trustee shall be liable in any manner for any loss to the Fund occasioned by the fault or negligence of any Custodian selected by the Trustees in good faith and in the exercise of reasonable business judgment.

5.14.   The Trustees are empowered to determine the terms and conditions upon which either an additional craft or class of employees or an additional employer and  its employees may participate in the Fund, and to enter into reciprocal agreements with trustees of other trust funds when to do so, in the opinion of the Trustees, would effectuate the purposes of this Trust Agreement.

5.15.   Statements, documents, or notices to the Trustees, the Union, or any Employer hereunder shall, unless otherwise specified, be sufficient if in writing and delivered to or sent by pre-paid first class mail or by facsimile.

5.16.   The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

14

(a)     To formulate, adopt and administer one or more Pension Plans, i.e., defined benefit plans, for the exclusive benefit of eligible Participants and, thereafter, to amend said Plan(s) whenever the Trustees deem it advisable. The Trustees may provide for benefits for the Spouses and/or Beneficiaries of Participants. Benefit payments to eligible recipients may be by lump sum or monthly benefits, but not in any form prohibited by the Internal Revenue Code or other Federal law. The Pension Plan and all amendments thereto shall be filed by the Trustees as part of the records and minutes of the Trustees. Any benefits provided to a Participant, Spouse and/or Beneficiaries, shall be paid solely out of the assets of the Trust Fund.

(b)     To promulgate and establish rules and regulations for the administration and operation of the Pension Plan in order to effectuate the purposes thereof; and in pursuance thereof (but without limitation on the powers of the Trustees by reason of such enumeration), to formulate and establish the conditions of eligibility, qualifications for benefits, the method of providing benefits, and any and all matters which they, in their discretion, may deem necessary or proper to effectuate the purposes and intent of the Pension Plan. No rule or regulation shall conflict with the terms of this Trust Agreement.

(c)     To enter into any and all contracts and agreements for carrying out the terms of this Restated Agreement and for the administration of the Trust Fund and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts, agreements and acts shall be binding and conclusive on the parties and the Participants.

(d)     To keep property and securities registered in the name of the Trustees or in the name of the Custodian or a nominee(s) or in unregistered or bearer form, without disclosure of any fiduciary relationship.

(e)     To establish and accumulate as part of the Trust Fund a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of the Trust

and Plan.

(f) To pay out of the funds of the Trust all real and personal property taxes, income taxes and other taxes of any and all kind levied or assessed under existing or future laws upon or in respect to the Trust Fund or any money, property or securities forming a part thereof.

(g) To compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or understanding due or owing from or to the Pension Fund on such terms and conditions as the Trustees, in their sole discretion, may deem advisable.

(h) To consult with legal counsel with respect to the meaning or construction of this Restated Agreement and the Plan, or their obligations and duties hereunder, or with respect to any action or proceeding, or any question of law, and shall be fully protected, to the extent permitted by law, with respect to any action taken or omitted by them in good faith pursuant to the advice of counsel. Legal counsel may, but need not be, counsel to the Union or any Employer.

(i) To do all acts, whether or not expressly authorized herein, which the Trustees deem necessary or proper.

5.17. The Trustees shall provide for fidelity bonds, in such form and amounts as may be required by statute, for their fiduciaries and every person who handles funds or other property of the Trust Fund. If no such statutory requirement shall exist, such bonds shall be in such form and amounts as the Trustees may determine. In addition, the Trustees may purchase insurance for their fiduciaries and for themselves to cover liabilities or losses occurring by reason of the act or omission of a fiduciary; provided, however, that any such insurance policies shall be in the form and manner permitted by law.

5.18. The Board may employ a Fund Manager who may, but need not be, a Trustee, and delegate to such Fund Manager the authority to act upon all matters in

16

connection with the administration of the Trust and Plan, including the authorization to execute those documents which, in the sole discretion of the Trustees, are deemed necessary for the day-to-day administration of the Trust and Plan; the responsibility of accounting for the Contributions made to the Trust Fund and the collection of delinquent Contributions; and such other function as the Board may deem advisable. Any Fund Manager so appointed may be employed part-time, may provide similar services for other funds and may engage in unrelated employment activities.

5.19. The Trustees shall have and maintain an office in the State of Illinois which shall be deemed the situs of the Trust Fund, and which may be in the office building of the Union.

5.20. It is further agreed and understood that there is no liability upon the Union, any Employer, or the Trustees for the direct payment of any benefit which has been established by the Trustees.

5.21. The Union and the Employers assume no obligation or responsibility to any person for any act or failure to act of the Trustees, the attorneys, any insurance company, or any Participant. The Trustees shall have no obligation or responsibility regarding any action required by the Collective Bargaining Agreement, the Plan or this Trust Agreement to be taken by the Union or the Employers, any insurance company, or any other person, or for the result of the failure of any of the above to act. Any person or entity providing professional services to any Participant or Dependent shall maintain professional liability insurance or agree in writing to indemnify and hold harmless the Trustees for any liability imposed upon the Trustees as a result of the actions of the professional.

## ARTICLE SIX

### CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in

17

accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Pension Plan, except as required by law.

(b)    The Trustees may compel and enforce the payment of Contributions in any manner which they may deem proper but without limitation upon any rights and privileges the Union may have in this connection. Expenses incurred in the collection of such Contributions shall be paid from the Trust Fund, even though such expenses are subject to reimbursement by the delinquent Employer.

6.02.    The failure of an Employer to pay Contributions by the date established by the Collective Bargaining Agreements or, if no date is set by the Collective Bargaining Agreement, by the rules and regulations adopted by the Trustees shall constitute a violation of the applicable Collective Bargaining Agreement between such Employer and the Union, as well as a violation of the Employer's obligations hereunder.

The Trustees shall have the right to adopt rules and regulations relating to the collection of Employer Contributions, including provisions for time of payment, collection of interest, audit fees, attorneys' fees at the rate set by the Trustees in their sole discretion, costs, and liquidated damages as specified in this Section. An Employer in default as of the date established by the Collective Bargaining Agreement or the Trustees for payment of Contributions shall be liable for an additional amount of twenty

18

percent (20%) of the delinquent payment or $50.00, whichever is greater, and interest at the rate set forth in the Plan or the rules and regulations. In the absence of a rate set forth in the Plan or rules and regulations, the interest rate used each month shall be the prime rate plus one percent (1%), as reported in the Wall Street Journal on the first business day of each month. Liquidated damages shall compensate the Fund for some or all of the damages arising from lost earnings, administrative costs, uncertainties causing difficulties in forecasting earnings and managing investments, the disruptive effects to the benefit system of unequal performance of obligations among Employers, and the potential liability of Trustees for transactions prohibited by federal law.

The Trustees may require a delinquent Employer or new Employer to deposit with the Trustees, in cash, or by a bond with corporate surety, an amount not to exceed three (3) months' estimated Contributions, as determined by the Trustees.

The Trustees may waive all or part of the liquidated damages and interest where Contributions are found by the Trustees to have been delinquent as a result of clerical errors or administrative problems beyond the control of an Employer and where there have been good faith efforts by the Employer to comply with the applicable rules and regulations for payment of Contributions.

6.03. Each Employer and its affiliated or related companies or businesses shall furnish to the Trustees on demand the names of all employees, their Social Security numbers, the time worked by each employee, the Contributions due or payable to the Trust Fund, and such other information, including cash journals, wage and payroll records, income tax records, and other business records, as the Trustees or their agents may reasonably require in connection with the administration of the Trust. The Trustees, or their authorized representative, shall have the right to examine and audit the pertinent books and records (as determined by the Trustees) of each Employer and its affiliated or related companies whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All

19

Employers shall annually furnish to the Trustees, if requested by them, a statement showing whether (a) the Employer is a corporation and the names of all of its officers and shareholders (and the percentage of stock held by each) or (b) if not a corporation, a statement showing that it is a partnership or an individual proprietorship and furnishing the names of the partners or the name of the individual proprietor.

6.04. Nothing in this Restated Agreement shall prevent a Contribution which is made by an Employer by a mistake of fact or law to be returned by the Trustees to such Employer, upon written request, within twelve months after the Trustees determine that the Contribution was made by such a mistake.

6.05. The Trustees may require Employers to deposit with the Trustees, in advance as a guarantee for the payment of monthly contributions, an amount to be determined by the Trustees as a condition to such Employer's participation herein and to require that said guarantee be continuously maintained by such Employer as a condition to the continued participation herein.

## ARTICLE SEVEN

### CONTROVERSIES AND DISPUTES

7.01. In any controversy, claim, demand, suit at law or other proceeding between any Participant, Spouse, Beneficiary, or any other persons and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union, affiliated employee benefit funds, or with any Employer, any facts certified to the Trustees by the Union or any Employer, any facts which are of public record, and any other evidence pertinent to the issue involved.

7.02. All questions or controversies arising in any manner between any parties or persons in connection with the Trust Fund or its operation, whether as to any claim for any benefits by an Participant or any other person, or whether as to the construction

of the language or meaning of the rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund shall be submitted to the Board of Trustees for decision. The decision of a majority of the Board shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

## ARTICLE EIGHT
## SPENDTHRIFT CLAUSE

No monies, property, equity or interest of any nature whatsoever in the Trust Fund, or in any benefits or monies payable therefrom, shall be subject, in any manner by any Participant, Spouse, Beneficiary, or person claiming through such person, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void. If a Participant, Spouse, or Beneficiary shall attempt to or shall alienate, sell, transfer, assign, pledge, mortgage or otherwise encumber his benefits under the Pension Plan or any part thereof, or if by reason of his bankruptcy or other event happening at any time, such benefits would devolve upon anyone else or would not be enjoyed by him, the Trustees in their discretion may terminate his interest in any such benefit and hold it to, or apply it for, the benefit of such Participant, Spouse, Beneficiary, children, or other dependents, or any of them, in such manner as the Trustees may deem proper.

Notwithstanding any provision in this Article to the contrary, the Trustees will honor any qualified Domestic Relations Order as that term is defined by federal law.

21

## ARTICLE NINE

## PAYMENT TO PERSONS UNDER LEGAL DISABILITY

If any benefit payments become payable to a person under legal disability or to a person not adjudicated incompetent but who, by reason of mental or physical disability, is unable in the opinion of the Trustees to administer properly such payments, then such payments may be paid out by the Trustees for the benefit of such person in any of the following ways:

(a)    Directly to any such person;

(b)    To the legally appointed guardian or conservator of such person;

(c)    To any spouse, child, parent, brother or sister of such person for his welfare, support and maintenance;

(d)    By the Trustees using such payments directly for the support, maintenance and welfare of any such person.

The Trustees shall have no duty or obligation to see that any such payments are used or applied for the purpose or purposes for which paid.

## ARTICLE TEN

## AMENDMENT OF AGREEMENT

It is anticipated that in the administration of this Trust conditions may arise that are not foreseen at the time of the execution of this Restated Agreement. It is the intention of the parties that the power of amendment, which is hereinafter given, be exercised in order to carry out the provisions of this Trust, among which is to pay the largest benefits possible which are consistent with the number of Participants becoming and likely to become eligible for such payments, the amount of funds which are available and which will probably become available, and sound actuarial practice. Therefore, the Trustees are given the power to amend this Restated Agreement by

22

majority vote at any time, and from time to time, and all parties to the Trust and all persons claiming an interest thereunder shall be bound thereby.

No Participant or any other person shall have any vested interest or right in the Trust Fund or in any payments from the Trust Fund, except to the extent granted by the Pension Plan. The Trustees shall have full authority, if consistent with federal law, to amend, repeal, add to, or take away any right or payment, retroactive or otherwise, that they deem proper for the preservation of this Trust Fund; provided, however, in no event shall the Trust Fund be used for any purpose other than the purposes set forth in this Restated Agreement and for the purposes of paying the necessary expenses incurred in the administration of this Trust.

## ARTICLE ELEVEN
## TERMINATION AND MERGER OF TRUST

11.01. In the event the obligation of all Employers to make Contributions shall cease, or the Trust Fund, in the opinion of the Trustees, is inadequate to carry out the intent and purposes of the Trust, the Trustees shall apply the Trust Funds to the payment of expenses and to the purposes specified in Article Two so far as possible; any balance of the Trust Fund which cannot be applied shall be applied to such other uses as, in the opinion of the Trustees, will best accomplish the purposes for which the Trust was established. Upon the disbursement of the entire Trust Fund, the Trust shall terminate. In no event, upon termination, shall any assets of the Trust Fund revert to any Employer.

11.02. In the event this Trust is subject to the rule against perpetuities as existing in the law of the State of Illinois, at the time in this Article fixed for the termination of the Trust, the Trust shall terminate twenty (20) years after the date of the death of the last of the Participants covered by this Restated Agreement at the time of the execution of this Restated Agreement.

11.03. Upon termination, the Trustees shall notify the Union and each Employer contributing to the Fund, and any other person, partnership, corporation or association with whom they are dealing, and shall continue as Trustees for the purpose of dissolution.

11.04. In lieu of the distribution and liquidation upon termination as set forth in Section 11.01, the Trustees may, after all obligations of the Trust have been satisfied, turn over any surplus monies and property in the Fund to any future pension trust that may be created by and between Employers and the Union pursuant to collective bargaining agreements.

11.05. In addition to any other authority granted under this Trust Agreement, the Trustees shall have the authority to merge this Trust Fund with another trust fund providing for the same or similar benefits. The terms and conditions of such a merger shall be within the sole discretion of the Trustees.

## ARTICLE TWELVE

## MISCELLANEOUS

12.01. In no event shall the Employers, directly or indirectly, receive any refund of Contributions, except as provided in Section 6.04, participate in the disposition of the Trust Fund, or receive any benefits from the Trust Fund. Upon payment to the Trustees, all responsibilities of the Employers for Contributions shall cease and the Employers shall have no responsibilities for the acts of the Trustees. No Participant, Spouse, or Beneficiary shall have any individual right, title, interest or claim against any Employer, Employer's Contribution, or the Trust Fund, except as may be expressly provided for in this Restated Agreement.

12.02. The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and judicial determination of any questions in connection with their duties and obligations under this Trust, or in connection with the administration or distributions

24

thereof.

12.03. In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees in their sole discretion, is made or the Trustees have been adequately indemnified against loss.

12.04. Where used in this Restated Agreement, words in the masculine shall be read and construed as in the feminine and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

12.05. The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Restated Agreement or be construed as part thereof.

12.06. This Restated Agreement shall in all respects be construed according to, and be governed by, the laws of the State of Illinois, except as may be otherwise provided by federal law.

12.07. Neither this Trust Agreement nor any amendments thereto, nor any rules and regulations adopted for the administration of the same, nor any award of any arbitrator appointed hereunder shall modify the Collective Bargaining Agreements between the Union and any association or any Employer or add to or alter the obligations of the Employers or the Union thereunder. The provisions of this paragraph shall in no event be subject to amendment.

12.08. No Employer nor the Union shall at any time, and under any circumstances or conditions, have any financial obligations under this Trust or the Pension Plan other than the payment of any required Contributions and such other amounts as may be provided for under Article Six.

25

## ARTICLE THIRTEEN

## SAVINGS CLAUSE

Should any provision of this Restated Agreement be held to be unlawful, such fact shall not adversely affect the other provisions herein contained, or the application of said provisions, unless such illegality shall make impossible the functioning of the Trust or Plan. Except to the extent required by law, no Trustee shall be held liable for any act done or performed in pursuance of any provision hereof prior to the time such act or provisions shall be held unlawful by a court of competent jurisdiction.

IN WITNESS WHEREOF, the Trustees have caused this Restated Agreement to be executed this 25th day of July, 2000.

UNION TRUSTEES:

EMPLOYER TRUSTEES:

26

**Amendment to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Pension Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund, and

Whereas, the Board of Trustees desires to increase the number of Trustees representing contributing employers and Local 727,

Now, therefore, it is hereby resolved effective February 24, 2005, that Article Four is amended, in part, to provide as follows:

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of six (6) Trustees, three (3) of whom shall be designated as Employer Trustees, and three (3) of whom shall be designated as Union Trustees.

Thomas J. Moriarty and Carl Tominberg have been appointed as the Employer Trustees. John T. Coli and Becky Strzechowski have been appointed as the Union Trustees. Effective February 24, 2005, the incumbent Employer Trustees shall have the authority to appoint the third Employer Trustee; the Union Trustee shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.02. (a)   Each Trustee shall serve until his death, incapacity, resignation, removal, or replacement as herein provided.

(b)   A Trustee may resign at any time by giving at least then (10) days' notice in writing to the remaining Trustees.  The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date.

4.03.   Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office by the unanimous vote of the other two (2) Employer Trustees.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or by the Employer Trustees, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.04. (a)   In the event of the death, removal, incapacity to act, or resignation of an Employer Trustee, a successor Trustee(s) shall be appointed by the remaining Employer Trustee(s).  In the event of the death, removal, incapacity to act, or resignation of a Union Trustee, a successor Union Trustee shall be appointed by the Union.

(b)   Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities and properties of a Trustee.  No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust pending the filling of any vacancy or vacancies.  Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments.

2

3

This Amendment is approved and adopted this 24th day of February 2005.

**UNION TRUSTEES**

**EMPLOYER TRUSTEES**

John T. Coli

Becky Strychowski

Thomas J. Moriarty

Carl Grimberg

3

### Amendment No. 2 to the Restated Agreement and
### Declaration of Trust of the
### Teamsters Local Union No. 727 Pension Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund, and

Whereas, the Board of Trustees desires to increase number of Trustees representing contributing employers and Local 727,

Now, therefore, it is hereby resolved that effective December 19, 2007, that Article Four is amended, in part, to provide as follows:

### ARTICLE FOUR

### APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of eight (8) Trustees, four (4) of whom shall be designated as Employer Trustees, and four (4) of whom shall be designated as Union Trustees.

Thomas J. Moriaty, Carl Tominberg and Greg Youmans have been appointed as the Employer Trustees. John T. Coli and Becky Stzechowski have been appointed as the Union Trustees. Effective December 19, 2007, the incumbent Employer Trustees shall have the authority to appoint the fourth Employer Trustee; the Union Trustees shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.03. Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office by the unanimous vote of the other three (3) Employer Trustees.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or by the Employer Trustees, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

This Second Amendment is approved and adopted this 19th day of December 2007.

UNION TRUSTEES:                                    EMPLOYER TRUSTEES:

-2-

**Amendment No. 3 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Pension Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund, and

Whereas, the Board of Trustees desires to clarify the potential sources of contributions to the Trust,

Now, therefore, it is hereby resolved that effective November 1, 2011, that Article Six, Section 6.01(a) is amended, to replace the existing text with the following:

ARTICLE SIX

CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Pension Plan.

This Third Amendment is approved and adopted this 1st day of November 2011.

UNION TRUSTEES:                              EMPLOYER TRUSTEES:

_John t Coli_

_John Cal._

_____

_____

_Thomas J. Moriarty_

_Carl Brunzberg_

_Gregory T. Youmans_

-2-

Amendment No. 4 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Pension Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund, and

Whereas, the Board of Trustees desires to adopt a "free look" provision with respect to employer withdrawal liability;

Now, therefore, it is hereby resolved that effective October 1, 2016, Article Twelve, Section 12.09 is added to provide as follows:

## ARTICLE TWELVE
## MISCELANEOUS

\* \* \*

12.09  (a) Consistent with ERISA Section 4210 (the "Free Look Rule"), an Employer that would otherwise incur a complete withdrawal or a partial withdrawal, pursuant to Subtitle E, Part 1 of ERISA, will not be deemed to have withdrawn, despite the cessation of its obligation to contribute to the Fund, if the Trustees determine, in their sole and absolute discretion, that the following conditions are met:

(1) The Employer did not have an obligation to contribute to the Fund before October 1, 2016;

(2) The Employer's obligation to contribute to the Fund did not exceed forty-eight (48) consecutive calendar months, starting with the first month for which the Employer is obligated to contribute to the Fund;

(3) The Employer was required to make contributions to the Fund for each Plan Year in an amount that was less than 2% of the sum of all employer contributions made to the Fund for each Plan Year during such 48 month period;

(4) The Employer has never before avoided full or partial withdrawal liability from the Fund under this "free look" provision;

(5) Past service credit, if any, otherwise grantable to Participants (other than current pensioners) for employment with the Employer will be cancelled consistent with Code Section 411(a)(3)(E) and the terms of the applicable Plan Document; and

(6) The ratio of the Fund's assets (determined as of the last day of the Plan Year preceding the first Plan Year in which the Employer was obligated to contribute to the Fund) to benefit payments made during that Plan Year was at least 8-to-1.

1

(b)    The term "Plan Year" shall mean the 12-month period from March 1 through February 28 (or 29, if applicable).

(c)    The Trustees have the sole and exclusive authority to determine whether an Employer has satisfied the requirements set forth in Section 12.09(a). The Trustees' determination shall be final and binding.

(d)    The Employer must submit any forms, questionnaires, documentation, or information requested by the Trustees in connection with the Trustees' evaluation of whether the requirements of Section 12.09(a) are met. If the Employer fails to provide the Trustees with the requested information within sixty (60) days, the Trustees may conclude that the requirements of 12.09(a) have not been met.

(e)    This provision shall not affect the liability of any Employer or former Employer for reallocation liability in the event of a mass withdrawal under ERISA Section 4219(c)(1)(D).

This Fourth Amendment is approved and adopted this 28th day of September 2016.

UNION TRUSTEES:                        EMPLOYER TRUSTEES:

2

Amendment No. 5 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Pension Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund (the "Fund"), and

Whereas, the Board of Trustees desires to memorialize the Fund's merger with the Employees' Pension Plan of Local Union No. 726, I.B. of T. (the "726 Plan");

Now, therefore, it is hereby resolved that effective as of November 1, 2016, Article Twelve, Section 12.10 is added to provide as follows:

## ARTICLE TWELVE
## MISCELANEOUS

\* \* \*

12.10  Effective as of November 1, 2016, the Employees' Pension Plan of Local Union No. 726, I.B. of T. (the "726 Plan") is merged into the Fund, in accordance with the terms of the Merger Agreement among Teamsters Local 700, the 726 Plan, and the Fund executed on or about October 26, 2016.

This Fifth Amendment is approved and adopted this 18th day of October 2017.

UNION TRUSTEES:

EMPLOYER TRUSTEES:

### Sixth Amendment to the Restated Agreement and
### Declaration of Trust of the
### Teamsters Local Union No. 727 Pension Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund, and

Whereas, the Board of Trustees deems it prudent to change the appointing authority of the Employer Trustees to be the Funeral Directors Services Association of Greater Chicago as set forth in the original trust document and subsequent restatement as well as the Apartment Building Owners and Managers Association,

Now, therefore, it is hereby resolved effective March 1, 2023, that Sections 4.01 through 4.05, and Section 4.08 of Article Four are amended and replaced in their entirety to provide as follows:

### ARTICLE FOUR

### APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of eight (8) Trustees. Four (4) of whom shall be designated as Employer Trustees, two (2) of whom shall be appointed by the Funeral Directors Services Association of Greater Chicago ("FDSA"), and two (2) of whom shall be appointed by the Apartment Building Owners and Managers Association ("ABOMA"). Four (4) of whom shall be designated as Union Trustees and shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

1

In the event the FDSA is unable or unwilling to appoint an Employer Trustee, ABOMA shall assume the FDSA's appointment authority. In the event that ABOMA is unable or unwilling to appoint an Employer Trustee, the FDSA shall assume ABOMA's appointment authority.

4.02.   (a)   Each Trustee shall serve until his death, incapacity, resignation, or replacement, as provided herein.

(b)   A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under this Article.

4.03.   In the event of the death, incapacity to act, resignation or removal of a Trustee, his successor Trustee shall be appointed by the party having responsibility for the appointment and designation of such Trustee. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee hereunder. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to act in the manner herein provided to administer the affairs of the Trust pending the filling of any vacancy or vacancies.

4.04.   The Union, at any time, may remove a Union Trustee and appoint a successor Trustee to fill any vacancy. The FDSA, at any time, may remove an Employer Trustee appointed by it and appoint a successor Trustee to fill any vacancy. ABOMA, at any time, may remove an Employer Trustee appointed by it and appoint a successor

2

Trustee to fill any vacancy. Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union, the FDSA or ABOMA, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.05. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments. A Trustee upon signing this Trust Agreement, or upon written acceptance filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer, the FDSA, ABOMA, or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from time to time.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Signature page follows*

3

IN WITNESS WHEREOF, the Trustees have caused this Sixth Amendment to be approved and adopted this 24th day of February 2023.

UNION TRUSTEES:                                    EMPLOYER TRUSTEES:

_____                            _____

_____                            Gregory T. Youmans

_____                            _____
Nick A Mulita

_____                            Carl Tominberg / por

4

### Seventh Amendment to the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Pension Fund, and

Whereas, the Board of Trustees agrees to change the appointing authority of the Employer Trustees to be the Funeral Directors Services Association of Greater Chicago as set forth in the original trust document and subsequent restatement as well as the Apartment Building Owners and Managers Association and the Chicago Parking Association,

Now, therefore, it is hereby resolved effective March 1, 2024, that Sections 4.01 through 4.05, and Section 4.08 of Article Four are amended and replaced in their entirety to provide as follows:

### ARTICLE FOUR

### APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of twelve (12) Trustees. Six (6) of whom shall be designated as Employer Trustees, two (2) of whom shall be appointed by the Funeral Directors Services Association of Greater Chicago ("FDSA"), two (2) of whom shall be appointed by the Apartment Building Owners and Managers Association ("ABOMA"), and two (2) of whom shall be appointed by the Chicago Parking Association ("CPA"). Six (6) of whom shall be designated as Union Trustees and shall be appointed by the Union.

1

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

In the event an employer association is unable or unwilling to appoint an Employer Trustee, the remaining associations shall assume the appointment authority of one additional Employer Trustee each so that each remaining employer association will have appointment authority over three (3) Employer Trustees.

4.02. (a) Each Trustee shall serve until his death, incapacity, resignation, or replacement, as provided herein.

(b) A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under this Article.

4.03. In the event of the death, incapacity to act, resignation or removal of a Trustee, his successor Trustee shall be appointed by the party having responsibility for the appointment and designation of such Trustee. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee hereunder. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to act in the manner herein provided to administer the affairs of the Trust pending the filling of any vacancy or vacancies.

4.04. The Union, at any time, may remove a Union Trustee and appoint a successor Trustee to fill any vacancy. The FDSA, at any time, may remove an Employer

2

Trustee appointed by it and appoint a successor Trustee to fill any vacancy. ABOMA, at any time, may remove an Employer Trustee appointed by it and appoint a successor Trustee to fill any vacancy. The CPA, at any time, may remove an Employer Trustee appointed by it and appoint a successor Trustee to fill any vacancy. Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union, the FDSA, ABOMA, or the CPA, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.05. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments. A Trustee upon signing this Trust Agreement, or upon written acceptance filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer, the FDSA, ABOMA, the CPA, or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from time to time.

3

IN WITNESS WHEREOF, the Trustees have caused this Seventh Amendment to be approved and adopted this 31st day of January 2024.

UNION TRUSTEES:

EMPLOYER TRUSTEES:

4

# Exhibit C

### RESTATED AGREEMENT AND DECLARATION OF TRUST
### OF THE
### TEAMSTERS LOCAL UNION NO. 727
### LEGAL AND EDUCATIONAL ASSISTANCE FUND

THIS RESTATED AGREEMENT AND DECLARATION OF TRUST (herein sometimes referred to as the "Restated Agreement") is made and entered into as of this 25th day of July , 2000, by and between the Trustees, JOHN T. COLI, BECKY STRZECHOWSKI, THOMAS J. MORIARTY and DAVID WOLPIN, who, with their successors designated in the manner herein provided, are hereinafter called the "Trustees" or "Board of Trustees."

### WITNESSETH

WHEREAS, the Union and Employers are parties to Collective Bargaining Agreements requiring periodic payments by Employers of Contributions for the purpose of providing and maintaining a legal and educational assistance plan ("Legal and Educational Assistance Plan") for certain qualified employees covered by and entitled to the benefits of those collective bargaining agreements and for dependents of such employees; and

WHEREAS, in order to implement and carry out the provisions of the Plan, the Board of Trustees intend to meet the requirements of a tax exempt organization under Section 501(c)(9) of the Internal Revenue Code of 1986 or under any comparable section or sections of future legislation which amends, supplements, or supersedes said section; and

WHEREAS, it is desired that the Trust will conform to the applicable requirements of Sections 302(c)(7) and (8) of the Labor Management Relations Act of 1947, as amended, which permits trust funds for the purpose of defraying the costs of education and legal services, and of the Employee Retirement Income Security Act (ERISA) of 1974, as amended; and

WHEREAS, the signatory Trustees, who were appointed pursuant to the terms of the Trust Agreement, desire to update the aforesaid Trust Agreement into a Restated Agreement and Declaration of Trust and to make such changes as may be appropriate for the continued viability of the Trust Fund; and

WHEREAS, said Trustees are authorized by the Trust Agreement to enact this Restatement;

NOW, THEREFORE, the Trustees hereby accept and adopt all of the provisions of this Restated Agreement. The Trustees declare that they will receive and hold the Contributions, and any other money or property which may come into their hands as Trustees, with the powers and duties and for the uses and purposes as hereinafter set forth:

## ARTICLE ONE

## NAME

This Trust Fund shall be designated and known as the "TEAMSTERS LOCAL UNION NO. 727 LEGAL AND EDUCATIONAL ASSISTANCE FUND" and is sometimes referred to herein as the "Trust", "Fund", "Legal and Educational Assistance Fund" or "Trust Fund".

## ARTICLE TWO

## PURPOSES

2.01    The purpose of this Trust is (1) to assist Participants and their Dependents in obtaining competent, professional legal services and advice on personal legal matters, as funded by payments from the Trust Fund to a cooperating attorney or attorneys selected in the manner prescribed by the Trustees; provided, however, that no payments shall be used to finance legal services against the Union, an Employer, the Trustees, the Trust Fund or the Teamsters Local Union No. 727 Pension Fund or Health and Welfare Fund; and (2) to assist Participants and their Dependents in pursuing a

2

higher education.

2.02. The Trustees intend, within the terms of this Restated Agreement and acting within their exclusive discretion, to provide the maximum amount of benefits possible, consistent with good business practice, after taking into consideration the reasonable reserves to be established. The Trustees shall have the exclusive authority to increase or decrease the various types of benefits which in their judgment can best be provided from the Fund's assets. All of the parties intend that the benefits are limited to those which can be financed as a result of Contributions and investment earnings. It is expressly understood and agreed that there is no liability upon the Union, any Employer or association, or the Trustees for the furnishing of any specific type or amount of benefit to the Participants or Dependents.

## ARTICLE THREE
## DEFINITION OF TERMS

Unless the context clearly indicates otherwise, the following terms shall be construed as hereinafter defined:

3.01. The term "Union" shall mean Auto Livery Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxi Cab Drivers, Miscellaneous Garage Employees, Car Washers, Greasers, Polishers and Wash Rack Attendants Union, Local No. 727, an affiliate of the International Brotherhood of Teamsters ("I.B.T.").

3.02. The Term "Employer" shall mean all employers who are obligated to make Contributions to the Trust Fund pursuant to the terms of any Collective Bargaining Agreement. For the purposes of the Plan only, the Union, this Trust Fund, the Teamsters Local Union No. 727 Health and Welfare Fund ("Health and Welfare Fund"), and the Teamsters Local Union No. 727 Pension Fund (" Pension Fund") will be considered Employers with respect to the officers and employees of each for whom

3

Contributions are paid, but shall not participate in the selection or removal of Employer Trustees as hereinafter provided.

3.03.  The term "Employee" shall mean any individual who is represented for collective bargaining purposes by the Union, employed by an Employer, and/or for whom the Employer is obligated to make a Contribution to this Fund; provided, however, that the Trustees may set up standards for eligibility for benefits.  In addition, provided the requisite Contributions are made, the term "Employee" may include the following:  (a) employees engaged in any capacity by an Employer who are accepted for participation by the Trustees; and (b) the Trustees, officers and employees of this Fund, the Pension Fund, the Health and Welfare Fund, and the Union.

3.04.  The term "Participant" shall mean any Employee who has satisfied the Plan's eligibility requirements to receive legal or educational assistance benefits provided by the Plan.

3.05.  The terms "Trustees" or "Board" shall mean the Trustees designated in this Restated Agreement together with their successors designated and appointed in accordance with the terms and procedures of this Trust Agreement.

3.06.  The term "Trust Agreement" shall mean this Restated Agreement and Declaration of Trust, including any amendments, modifications, revisions or extensions hereof.

3.07.  The terms "Fund", or " Legal and Educational Assistance Fund" or "Trust Fund" shall mean the funds held in trust for the purposes of this Trust Agreement, and shall consist of all monies due the Trust as Contributions, and any other property or income received and held by the Trustees for the uses and purposes set forth in this Trust Agreement.

3.08.  The term "Dependents" shall mean the spouse of an Employee and an unmarried child of an Employee, all as determined in detail by such rules and regulations as the Trustees may adopt from time to time.

4

3.09. The term "Contributions" shall mean the payments required to be made by Employers to the Trust Fund pursuant to Collective Bargaining Agreements. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Legal and Educational Assistance Plan, except as required by law.

3.10. The terms "Plan" or " Legal and Educational Assistance Plan" shall mean the Teamsters Local Union No. 727 Legal and Educational Assistance Plan, and any program, rules or regulations established by the Trustees, as from time to time amended, concerning benefits to be provided Participants and Dependents. The Trustees may adopt more than one Plan with different benefits, contribution levels, and other provisions. If more than one Plan is adopted, each shall be covered by the term "Plan" or " Legal and Educational Assistance Plan" as used in this Trust Agreement.

3.11. The term "Custodian" shall mean the bank or trust company, if any, selected by the Board of Trustees to hold the assets comprising the Trust Fund or to perform such functions in the administration of the Plan and the administration and investment of the Trust Fund as the Trustees may designate.

3.12. The term "Collective Bargaining Agreement" shall mean any collective bargaining agreement in force and effect from time to time between the Union and any association or any Employer which provides for Contributions to the Trust Fund. Such term shall also be deemed to include other written agreements by which any person or an Employer is obligated to make Contributions to the Trust Fund.

3.13. The term "Code" means the Internal Revenue Code of 1986, as amended.

3.14. The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of

four Trustees, two of whom shall be designated as Employer Trustees and shall be appointed by the Employers or their representative, and two of whom shall be designated as Union Trustees and shall be appointed by the Union.

Thomas J. Moriarty and David Wolpin have been appointed as the Employer Trustees. John T. Coli and Becky Strzechowski have been appointed as the Union Trustees.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.02. (a) Each Trustee shall serve until his death, incapacity, resignation, removal, or replacement as herein provided.

(b) A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under Section 4.05 of this Article.

4.03. Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office at any time by a weighted vote of the Employers who have made Contributions to the Fund during the three months preceding the voting. Each such Employer shall have a number of votes equal to the amount of Contributions (other than delinquent Contributions) paid by that Employer during said three-month period. Such vote shall be conducted whenever a request is supported by Employers who have contributed at least twenty-five percent (25%) of the Contributions (other than delinquent Contributions) received by the Fund during the three (3) months preceding the request.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an

6

accredited representative of the Union or the Employers, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.04. (a)  In the event of the death, removal, incapacity to act, or resignation of an Employer Trustee, a successor Employer Trustee shall be appointed by the remaining Employer Trustee, if any.  If no Employer Trustee is serving, nominations shall be solicited and an election conducted in accordance with the procedures set forth in Section 4.03.  In the event of the death, removal, incapacity to act, or resignation of a Union Trustee, a successor Union Trustee shall be appointed by the Union.

(b)  Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities and properties of a Trustee.  No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust pending the filling of any vacancy or vacancies.  Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments.

4.05.  A Trustee upon signing this Trust Agreement, or upon written acceptance filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.06.  The Trustees shall select from among the Trustees a Chairman and a Secretary, one of whom shall be an Employer Trustee and the other a Union Trustee. The term of office for such officers shall be for two (2) years or until his or their successors have been elected.

4.07.  No successor Trustee shall be liable or responsible for any acts or defaults of any other Trustee or predecessor Trustee, or for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of the Trust Fund prior to his becoming a Trustee.  A successor Trustee

7

shall not be required to inquire into or take any notice of the prior administration of the Trust Fund.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from time to time.

4.09. (a) Regular meetings of the Trustees may be held at such time or times as may be established by the Trustees but not less than annually. Meetings may also be held at any time without notice if all of the Trustees consent. Meetings may be held in conjunction with Trustee meetings of other Trust Funds covering Participants. Special meetings may be called at any time by the Chairman or the Secretary of the Board, upon giving five (5) days' written notice to all other Trustees. Notice may be waived by agreement of all Trustees. Minutes of all meetings shall be kept, but not necessarily verbatim and copies thereof shall be furnished to the Trustees.

(b) Any action by the Trustees may be taken either at a meeting, by a phone poll, in a conference call, or in writing without a meeting. Concurrence of all the Trustees, evidenced by their written signatures, shall be required for action taken without a meeting.

(c) Two Trustees shall constitute a quorum at any regular or special meeting of the Trustees, provided that one Union Trustee and one Employer Trustee are present.

(d) Unless otherwise specified herein, the concurring vote of a majority of the Trustees present and voting shall be required to carry any motion or resolution. Each Union Trustee and each Employer Trustee shall be entitled to cast one (1) vote on each

8

motion or resolution; provided, however, that the vote of any absent Trustee shall be allocated among the group of Trustees of which he is a member so that both groups will have an equal number of votes.

(e) A deadlock of the Trustees shall be deemed to exist if a quorum is not present at two successive properly scheduled meetings, or if the vote of the Trustees is equal on any proposal. Whenever a deadlock exists, the Trustees shall first seek mediation in an endeavor to break such deadlock, and if that proves unavailing (or if the Trustees agree to waive mediation), either group of Trustees may advise the other group of Trustees that they wish to submit the deadlocked issue for arbitration by an impartial person to be selected by the Trustees. Should they fail to agree on the impartial person within ten (10) days, any Trustee may petition the American Arbitration Association for a list of five (5) impartial arbitrators experienced in employee benefit fund disputes. The Trustee groups shall alternately and expeditiously strike names from said list and the remaining name shall be the impartial arbitrator. The order of striking shall be determined by chance. The arbitrator's decision shall be final and binding on the Trustees and his fees and expenses, as well as the joint expenses incidental to his activities and the arbitration, shall be paid from the Trust Fund.

4.10. (a) The Legal and Educational Assistance Fund and the Board of Trustees shall be bound by the signatures of the Chairman and Secretary. In addition, any instrument may be executed on behalf of the Board by one or more Trustees designated for that purpose by the Board, or by the signature of any other person or persons designated for that purpose by the Board.

(b) Upon the signing of any instrument by an authorized person, all persons, partnerships, corporations or associations may rely thereon that such instrument has been duly authorized by action of the Board of Trustees.

9

## ARTICLE FIVE

## POWERS, DUTIES AND OBLIGATIONS OF THE TRUSTEES

5.01.   The Trustees shall supervise the operation of the Trust and shall conduct the business and activities of the Trust.  The Trustees shall hold, manage, care for, and protect the Trust Fund and shall collect the income and Contributions made to the Fund.

5.02.   The Trustees are hereby empowered to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Plan and Trust solely in the interest of the Participants and Dependents and for the exclusive purpose of (1) providing benefits to Participants and their Dependents; and (2) defraying reasonable expenses of administering the Plan and Trust.

5.03.   The Trustees are authorized, empowered and directed to invest and reinvest the funds of the Trust in any property or undivided interest therein, including but not limited to bonds, notes, real estate, common and preferred stocks, and interests in trusts, including common trust funds, without being limited by any statute or rule of law concerning investments by trustees.  The Trustees may sell or otherwise dispose of such securities or property at any time and may, in their sole discretion, invest the Trust Fund or any part thereof in group contracts, and such other forms of contracts, if the contracts are issued by insurance companies authorized to do business in the State of Illinois, for the purpose of providing for all or a part of the benefits provided under this Trust.  The Trustees shall have power (in addition to, and not in limitation of, common law and statutory authority) to exercise in respect to any stocks, bonds, or other property, real or personal, all such rights, powers, and privileges as might be lawfully exercised by any person owning similar stocks, bonds, or other property in his own right.

All or any part of the Trust assets may be invested in any collective investment trust fund qualified as tax exempt under Section 501(a) of the Internal Revenue Code,

10

or amendments thereof, which is then maintained by any bank or trust company whether or not acting as a trustee, co-trustee, or agent for the Trustees hereunder. The document governing each such collective investment trust, as amended from time to time, shall govern any investment therein, and is hereby made a part of this Trust Agreement.

The Trustees shall have the power to borrow from any bank, savings and loan association, insurance company, or any other money lending firm or institution, such sums, and on such terms and conditions, which the Trustees may from time to time determine. The Trustees may hypothecate, mortgage, pledge or otherwise collateralize or secure any indebtedness so created with assets of this Trust; provided, however, that any resolution presented to the Trustees pursuant to the powers contained in this paragraph must be adopted by the affirmative vote of not less than three-fourths of the Trustees, regardless of the number of Trustees present at any meeting.

Such investment actions shall be taken with the care, skill, prudence and diligence, under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Such actions shall include the diversification of the Fund's investments so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so, and all such actions shall be in accordance with the documents and instruments governing the Trust and Plan insofar as such documents and instruments are consistent with applicable law.

If one or more Investment Managers have been appointed in accordance with the terms of this Restated Agreement, no Trustee shall be liable for the acts or omissions of any such Investment Manager(s) or under any obligation to invest or otherwise manage any asset of the Fund which is subject to the management of any such Investment Manager.

5.04. The Trustees are hereby empowered to allocate fiduciary responsibilities

among the Trustees and to designate persons other than Trustees to carry out fiduciary responsibilities as provided in this Restated Agreement. The power to allocate fiduciary responsibility shall not apply to the application of the responsibility to manage the assets of the Fund other than the power to appoint an Investment Manager or Managers.

The Trustees shall have exclusive authority and discretion to manage and control the assets of the Fund except to the extent that such authority to manage, acquire, or dispose of the assets of the Fund is delegated to one or more Investment Managers in accordance with the following paragraph.

The Trustees are empowered to appoint an Investment Manager(s) to manage, acquire, or dispose of any assets of the Fund. An "Investment Manager" is any fiduciary who has been designated by the Trustees to manage, acquire or dispose of any assets of the Fund, who has acknowledged in writing that it is a fiduciary with respect to the Fund, and who is: (i) registered as an investment adviser under the Investment Advisers Act of 1940; or (ii) is a bank, as defined in that Act; or (iii) is an insurance company qualified to perform such services under the laws of more than one state.

5.05. The Board and each Trustee, to the extent permitted by applicable law, shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons and shall be under no duty to make any investigation of, or inquiry as to, any statement contained in such record, but may accept the same as conclusive evidence of the truth of the statements therein contained.

No Trustee shall be liable for any acts or defaults of any prior Trustee, any other Trustee, any other fiduciary, any party in interest or any other person except to the extent required by applicable law; it being the intent and purpose of the parties hereto that, to the extent permitted by law, each Trustee shall be liable only for his own acts or omissions occurring during his term of service as Trustee.

12

5.06. The cost and expenses of any action, suit or proceeding brought by or against the Board or any Trustee, including counsel fees, shall be paid from the Trust Fund if permitted by law, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that the Board or such Trustee was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

5.07. No individual or person may act as agent for the Fund or the Plan unless specifically authorized by this Restated Agreement or in writing by the Trustees. Neither an Employer nor the Union, or any representative of an Employer or the Union, in such capacity, is authorized to interpret the Plan or Trust Agreement, nor can any such person act as agent of the Trustees. Only the Board of Trustees is authorized to interpret the Plan or Trust Agreement.

5.08. The Trustees shall keep true and accurate books of account and a record of all their transactions, meetings and the actions taken at such meetings or by informal action of the Trustees.

5.09. The Trustees shall procure an audit of the books of the Trust by a Certified Public Accountant not less frequently than once for each fiscal year and a copy of each such audit shall be furnished, upon request, to each Trustee, and a copy of such audit shall be kept available for inspection by authorized persons during business hours at the office of the Trustees for the time required by law and/or for the time required by the rules and regulations of the Fund.

5.10. The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust or Plan. All rules and regulations adopted by majority action of the Trustees for the administration of the Trust Fund shall be final and binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees shall have the exclusive authority and discretion to interpret and apply this Trust Agreement and the Legal and Educational

13

Assistance Plan, including questions involving eligibility for benefits and the standard of proof to be required in any matter, and all such interpretations and applications shall be final and binding upon all parties and claimants. Benefits under the Plan will be paid only if the Board of Trustees determines in its discretion that the individual is entitled to the benefits.

5.11. The Trustees shall use and apply the Trust Fund for the following purposes:

(a) To pay or provide for the payment of all expenses of collecting the Contributions and administering the affairs of this Trust, including the employment of such administrative, custodial, legal, actuarial, accounting, expert, and clerical assistance as may be necessary, the purchase or the lease of such premises as may be necessary for the operation of the affairs of the Trust, and the purchase or lease of such materials, supplies and equipment as the Trustees in their discretion find necessary or appropriate to the performance of their duties.

(b) To pay or provide for benefits to eligible Participants and their Dependents.

(c) To pay or provide for the payment of expenses incidental to the operation of an office, as well as incidental matters affecting Participants and their interests, such as attendance at Union-related activities concerning Participants and their Dependents.

(d) To pay or provide for the payment of expenses and lawful compensation of Trustees and/or Fund employees in connection with attendance at educational conferences and seminars.

5.12. The receipt of the Trustees for any money or property received by them shall discharge the person or persons paying or transferring the same.

5.13. All Trust Funds not invested shall be deposited by the Trustees in such depository or depositories ("Custodian") as the Trustees shall from time to time select and any such deposit or deposits shall be made in the name of the Trust. Any Trustee authorized to deposit, transfer or withdraw funds held in a trust account(s) shall have

14

the authority to transfer, by wire or phone, such funds to a benefit or checking account.

Except as provided otherwise by Resolution of the Trustees, all such funds may be disbursed by check or draft signed by at least one Employer Trustee and one Union Trustee.

To the extent permitted by law, no Trustee shall be liable in any manner for any loss to the Fund occasioned by the fault or negligence of any Custodian selected by the Trustees in good faith and in the exercise of reasonable business judgment.

5.14. The Trustees are empowered to determine the terms and conditions upon which either an additional craft or class of employees or an additional employer and its employees may participate in the Fund, and to enter into reciprocal agreements with trustees of other trust funds when to do so, in the opinion of the Trustees, would effectuate the purposes of this Trust Agreement.

5.15. Statements, documents, or notices to the Trustees, the Union, or any Employer hereunder shall, unless otherwise specified, be sufficient if in writing and delivered to or sent by pre-paid first class mail or by facsimile.

5.16. The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) To formulate, adopt and administer one or more Legal and Educational Assistance Plans, for the exclusive benefit of Participants and, thereafter, to amend said Plans whenever the Trustees deem it advisable. The Trustees may provide for benefits for the Dependents of Employees. The Plan and all amendments thereto shall be filed by the Trustees as part of the records and minutes of the Trustees. Any benefits provided to a Participant, and/or Dependent, shall be paid solely out of the assets of the Trust Fund.

(b) To promulgate and establish rules and regulations for the administration and operation of the Legal and Educational Assistance Plan in order to effectuate the purposes thereof; and in pursuance thereof (but without limitation on the powers of the

15

Trustees by reason of such enumeration), to formulate and establish the conditions of eligibility, qualifications for benefits, the method of providing benefits, and any and all matters which they, in their discretion, may deem necessary or proper to effectuate the purposes and intent of the Plan. No rule or regulation shall conflict with the terms of this Trust Agreement.

(c) To enter into any and all contracts and agreements for carrying out the terms of this Restated Agreement and for the administration of the Trust Fund and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts, agreements and acts shall be binding and conclusive on the parties, Participants, and Dependents.

(d) To keep property and securities registered in the name of the Trustees or in the name of the Custodian or a nominee(s), or in unregistered or bearer form, without disclosure of any fiduciary relationship.

(e) To establish and accumulate as part of the Trust Fund a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of the Trust and Plan.

(f) To pay out of the funds of the Trust all real and personal property taxes, income taxes and other taxes of any and all kind levied or assessed under existing or future laws upon or in respect to the Trust Fund or any money, property or securities forming a part thereof.

(g) To compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or understanding due or owing from or to the Fund on such terms and conditions as the Trustees, in their sole discretion, may deem advisable.

(h) To consult with legal counsel with respect to the meaning or construction of this Restated Agreement and the Plan, or their obligations and duties hereunder, or with respect to any action or proceeding, or any question of law, and shall be fully protected,

16

to the extent permitted by law, with respect to any action taken or omitted by them in good faith pursuant to the advice of counsel. Legal counsel may, but need not be, counsel to the Union or any Employer.

(i) To do all acts, whether or not expressly authorized herein, which the Trustees deem necessary or proper.

5.17. The Trustees shall provide for fidelity bonds, in such form and amounts as may be required by statute, for their fiduciaries and every person who handles funds or other property of the Trust Fund. If no such statutory requirement shall exist, such bonds shall be in such form and amounts as the Trustees may determine. In addition, the Trustees may purchase insurance for their fiduciaries and for themselves to cover liabilities or losses occurring by reason of the act or omission of a fiduciary; provided, however, that any such insurance policies shall be in the form and manner permitted by law.

5.18. The Board may employ a Fund Manager who may, but need not be, a Trustee, and delegate to such Fund Manager the authority to act upon all matters in connection with the administration of the Trust and Plan, including the authorization to execute those documents which, in the sole discretion of the Trustees, are deemed necessary for the day-to-day administration of the Trust and Plan; the responsibility of accounting for the Contributions made to the Trust Fund and the collection of delinquent Contributions; and such other function as the Board may deem advisable. Any Fund Manager so appointed may be employed part-time, may provide similar services for other funds and may engage in unrelated employment activities.

5.19. The Trustees shall have and maintain an office in the State of Illinois which shall be deemed the situs of the Trust Fund, and which may be in the office building of the Union.

5.20. It is further agreed and understood that there is no liability upon the Union, any Employer, or the Trustees for the direct payment of any benefit which has been

17

established by the Trustees.

5.21. The Union and the Employers assume no obligation or responsibility to any person for any act or failure to act of the Trustees, the attorneys, any insurance company, or any Participant. The Trustees shall have no obligation or responsibility regarding any action required by the Collective Bargaining Agreement, the Plan or this Trust Agreement to be taken by the Union or the Employers, any insurance company, or any other person, or for the result of the failure of any of the above to act. Any person or entity providing professional services to any Participant or Dependent shall maintain professional liability insurance or agree in writing to indemnify and hold harmless the Trustees for any liability imposed upon the Trustees as a result of the actions of the professional.

## ARTICLE SIX

## CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Legal and Educational Assistance Plan, except as required by law.

(b) The Trustees may compel and enforce the payment of Contributions in

18

any manner which they may deem proper but without limitation upon any rights and privileges the Union may have in this connection. Expenses incurred in the collection of such Contributions shall be paid from the Trust Fund, even though such expenses are subject to reimbursement by the delinquent Employer.

6.02. The failure of an Employer to pay Contributions by the date established by the Collective Bargaining Agreements or, if no date is set by the Collective Bargaining Agreement, by the rules and regulations adopted by the Trustees shall constitute a violation of the applicable Collective Bargaining Agreement between such Employer and the Union, as well as a violation of the Employer's obligations hereunder.

The Trustees shall have the right to adopt rules and regulations relating to the collection of Employer Contributions, including provisions for time of payment, collection of interest, audit fees, attorneys' fees at the rate set by the Trustees in their sole discretion, costs, and liquidated damages as specified in this Section. An Employer in default as of the date established by the Collective Bargaining Agreement or the Trustees for payment of Contributions shall be liable for an additional amount of twenty percent (20%) of the delinquent payment or $50.00, whichever is greater, and interest at the rate set forth in the Plan or the rules and regulations. In the absence of a rate set forth in the Plan or rules and regulations, the interest rate used each month shall be the prime rate, plus one percent (1%), as reported in the Wall Street Journal on the first business day of each month. Liquidated damages shall compensate the Fund for some or all of the damages arising from lost earnings, administrative costs, uncertainties causing difficulties in forecasting earnings and managing investments, the disruptive effects to the benefit system of unequal performance of obligations among Employers, and the potential liability of Trustees for transactions prohibited by federal law.

The Trustees may require a delinquent Employer or new Employer to deposit with the Trustees, in cash, or by a bond with corporate surety, an amount not to exceed

19

three (3) months' estimated Contributions, as determined by the Trustees.

The Trustees may waive all or part of the liquidated damages and interest where Contributions are found by the Trustees to have been delinquent as a result of clerical errors or administrative problems beyond the control of an Employer and where there have been good faith efforts by the Employer to comply with the applicable rules and regulations for payment of Contributions.

6.03.  Each Employer and its affiliated or related companies or businesses shall furnish to the Trustees on demand the names of all employees, their Social Security numbers, the time worked by each employee, the Contributions due or payable to the Trust Fund, and such other information, including cash journals, wage and payroll records,  income tax records, and other business records, as the Trustees or their agents may reasonably require in connection with the administration of the Trust.  The Trustees, or their authorized representative, shall have the right to examine and audit the pertinent books and records (as determined by the Trustees) of each Employer and its affiliated or related companies whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust.  All Employers shall annually furnish to the Trustees, if requested by them, a statement showing whether (a) the Employer is a corporation and the names of all of its officers and shareholders (and the percentage of stock held by each) or (b) if not a corporation, a statement showing that it is a partnership or an individual proprietorship and furnishing the names of the partners or the name of the individual proprietor.

6.04.  Nothing in this Restated Agreement shall prevent a Contribution which is made by an Employer by a mistake of fact or law to be returned by the Trustees to such Employer, upon written request, within twelve months after the Trustees determine that the Contribution was made by such a mistake.

6.05.  The Trustees may require Employers to deposit with the Trustees, in advance as a guarantee for the payment of monthly contributions, an amount to be

determined by the Trustees as a condition to such Employer's participation herein and to require that said guarantee be continuously maintained by such Employer as a condition to the continued participation herein.

## ARTICLE SEVEN

## CONTROVERSIES AND DISPUTES

7.01. In any controversy, claim, demand, suit at law or other proceeding between any Employee, Dependent, or any other persons and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union, affiliated employee benefit funds, or with any Employer, any facts certified to the Trustees by the Union or any Employer, any facts which are of public record, and any other evidence pertinent to the issue involved.

7.02. All questions or controversies arising in any manner between any parties or persons in connection with the Trust Fund or its operation, whether as to any claim for any benefits by an Employee, Dependent or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund shall be submitted to the Board of Trustees for decision. The decision of a majority of the Board shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

## ARTICLE EIGHT

## SPENDTHRIFT CLAUSE

No monies, property, equity or interest of any nature whatsoever in the Trust Fund, or in any benefits or monies payable therefrom, shall be subject, in any manner by any Participant, Dependent, or person claiming through such person, to anticipation,

21

alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void. If a Participant or Dependent shall attempt to or shall alienate, sell, transfer, assign, pledge, mortgage or otherwise encumber his benefits under the Legal and Educational Assistance Plan or any part thereof, or if by reason of his bankruptcy or other event happening at any time, such benefits would devolve upon anyone else or would not be enjoyed by him, the Trustees in their discretion may terminate his interest in any such benefit and hold it to, or apply it for, the benefit of such Participant, or his Dependent, in such manner as the Trustees may deem proper.

## ARTICLE NINE

## PAYMENT TO PERSONS UNDER LEGAL DISABILITY

If any benefit payments become payable to a person under legal disability or to a person not adjudicated incompetent but who, by reason of mental or physical disability, is unable in the opinion of the Trustees to administer properly such payments, then such payments may be paid out by the Trustees for the benefit of such person in any of the following ways:

(a) Directly to any such person;

(b) To the legally appointed guardian or conservator of such person;

(c) To any spouse, child, parent, brother or sister of such person for his welfare, support and maintenance;

(d) By the Trustees using such payments directly for the support, maintenance and welfare of any such person.

The Trustees shall have no duty or obligation to see that any such payments are used or applied for the purpose or purposes for which paid.

22

## ARTICLE TEN

## AMENDMENT OF AGREEMENT

It is anticipated that in the administration of this Trust conditions may arise that are not foreseen at the time of the execution of this Restated Agreement. It is the intention of the parties that the power of amendment, which is hereinafter given, be exercised in order to carry out the provisions of this Trust, among which is to pay the largest benefits possible which are consistent with the number of Participants and Dependents becoming and likely to become eligible for such payments, the amount of funds which are available and which will probably become available, and sound actuarial practice. Therefore, the Trustees are given the power to amend this Restated Agreement by majority vote at any time, and from time to time, and all parties to the Trust and all persons claiming an interest thereunder shall be bound thereby.

No Participant or any other person shall have any vested interest or right in the Trust Fund or in any payments from the Trust Fund, except to the extent granted by the Legal and Educational Assistance Plan. The Trustees shall have full authority, if consistent with federal law, to amend, repeal, add to, or take away any right or payment, retroactive or otherwise, that they deem proper for the preservation of this Trust Fund; provided, however, in no event shall the Trust Fund be used for any purpose other than the purposes set forth in this Restated Agreement and for the purposes of paying the necessary expenses incurred in the administration of this Trust.

## ARTICLE ELEVEN

## TERMINATION AND MERGER OF TRUST

11.01. In the event the obligation of all Employers to make Contributions shall cease, or the Trust Fund, in the opinion of the Trustees, is inadequate to carry out the intent and purposes of the Trust, the Trustees shall apply the Trust Funds to the payment of expenses and to the purposes specified in Article Two so far as possible;

23

any balance of the Trust Fund which cannot be applied shall be applied to such other uses as, in the opinion of the Trustees, will best accomplish the purposes for which the Trust was established. Upon the disbursement of the entire Trust Fund, the Trust shall terminate. In no event, upon termination, shall any assets of the Trust Fund revert to any Employer.

11.02. In the event this Trust is subject to the rule against perpetuities as existing in the law of the State of Illinois, at the time in this Article fixed for the termination of the Trust, the Trust shall terminate twenty (20) years after the date of the death of the last of the Participants covered by this Restated Agreement at the time of the execution of this Restated Agreement.

11.03. Upon termination, the Trustees shall notify the Union and each Employer contributing to the Fund, and any other person, partnership, corporation or association with whom they are dealing, and shall continue as Trustees for the purpose of dissolution.

11.04. In lieu of the distribution and liquidation upon termination as set forth in Section 11.01, the Trustees may, after all obligations of the Trust have been satisfied, turn over any surplus monies and property in the Fund to any future trust with similar purpose that may be created by and between Employers and the Union pursuant to collective bargaining agreements.

11.05. In addition to any other authority granted under this Trust Agreement, the Trustees shall have the authority to merge this Trust Fund with another trust fund providing for the same or similar benefits. The terms and conditions of such a merger shall be within the sole discretion of the Trustees.

## ARTICLE TWELVE

## MISCELLANEOUS

12.01. In no event shall the Employers, directly or indirectly, receive any refund

24

of Contributions, except as provided in Section 6.04, participate in the disposition of the Trust Fund, or receive any benefits from the Trust Fund. Upon payment to the Trustees, all responsibilities of the Employers for Contributions shall cease and the Employers shall have no responsibilities for the acts of the Trustees. No Participant or Dependent shall have any individual right, title, interest or claim against any Employer, Employer's Contribution, or the Trust Fund, except as may be expressly provided for in this Restated Agreement.

12.02. The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and judicial determination of any questions in connection with their duties and obligations under this Trust, or in connection with the administration or distributions thereof.

12.03. In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees in their sole discretion, is made or the Trustees have been adequately indemnified against loss.

12.04. Where used in this Restated Agreement, words in the masculine shall be read and construed as in the feminine and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

12.05. The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Restated Agreement or be construed as part thereof.

12.06. This Restated Agreement shall in all respects be construed according to, and be governed by, the laws of the State of Illinois, except as may be otherwise provided by federal law.

12.07. Neither this Trust Agreement nor any amendments thereto, nor any rules

25

and regulations adopted for the administration of the same, nor any award of any arbitrator appointed hereunder shall modify the Collective Bargaining Agreements between the Union and any association or any Employer or add to or alter the obligations of the Employers or the Union thereunder. The provisions of this paragraph shall in no event be subject to amendment.

12.08. No Employer nor the Union shall at any time, and under any circumstances or conditions, have any financial obligations under this Trust or the Legal and Educational Assistance Plan other than the payment of any required Contributions and such other amounts as may be provided for under Article Six.

## ARTICLE THIRTEEN

## SAVINGS CLAUSE

Should any provision of this Restated Agreement be held to be unlawful, such fact shall not adversely affect the other provisions herein contained, or the application of said provisions, unless such illegality shall make impossible the functioning of the Trust or Plan. Except to the extent required by law, no Trustee shall be held liable for any act done or performed in pursuance of any provision hereof prior to the time such act or provisions shall be held unlawful by a court of competent jurisdiction.

IN WITNESS WHEREOF, the Trustees have caused this Restated Agreement to be executed this 25th day of July, 2000.

UNION TRUSTEES:                         EMPLOYER TRUSTEES:

_____                _____

_____                _____

26

**Amendment to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727
Legal and Educational Assistance Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Legal and Educational Assistance Fund, and

Whereas, the Board of Trustees desires to increase the number of Trustees representing contributing employers and Local 727,

Now, therefore, it is hereby resolved effective February 24, 2005, that Article Four is amended, in part, to provide as follows:

ARTICLE FOUR

APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of six (6) Trustees, three (3) of whom shall be designated as Employer Trustees, and three (3) of whom shall be designated as Union Trustees.

Thomas J. Moriarty and Carl Tominberg have been appointed as the Employer Trustees. John T. Coli and Becky Strzechowski have been appointed as the Union Trustees. Effective February 24, 2005, the incumbent Employer Trustees shall have the authority to appoint the third Employer Trustee; the Union Trustee shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.02. (a)    Each Trustee shall serve until his death, incapacity, resignation, removal, or replacement as herein provided.

(b)    A Trustee may resign at any time by giving at least then (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date.

4.03. Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office by the unanimous vote of the other two (2) Employer Trustees.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or by the Employer Trustees, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.04. (a)    In the event of the death, removal, incapacity to act, or resignation of an Employer Trustee, a successor Trustee(s) shall be appointed by the remaining Employer Trustee(s). In the event of the death, removal, incapacity to act, or resignation of a Union Trustee, a successor Union Trustee shall be appointed by the Union.

(b)    Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities and properties of a Trustee. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust pending the filling of any vacancy or vacancies. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments.

2

3

This Amendment is approved and adopted this 24th day of February 2005.

**UNION TRUSTEES**

**EMPLOYER TRUSTEES**

3

## Amendment No. 2 to the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Legal and Educational Assistance Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Legal and Educational Assistance Fund, and

Whereas, the Board of Trustees desires to increase number of Trustees representing contributing employers and Local 727,

Now, therefore, it is hereby resolved that effective December 19, 2007, that Article Four is amended, in part, to provide as follows:

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of eight (8) Trustees, four (4) of whom shall be designated as Employer Trustees, and four (4) of whom shall be designated as Union Trustees.

Thomas J. Moriaty, Carl Tominberg and Greg Youmans have been appointed as the Employer Trustees. John T. Coli and Becky Stzechowski have been appointed as the Union Trustees. Effective December 19, 2007, the incumbent Employer Trustees shall have the authority to appoint the fourth Employer Trustee; the Union Trustees shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

4.03. Any Union Trustee may be removed from office by the Union at any time. An Employer Trustee may be removed from office by the unanimous vote of the other three (3) Employer Trustees.

Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union or by the Employer Trustees, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

This Second Amendment is approved and adopted this 19th day of December 2007.

UNION TRUSTEES:                    EMPLOYER TRUSTEES:

-2-

**Amendment No. 3 to the Restated Agreement and
Declaration of Trust of the
Teamsters Local Union No. 727 Legal and Educational Assistance Fund**

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Legal and Educational Assistance Fund, and

Whereas, the Board of Trustees desires to clarify the potential sources of contributions to the Trust,

Now, therefore, it is hereby resolved that effective November 1, 2011, that Article Six, Section 6.01(a) is amended, to replace the existing text with the following:

## ARTICLE SIX

## CONTRIBUTIONS

6.01. (a) The Contributions of the Employers shall be made to the Fund, in accordance with the various Collective Bargaining Agreements with the Union and with the rules and regulations adopted by the Trustees, provided that such Contributions shall be subject to acceptance by the Trustees. Each Employer agrees that there shall be an absolute obligation to the Trust Fund, and such obligation shall not be subject to a set-off or counterclaim which the Employer may have for any liability of the Union. The Trustees shall give consideration to the contribution rate in determining the benefits of any Plan maintained or adopted. Non-payment by an Employer of any Contributions as required by its Collective Bargaining Agreement shall not relieve any other Employer of its own obligation to make Contributions. Employees may not contribute to the Trust Fund in order to obtain or maintain eligibility under the Legal and Educational Assistance Plan.

This Third Amendment is approved and adopted this 1st day of November 2011.

UNION TRUSTEES:                          EMPLOYER TRUSTEES:

## Fourth Amendment to the Restated Agreement and
## Declaration of Trust of the
## Teamsters Local Union No. 727
## Legal and Educational Assistance Fund

Whereas, the Board of Trustees has the authority to amend the Restated Agreement and Declaration of Trust of the Teamsters Local Union No. 727 Legal and Educational Assistance Fund, and

Whereas, the Board of Trustees deems it prudent to change the appointing authority of the Employer Trustees to be the Funeral Directors Services Association of Greater Chicago as set forth in the original trust document and subsequent restatement as well as the Apartment Building Owners and Managers Association,

Now, therefore, it is hereby resolved effective March 1, 2023, that Sections 4.01 through 4.05, and Section 4.08 of Article Four are amended and replaced in their entirety to provide as follows:

## ARTICLE FOUR

## APPOINTMENT, REMOVAL, VOTING, AND RESIGNATION OF TRUSTEES

4.01. The Trust Fund shall be administered by a Board of Trustees consisting of eight (8) Trustees. Four (4) of whom shall be designated as Employer Trustees, two (2) of whom shall be appointed by the Funeral Directors Services Association of Greater Chicago ("FDSA"), and two (2) of whom shall be appointed by the Apartment Building Owners and Managers Association ("ABOMA"). Four (4) of whom shall be designated as Union Trustees and shall be appointed by the Union.

The number of Trustees may be increased or decreased by unanimous action of the Trustees so long as there is always an equal number of Employer and Union Trustees.

1

In the event the FDSA is unable or unwilling to appoint an Employer Trustee, ABOMA shall assume the FDSA's appointment authority. In the event that ABOMA is unable or unwilling to appoint an Employer Trustee, the FDSA shall assume ABOMA's appointment authority.

4.02. (a) Each Trustee shall serve until his death, incapacity, resignation, or replacement, as provided herein.

(b) A Trustee may resign at any time by giving at least ten (10) days' notice in writing to the remaining Trustees. The notice shall state the date the resignation shall take effect and the resignation shall be effective on that date unless a successor Trustee has been appointed, in which event the resignation shall take effect as of the date the successor files the written acceptance provided for under this Article.

4.03. In the event of the death, incapacity to act, resignation or removal of a Trustee, his successor Trustee shall be appointed by the party having responsibility for the appointment and designation of such Trustee. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee hereunder. No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to act in the manner herein provided to administer the affairs of the Trust pending the filling of any vacancy or vacancies.

4.04. The Union, at any time, may remove a Union Trustee and appoint a successor Trustee to fill any vacancy. The FDSA, at any time, may remove an Employer Trustee appointed by it and appoint a successor Trustee to fill any vacancy. ABOMA, at any time, may remove an Employer Trustee appointed by it and appoint a successor

2

Trustee to fill any vacancy. Removal of a Trustee shall be evidenced by an instrument in writing signed by an accredited representative of the Union, the FDSA or ABOMA, whichever initiated such action, and said instrument shall be delivered to all the Trustees.

4.05. Any successor Trustee, by whomsoever designated, shall file his written acceptance with the Board of Trustees and he shall thereupon become vested with all the duties, powers, rights, responsibilities, and properties of a Trustee. Any Trustee who has resigned or who has been removed from office shall execute all necessary instruments. A Trustee upon signing this Trust Agreement, or upon written acceptance filed with the Board in the case of any successor Trustee, shall be deemed to accept the Trust created and established by this Trust Agreement, to consent to act as Trustee, and to agree to administer the Trust Fund as provided herein.

4.08. The Trustees shall serve without compensation for their services hereunder as Trustees, but they may be reimbursed for expenses properly and actually incurred for Trust business; provided, however, that to the extent permitted by law, Trustees who are not receiving full-time pay from an Employer, the FDSA, ABOMA, or the Union because of work performed on a particular day may be paid reasonable compensation, including fringe benefits and reasonable expenses, for services rendered as a Trustee on said day. The amount of compensation to be paid shall be established by the Trustees from time to time.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Signature page follows*

3

IN WITNESS WHEREOF, the Trustees have caused this Fourth Amendment to be approved and adopted this 24th day of February 2023.

UNION TRUSTEES:                         EMPLOYER TRUSTEES:

_____               _____

_____               Gregory T. Youmans

Nick A Morlett                          Robert Emery

m                                       Carl Tominberg /RTL

4

# Exhibit D

# TEAMSTERS LOCAL UNION NO. 727



## ABOMA

## NOVEMBER 1, 2021 – OCTOBER 31, 2026

## ARTICLES OF AGREEMENT

**AGREEMENT made and entered into by and between Apartment Building Owners and Managers Association** (hereinafter referred to as the "Employer" or "ABOMA"), and AUTO LIVERY CHAUFFEURS, EMBALMERS, FUNERAL DIRECTORS, APPRENTICES, AMBULANCE DRIVERS AND HELPERS, TAXICAB DRIVERS, MISCELLANEOUS GARAGE EMPLOYEES, CAR WASHERS, GREASERS, POLISHERS AND WASH RACK ATTENDANTS UNION, MOTION PICTURE, THEATRICAL, EXPOSITION, CONVENTION AND TRADE SHOW EMPLOYEES, PHARMACISTS, BUS DRIVERS, PARKING LOT ATTENDANTS, AND HIKERS, HOTEL INDUSTRY AND RACETRACK INDUSTRY EMPLOYEES NEWSPAPER MAGAZINE, PERIODICAL SALESMEN, DRIVERS DIVISION MEN DISTRICT MANAGERS CHECKERS VENDORS AND HANDLERS, AND ELECTRONIC MEDIA WORKERS, CHICAGO AND VICINITY, ILLINOIS LOCAL 727, an affiliate of the I.B. of T. (hereinafter referred to as the "Union"). It is understood that this Agreement also applies to Apartment Building Owners and Managers Association ("ABOMA") and is made and entered into by ABOMA on behalf of such of its member buildings as are listed on Schedule A which ABOMA has presented to the Union and that each of the members of ABOMA as now are or may hereafter become parties hereto is the Employer.

## ARTICLE 1
## RECOGNITION

1.1 It is agreed that the Union shall be the sole and exclusive bargaining agent for all employees of the Employer, including, but not limited to: Cashiers, hikers, attendants, porters, maintenance men/custodians, drive men, washers, collectors, customer service representatives (excluding those who do sales and/or marketing), drivers, dispatchers, bellmen, doormen and supervisors who perform bargaining unit work, but excluding clerical employees, guards, professional employees and supervisors as defined in the National Labor Relations Act, who do not perform bargaining unit work.

1.2 The Employer agrees not to discriminate in any way against any members of the Union.

1.3 The Employer shall assign the work covered under this Agreement to employees covered by this Agreement as described in Article 1, Section 1.1 of this Agreement. Non-bargaining unit employees, including supervisors, shall not regularly perform bargaining unit work normally assigned to employees in job classifications covered by this Agreement; provided, however, that they may perform such work in emergencies or in the instruction and/or training of employees. Nothing in this Article shall be construed to limit the Employer's ability to subcontract out maintenance and construction projects.

1.4 Should a new classification arise, the parties agree to meet and negotiate terms and conditions of employment for such new classification.

## ARTICLE 2
## UNION SECURITY

2.1 It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the date on which this Agreement is signed shall remain members in good standing, or pay fees in lieu thereof, and those who are not members on the date on which this Agreement is signed shall, on the thirty-first day following the date on which this Agreement is signed, become and remain members in good standing in the Union, or pay fees in lieu thereof. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after the date on which the Agreement is signed shall,

on the thirty-first day following the beginning of such employment, become and remain members in the Union, or pay fees in lieu thereof.

2.2 When specifically authorized in writing by each employee, the Employer will deduct, from the first paycheck of each month, dues and/or fees owing the Union and forward them to the Secretary-Treasurer of the Union, not later than ten (10) days after each monthly deduction. Such authorization, once given, shall be irrevocable for a period of not less than one (1) year or the term of this Agreement whichever occurs sooner. Employers who do not submit company-wide dues pursuant to this paragraph by the end of the month in which deducted, shall receive a written notice (email) of the delinquency . Failure to pay the dues within fourteen(14) calendar days of written notice (email) to an individual designated from time to time by the Company shall result in a penalty of the greater of: (i) 1.75% of the amount of the monthly dues for each month which the dues are not submitted, or (ii) five hundred dollars ($500.00) per month for each month which the dues are not submitted. Disputes involving the obligation to withhold dues for an individual or a group of individuals shall not be subject to a penalty. If an Employer is six months or more in arrears it shall pay the costs of collection.

2.3 Upon hiring an employee or upon the request of the Union, it shall be the responsibility of the Employer to obtain from the employee a completed Application and Authorization form provided by the Union and an Enrollment Card provided by the Teamsters Local Union No. 727 Benefit Funds. The Employer will forward the same to the Union by the employee's thirty first (31) day of employment or within thirty (30) days after a request by the Union is made.

2.4 The Union agrees to further the interests of the Employer to the best of its ability.

2.5 The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to Teamsters Local 727 Political Action Committee (PAC). The PAC shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from each paycheck of every month. The Employer shall transmit such deductions to the Union on a monthly basis, not later than ten (10) days after the last deduction of the month.

## ARTICLE 3
## UNIFORMS

3.1 Should an employee be required to wear a uniform, the Employer agrees to furnish said uniforms and replace worn-out or damaged uniforms. The Employer shall supply such employees with uniforms that, in the opinion of the Employer, are reasonable for the season in light of the specific requirements at each location.

## ARTICLE 4
## SENIORITY

4.1 Seniority shall mean length of continuous service from an employee's first day of continuous employment in the industry as a member of the Union. Separate seniority lists shall be maintained for full-time and part-time employees by classification as provided below and further separated by residential and commercial locations. Employees (voluntarily) changing from one seniority list to the other shall go to the bottom of that seniority list but retain their original seniority date.

The Employer shall keep and make copies available to a representative of the Union accurate and up-to-date separate seniority lists, showing employees' names and first date of employment. During the first week of September of each calendar year, the Employer will post, or distribute a seniority list to all bargaining unit employees via an electronic system, which shall remain posted

during the month of September (if posted). Employees will have thirty (30) calendar days to grieve an incorrect seniority date measured from the date of distribution or September 30th if posted. The posted seniority list (as revised due to protests) shall be conclusive of an employee's seniority date until reposted.

**Seniority is to prevail at all times, except that seniority shall not apply to bargaining unit supervisors nor to the selection of bargaining unit supervisors. Employees who are promoted to bargaining unit supervisor shall continue to accrue seniority on the seniority list from which promoted. Employees who were previously classified as bargaining unit supervisors shall be grandfathered as bargaining unit supervisors even if not currently serving in that role. The total number of employees who are actively employed as bargaining unit supervisors shall not exceed thirty six percent (36%) of the total employees actively employed by the Employer under this Agreement.

All seniority shall be considered on a classification basis for purposes of layoffs with four classifications: (1) hikers; (2) porters; (3) shuttle drivers, and (4) all other employees. In case of layoffs, the last employee hired in a particular classification is to be the first laid off in respect to the separately maintained seniority lists. An employee laid off from one seniority list shall not use his or her seniority to replace an employee on the other seniority list. Seniority shall also apply to recalls, in that the last employee laid off in a particular classification, shall be the first to be recalled in respect to separately maintained seniority lists. In the event of a lay off or a recall of a bargaining unit supervisor, the bargaining unit supervisor shall be placed on the seniority list from which promoted for purposes of layoff or recall.

In the event of a layoff, a senior employee who does not possess a qualification, certification, or license, required by a client shall not be entitled to bump the junior employee holding that qualification, certification, or license, unless the training is completed or the certification is obtained within thirty days or the next available training session. The Employee shall be placed on layoff until the training is completed or certification obtained. When recalling employees, employees who do not possess a qualification, certification, or license required for a position shall be by-passed, but shall retain their position on the recall list. The Employer shall make its best effort to provide or arrange for the certification or training.

The Employer may mandate employees be vaccinated as a condition of being scheduled to work (subject to medical or good faith religious exemptions), in which case upon proof of vaccination the Employer shall pay the employee four (4) hours of pay per shot including a booster which shall not constitute hours worked. Employees who refuse to be vaccinated shall be laid off. A request for pay must be submitted with fourteen calendar days of vaccination.

4.2    Seniority shall be broken for any one or more of the following reasons:

   (a)    Voluntarily quitting.

   (b)    Discharge for cause.

   (c)    Absence from work for three (3) consecutive working days without notifying the Employer unless prevented from doing so through no fault of the employee.

   (d)    Failure to return to work after expiration of leave of absence unless due to circumstances beyond the control of the employee or unless excused by the Employer.

(e)     Failure to return to work within seventy-two (72) hours following recall after layoff, which notice will be made by the Employer by email or text message read receipt (if possible) or both to the employee's last known address according to the records of the Employer. The Employer must also make a telephone call to contact the employee being recalled.

(f)     Is laid off for a continuous period of more than twelve months (12) months; however if laid off between March 1, 2020 and August 31, 2021 the employee shall have recall rights until April 15, 2022.

(g)     Engages in other employment while on authorized leave of absence without the consent of the Employer.

4.3     The first one hundred twenty (120) days of employment (exclusive of any leave periods) shall constitute a probationary period during which time an employee may be discharged at the sole discretion of the Employer without resort to the grievance procedure. After one hundred twenty (120) days of employment (exclusive of any leave periods), an employee's seniority date shall date from his or her first day of continuous employment in the industry as a member of the Union.

## ARTICLE 5
## DISCIPLINE AND DISCHARGE

5.1     No employee who has completed his or her probationary period will be discharged or disciplined except for just cause, adhering to the principles of progressive discipline as outlined in Article 31, Section 31.3 and 31.4.

5.2     The Union shall have the right to investigate the reasons for any discharge or discipline of a non-probationary employee and to protest the same through the grievance and arbitration procedure. The determination of whether an employee has completed his/her probationary period will be subject to the grievance and arbitration procedure.

5.3     An employee must be notified as soon as possible of any disciplinary action.

5.4     Warning notices (including suspensions) shall not remain in effect, nor be relied upon for the next step of progressive discipline, for more than one (1) year from date of said warning notice.

## ARTICLE 6
## GRIEVANCE PROCEDURE

6.1     Any complaint, grievance, or dispute arising under or concerning the meaning, application, or compliance with the terms of this Agreement shall first be taken up for adjustment by a representative of the Employer and a representative of the Union. The Employer and the Union shall meet at a time and place mutually agreed upon after the request by either party for such a meeting.

6.2     The following Grievance Procedure shall be followed in resolving said disputes:

STEP ONE: Grievant will meet with Union Representative and Facility Manager as outlined above..

STEP TWO: In failing to have the dispute resolved in STEP ONE, grievant will meet with a representative of the Union and a representative of the Employer at a mutually convenient time and place to resolve the grievance.

If the parties cannot agree, the dispute may then be referred by the Union to arbitration as provided for in this Section. Demand for arbitration shall be made within forty-five (45) calendar days from the date of the Step 2 grievance meeting unless the parties mutually agree to extend said timeline.

In cases wherein the Employer is not an ABOMA member, the parties may agree to an expedited Grievance Panel in lieu of FMCS arbitration provided below. Such Grievance Panel shall be selected within ten (10) business days from the receipt of the written statement of grievance, and shall consist of one (1) person selected by the Chicago Parking Association who is not a representative of the Employer against whom the grievance was filed, and one (1) person selected by the Union, and shall endeavor to settle the dispute. The Grievance Panel shall meet within ten (10) business days after being selected and shall render their decision within ten (10) business days after the meeting. Unanimous decisions by the Grievance Panel shall be final and binding on the parties, and there shall be no further recourse to Arbitration procedures or court litigation. If said Grievance Panel fails to resolve the dispute within thirty (30) business days after it is referred to the Grievance Panel, the dispute may be submitted by the Union to arbitration as outlined below in Section 6.3. The fees and expenses of the Grievance Panel shall be divided equally between the Union and the Employer.

In the case of members of ABOMA only, the dispute shall be referred to a "Board of Arbitration". A written statement of the grievance to be arbitrated shall be furnished by the Union to the Employer and ABOMA setting forth in detail the grievance requiring arbitration. The "Board of Arbitration" shall be selected within ten (10) business days from the receipt of the written statement of grievance, and shall consist of one (1) person selected by ABOMA and one (1) person selected by the Union, and shall endeavor to settle the dispute . The "Board of Arbitration" shall meet within ten (10) business days after being selected and shall render their decision within ten (10) business days after the meeting. If said "Board of Arbitration" fails to resolve the dispute within thirty (30) business days after it is referred to said Board, the matter may be submitted by the Union to arbitration as outlined below. The fees and expenses of the "Board of Arbitration" shall be divided equally between the Union and the Employer. Decisions decided under this subparagraph shall have no precedential effect and shall not be cited in arbitrations involving an Employer who is a member of the Chicago Parking Association.

6.3     Arbitration shall be by an arbitrator selected from a panel supplied by the Federal Mediation and Conciliation Service (FMCS), and his or her decision shall be final and binding upon both parties. The Union shall request a panel of seven (7) arbitrators who shall be members of the National Academy of Arbitrators ("NAA") located within the Chicagoland geographical region. The Employer shall have the first strike and the parties shall then alternate striking arbitrator names until one is chosen. Notwithstanding any past practices, the Arbitrator shall have no authority to alter, delete, amend, or modify the terms of this Agreement. For Grievances filed after ratification of this Agreement only the arbitration hearing must be scheduled and occur within eighteen months of the Step 1 meeting or the Employer's liability will be tolled until the hearing is conducted. The tolling shall not apply if the employer cancels the hearing or agrees to a postponement of the hearing.

The Union and the Employer will each be responsible for one-half of the cost for such arbitration proceeding. All other expenses of the arbitration shall be assumed by the party incurring them. The arbitration hearing will not be transcribed except when the arbitrator may deem necessary. At the conclusion of the hearing, the arbitrator will issue a decision with any award in writing.

6.4 A monetary grievance must be filed in writing within thirty (30) days after knowledge of the alleged violation or it shall be waived.

6.5 A non-monetary (policy) grievance must be filed in writing within ten (10) days after knowledge of the alleged violation or it shall be waived.

## ARTICLE 7
## STRIKES AND LOCKOUTS

7.1 The Union agrees that there shall be no strike, slow-down, or cessation of work and the Employer agrees there shall be no lock-out during the time of this Agreement.

7.2 Should there be an unauthorized strike, slow-down, walk-out, or other unauthorized cessation of work, the Union shall not be liable for damages resulting from such unauthorized acts from its members, and the Union shall undertake every reasonable means to induce the employees to immediately return to their jobs. In the event of an unauthorized strike, slow-down, walk-out, or any unauthorized cessation of work, the Employer shall have the sole and exclusive right to discipline or discharge the employees who participate in such an event.

7.3 No employee covered by this Agreement shall be required to go through a picket line when the picket line is approved by Teamsters' Joint Council No. 25.

## ARTICLE 8 WAGES

8.1 (a) All employees covered by this Agreement shall receive contract anniversary wage increases over and above their present hourly wage rate. The Employer agrees to increase the total package for the compensation to be paid (i) for all hours worked or paid in the form of additional hourly wages (Article 8.1), (ii) additional hourly contributions to the Health & Welfare, Pension and/or Legal & Educational Assistance fund (Article 20) as follows:

Effective November 1, 2021 ..............$1.80 per hour

Effective November 1, 2022 ..............$1.75 per hour

Effective November 1, 2023 ..............$1.65 per hour

Effective November 1, 2024 ..............$1.65 per hour

Effective November 1, 2025 ..............$1.60 per hour

(b) The allocation of the annual increase required in Section 8.1 shall be determined by the Union. The Union shall notify the Employer of its determination of the allocation between Wages (Article 8.1) and additional contributions to the Health & Welfare, Pension and/or Legal & Educational Assistance fund (Article 20) by September 1st of each contract year. The maximum amount that may be allocated to wages as determined by the Union whenever the funding of the Pension Fund falls below 90% of its actuarial fully funded amount shall not exceed $0.10 per hour for each $0.05 per hour to the Pension Fund.

The maximum amount which can be allocated to the Legal & Educational Assistance Fund each year may not exceed $0.15 per hour. The minimum amount that must be allocated to wages during the final year of the contract shall be $0.25 per hour.

7

8.2     Employees who perform work at COMMERCIAL LOCATIONS hired between November 1, 2011 and October 31, 2021 shall receive anniversary increases, if not yet received, of: Year 1 of employment $1.25 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75; Year 5 of employment $1.40 per hour, plus the allocation described in 8.1(a) above.

Employees hired after November 1, 2021 shall be hired at the rate of $16.60 per hour which shall be increased by an anniversary increase of: Year 1 of employment $0.75 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75; Year 5 of employment $0.75 per hour plus the wage allocation from the increase provided in Year 1 in 8.1(a) above.

8.3     Employees who perform work at RESIDENTIAL LOCATIONS hired between November 1, 2011 and October 31, 2021 shall receive anniversary increases, if not yet received, of: Year 1 of employment $1.25 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75 per hour; Year 5 of employment $1.40 per hour, plus the allocation described in 8.1(a) above.

Employees working at a Residential location hired after November 1, 2021 shall be hired at the rate of $17.35 per hour which shall be increased by an anniversary increase: Year 1 of employment $0.75 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75 per hour; Year 5 of employment $0.75 per hour plus the wage allocation from the increase provided in Year 1 in 8.1(a) above.

8.4     In applying the wage scales in 8.2 and 8.3 above, only employees with less than 5 years of service shall automatically receive longevity and contract anniversary increases. The two dollar per hour wage differential shall be maintained between the employees hired before 11/1/2011 and those hired after that date.

8.5     Employees functioning (1) in a cashier's capacity, (2) in primarily self-service parking surface lots, (3) as customer service representatives or (4) in ground transportation shall receive twenty-five cents ($.25) per hour over the above-schedules. If applicable, such employees shall also receive the premium set forth below in Section 8.6.

8.6     Bargaining unit supervisors employed at a residential facility, including all bargaining unit supervisors employed by members of ABOMA, shall receive thirty-six cents ($ .36) per hour over the above residential schedules (Section 8.3 above). If applicable, such employees shall also receive the premium set forth in Section 8.5 above. Employer may remove the premium only if the employee is returned to his or her previous classification at the applicable contractual wage rate as if the employee had never been made a supervisor.

8.7     The Employer agrees for the purpose of determining the wage rate of its employees (see schedules above) to give credit to any employee the amount of continuous days, months, and years of service said employee acquired under collective bargaining agreements with employers bound by Chicago Parking Association Agreements with the Union and said employees shall be paid as set forth above.

8.8     It is understood and agreed that the red-circle provisions in Sections 8.2 and 8.3 and section 27.1 shall incorporate and include any pay increase(s) granted to employees since October 31, 2011 regardless of the reason for the increase.

## ARTICLE 9
## HOLIDAYS

9.1 Regular full-time employees shall receive additional compensation for the nine (9) holidays listed below equal to their normal workday hours but not less than eight (8) hours pay at their regular daily straight-time rate of pay. Those employees who are scheduled and do work on any of these nine (9) holidays will receive their regular daily straight-time rate of pay in addition to time and one-half (1 ½) per hour for all hours actually worked on said nine (9) holidays. To be entitled to holiday pay under this clause, the employee must work for the Employer six (6) months and work his or her scheduled workday before and his or her scheduled workday after said holiday if the employee is scheduled to work. An employee who is scheduled to work on a holiday but fails to report to work shall forfeit his or her right to holiday pay unless his or her absence is due to extenuating circumstances. For the purpose of holiday pay and overtime pay on holidays, the holidays listed below will be celebrated on the calendar days they fall on:

New Year's Day

Martin Luther King, Jr.'s Birthday

Memorial Day

Juneteenth

Independence Day

Labor Day

Thanksgiving Day

Christmas Day

Employee's Birthday

9.2 A holiday for which an employee is paid and during which he or she did not work shall be considered as time actually worked by him or her under the terms of this Agreement. No employee shall receive holiday pay unless he or she has attained six (6) months' seniority with the Employer on or before the date of the holiday.

9.3 Part-time employees, when working on said holidays, shall be entitled to time and one-half (1 ½) per hour for hours worked. All work performed on the employee's sixth (6th) work day of a holiday week shall be paid at the overtime rate.

The additional compensation for each holiday (holiday pay) for part-time employees shall be based upon the average weekly hours scheduled as follows:

Weekly Hours

| Scheduled | Holiday Pay |
|---|---|
| Up to 19 hours | 2 hours |
| 20 to 29 hours | 4 hours |
| 30 to 39 hours | 6 hours |

### ARTICLE 10
### MILITARY SERVICE

10.1    Employees who become members of the U.S. Armed Services shall have such rights of reemployment as may be prescribed by the Military Selective Service Law.

### ARTICLE 11
### JURY DUTY

11.1    Employees on the payroll with ninety (90) days or more of service will be reimbursed for any loss of income incurred during the time spent on jury service with a maximum of ten (10) days annually.

### ARTICLE 12
### SICK AND PERSONAL LEAVE

12.1    A full-time employee who has worked for the Employer for six (6) months or longer shall be entitled to ten (10) combined sick and/or personal days per year at the employees normal rate of pay for their normal workday hours but not less than eight (8) hours pay. The paid vaccination time under Section 4.1 above shall not be considered a sick and or personal day if taken. An employee who has received a complete regimen of COVID vaccination shots by October 31, 2021, shall receive a cash stipend of $150.00 upon submitting a copy of the Vaccination cortication card issued by the vaccination site. Employees shall have until November 30, 2021, to submit their vaccination card or shall lose the right to receive this stipend.

12.2    A part-time employee who has worked for the Employer for six (6) months or longer shall be entitled to ten  (10) combined sick and/or personal days per year based upon the average weekly hours scheduled as follows:

| Weekly Hours Scheduled | Personal/Sick Leave Pay |
|---|---|
| Up to 19 hours | 2 hours |
| 20 to 29 hours | 4 hours |
| 30 to 39 hours | 6 hours |

12.3    The employee shall give one week's notice to the Employer for days used for personal leave. The employee shall phone a designated phone number and, if no answer, a designated back-up phone number at least two (2) hours before his or her regularly scheduled starting time for days used for sick leave. Sick and personal days shall be non-cumulative.

12.4    Sick and/or personal days shall be earned and taken on a calendar year basis. All employees who have completed six (6) months of employment by December 31st shall receive their full complement of sick and/or personal days on January 1st of each year, to be used by December 31st of each year. All employees who have not completed six (6) months of employment by December 31st shall receive their full complement of sick and/or personal days upon completion of six (6) months of employment, to be used by December 31st of that year. In the event that all of the employee's earned sick and/or personal days are not taken by December 31st, the Employer shall pay the employee the value of said sick and/or personal days. Employees terminated for proven theft shall not be paid out unused personal and/or sick days.

12.5    Employees shall receive an accounting of all their accrued sick and/or personal days, no less frequently than monthly.

12.6    A sick and/or personal day for which an employee is paid and during which he or she did not work shall be considered as time actually worked by him or her under the terms of this Agreement.

12.7    The provisions of this Article are in lieu of the rights and benefits provided by the Cook County Earned Sick Leave Ordinance and the City of Chicago Paid Sick Leave Ordinance. The parties expressly agree that all rights and benefits under the Cook County Earned Sick Leave Ordinance and the City of Chicago Paid Sick Leave Ordinance are hereby waived.

## ARTICLE 13
## FUNERAL LEAVE

13.1    A regular full-time or regular part time employee who loses time from his or her employment due to a death in his or her immediate family shall be entitled to receive his or her regular pay during said absence for four (4) days. Part-time employees will receive up to four (4) days of Funeral leave provided the employee is regularly scheduled at least four (4) days per week. Immediate family members are defined to be father, mother, brother, sister, spouse, child, father-in-law, mother-in-law or grandparents.

13.2    In order to qualify for funeral leave pay, the employee must have worked for the Employer for six (6) months or longer.

13.3    Employees must, upon request from the Employer, furnish satisfactory proof of death and relationship.

13.4    Funeral leave shall only be granted for the purpose of attending the funeral of the deceased, grieving and settling the affairs of the deceased.

## ARTICLE 14
## VACATIONS

14.1    Employees shall receive vacation in accordance with the following schedule:

After one (1) year of employment, one (1) weeks vacation

After two (2) years of employment, two (2) weeks vacation

After five (5) years of employment, three (3) weeks vacation

After ten (10) years of employment, four (4) weeks vacation

After twenty-five (25) years of employment, five (5) weeks vacation

14.2

(a)  A vacation bank shall be established for each employee. The Employer shall deposit the amount of all vacation time that is owed to the employee. In addition, employees shall begin to accrue vacation on a monthly basis in accordance with (b), which accrued vacation time shall be added to the employee's vacation bank.

(b)  Vacations shall be earned on a monthly basis in accordance with the following schedule:

After one (1) year of employment: .417 vacation days per month (equivalent to one (1) weeks vacation):

Beginning with the first month of employment and continuing through the month prior to the month in which the employee completes two (2) years of employment (1st month through 23rd month of employment), employees accrue .417 vacation days per month.

After two (2) years of employment, .834 vacation days per month (equivalent to two (2) weeks vacation):

Beginning with the month in which the employee completes two (2) years of employment and continuing through the month prior to the month in which the employee completes five (5) years of employment (24th month through 59th month of employment), employees accrue .834 vacation days per month.

After five (5) years of employment, 1.25 vacation days per month (equivalent to three (3) weeks vacation):

Beginning with the month in which the employee completes five (5) years of employment and continuing through the month prior to the month in which the employee completes ten (10) years of employment (60th month through 119 month), employees accrue 1.25 vacation days per month.

After ten (10) years of employment, 1.67 vacation days per month (equivalent to four (4) weeks vacation):

Beginning with the month in which the employee completes ten (10) years of employment and continuing through the month prior to the month in which the employee completes twenty-five (25) years of employment (120th month through 299th month), employees accrue 1.67 vacation days per month.

After twenty-five (25) years of employment, 2.084 vacation days per month (equivalent to five (5) weeks vacation):

Beginning with the month in which the employee completes twenty-five (25) years of employment and continuing for each month thereafter (300th month and beyond), employees accrue 2.084 vacation days per month.

(c)  The month in which employment begins and the month in which employment ends shall be considered a full month for purposes of this Section.

(d) Employees shall be entitled to use vacation time immediately after accruing. Vacations shall be taken on a first in (first accrued) first out basis and shall be paid at the rate of pay in effect at the time the vacation is taken.

(e) Every December 1st, each employee shall be given the option of a payout or carry-over of unused vacation days in his or her vacation bank; provided, however, that the carry-over will be limited to accruals in the prior twelve (12) months. Should the employee receive a payout, such employee shall receive the payout on the next scheduled pay period.

(f) Employees shall receive an accounting of all their accrued vacation, no less frequently than monthly.

14.3 Vacation pay for part-time employees shall be prorated in accordance with the above schedule.

14.4 Employees shall be paid their earned vacation pay prior to the time they leave on vacation.

14.5 Preference by seniority shall be given to an employee's choice of vacation period. Employees who take virtually the entirety of their vacation outside the United States of America or Canada shall be entitled to take up to four weeks of vacation consecutively at a time consistent with the Employer's operational and staffing needs.

14.6 Employees shall receive vacation pay on the basis of average hours worked in the previous calendar year. All hours worked or paid for (vacation, personal days, holidays, sick days, funeral leave pay) shall be considered as hours worked in determining compensation. Employees shall also accrue vacation time while on Workers' Compensation.

14.7 Vacation checks shall be issued separately.

14.8 A vacation day for which an employee is paid and during which he or she did not work shall be considered as time actually worked by him or her under the terms of this Agreement.

### ARTICLE 15
### LEAVE OF ABSENCE

15.1 The Employer may, at its sole discretion, grant a personal leave of absence to an employee with seniority provided:

(a) The employee requests the leave, in writing, at least one (1) week in advance of such a leave, unless there was no possibility that the employee had such prior knowledge of the necessity of the leave. Approved leaves shall be in writing with a copy to the Union; and

(b) The leave is for a specified time not to exceed thirty (30) calendar days in duration which may be extended for an additional specified time not to exceed an additional thirty (30) calendar days in duration at the sole discretion of the Employer.

(c) Upon the expiration of an employee's authorized personal leave of absence, said employee shall be reinstated with full seniority to the same or substantially equivalent employment.

15.2 The Employer may implement the Family Medical Leave Act (FMLA) consistent with applicable law, and the provisions of this section. The Employer shall grant family and medical leaves to employees entitled by law to such leaves.

15.3 The Employer shall continue to contribute to the Health and Welfare Fund during FMLA leaves, to the extent required by law.

15.4 In all cases of medical leave, regardless of whether the leave is FMLA leave, the Employer may require employees to submit to medical examinations by a physician chosen by the Employer at the Employer's expense, during the leave and before the employee returns to work.

15.5 Upon expiration of an authorized medical or family or medical leave, an employee shall be reinstated with full seniority to the same or substantially equivalent employment (unless the employee would have been laid off or terminated had the employee not taken a leave). It is understood that employees returning to work from a leave (or any illness or injury) must be able to acceptably perform all essential job functions and may not constitute a threat to safety.

## ARTICLE 16
## HOURS OF WORK

16.1 Full-time employees covered by this Agreement who are called to work shall receive not less than six (6) hours work or its equivalent per day.

16.2 Part-time employees covered by this Agreement who are called to work shall receive not less than four (4) hours work or its equivalent per day.

16.3 There shall be no split shift assignments for employees within a twenty-four (24) hour period covered by this Agreement unless agreed to by the employee and approved by a Business Agent .

16.4 Any regular employee shall forfeit his or her weekly guarantee in that week in which he or she takes off a regularly scheduled workday or any portion thereof on his or her own initiative or when an employee is discharged for cause. However, an employee before leaving the Employer's premises shall be required to punch out.

16.5 All regular full-time employees covered by this Agreement shall be guaranteed a workweek consisting of forty (40) hours exclusive of one-half (1/2) hour for a lunch period each day. Said workweek shall contain two (2) consecutive days off where possible for the Employer to so operate. The Employer shall discuss the application of this guarantee for the week of the recall in the event a full time employee is recalled on a day other than a Monday. For employees employed at residential locations only, time and one-half (1 ½) shall be paid for all hours worked over eight (8) hours daily. For all employees, time and one- half (1 ½) shall be paid for all hours worked over forty (40) hours in any one (1) week exclusive of the thirty (30) minute lunch period each day. Overtime shall not be paid twice for the same hours worked.

16.6 If an Employer has any employees covered by the Fair Labor Standards Act, overtime shall be paid in accordance with said Act and at least thirty (30) minutes shall be allowed each day without pay for employees' lunch period.

16.7 When feasible, the Employer shall post the employee's schedule at least seven (7) days in advance. The provisions of this Article 16 are in lieu of the rights and benefits provided by the City of Chicago Fair Workweek Ordinance. The Parties expressly agree that all rights and benefits under the City of Chicago Fair Workweek Ordinance are hereby waived.

14

## ARTICLE 17
## LIMITATIONS ON PART TIME EMPLOYEES

17.1    No Employer shall have more than forty-two percent (42%) of total employee covered under this Agreement as part time employees.

## ARTICLE 18
## TRANSFERS

18.1    Transfers may not be made except for good cause subject to recourse through the grievance procedure or by agreement between the Employer and the Union. A transfer made as a consequence of a client's good faith request made in writing shall be for good cause. In emergency situations, however, an employee may be required to work at a different location for one (1) day. In the event an employee is transferred to a new location which requires a drug test the employee will have the option to refuse the drug test and shall be subject to layoff should his seniority warrant layoff. If the employee submits to the drug test and the test is positive, the employee will be subject to the terms and conditions of the drug testing policy.

## ARTICLE 19
## DRIVER'S LICENSE

19.1    All employees shall continuously have and shall exhibit to the Employer upon request an unrestricted State Driver's License if necessary to perform his or her job. Any employee found not to have same in his or her possession will be suspended for up to thirty (30) days until a valid license is presented. After that time, the employee may be subject to termination. The Employer has the right to run MVR checks semi-annually and may terminate/not hire based only upon a lack of valid license.

## ARTICLE 20
## HEALTH AND WELFARE, PENSION AND LEGAL AND EDUCATIONAL ASSISTANCE

20.1    Health and Welfare

(a)    The Employer shall contribute to Teamsters Local Union No. 727 Health and Welfare Fund on account of each regular full-time employee covered by this Agreement the following:

Commencing November 1, 2021 ...........................................$ 1,544.10 per month

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(b)    The Employer shall contribute monthly to Teamsters Local Union No. 727 Health and Welfare Fund on account of each part-time employee covered by this Agreement the following:

Commencing November 1, 2021...........................................$ 8.91 per hour

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(c)    Contributions due hereunder to the Health and Welfare Fund for all employees hired on or after November 1, 2016, shall commence with the month in which their employment begins.

15

20.2    Pension

    (a)    The Employer shall contribute to Teamsters Local Union No. 727 Pension fund on account of each regular full-time employee covered by this Agreement the following:

        Commencing November 1, 2021 .......................................$.511.24 per month

        Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

    (b)    The Employer shall contribute monthly to Teamsters Local Union No. 727 Pension Fund on account of each part-time employee covered by this Agreement the following:

        Commencing November 1, 2021 .......................................$ 2.95 per hour

        Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

    (c)    Contributions due hereunder to the Pension Fund for all employees shall commence with the month succeeding that month in which employment begins; provided, however, that contributions to the Pension Fund on account of newly hired employees shall commence with their seventh (7th) month of employment. For purposes of this Section, a newly hired employee is defined as an employee hired on or after November 1, 2021 for which no contributions were received by the Pension Fund within the six (6) months prior to hire.

20.3    Legal and Educational Assistance

    (a)    The Employer shall contribute to Teamsters Local Union No. 727 Legal and Educational Assistance Fund on account of each regular full-time employee covered by this Agreement the following:

        Commencing November 1, 2021 .......................................$ 129.98 per month

        Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below. The Employer shall contribute monthly to Teamsters Local Union No. 727 Legal and Educational Assistance Fund on account of each part-time employee covered by this Agreement the following:

        Commencing November 1, 2021 .......................................$ 0.75 per hour

        Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

    (b)    Contributions due hereunder to the Legal and Educational Assistance Fund for all employees shall commence with the month in which employment begins.

20.4    The contribution rates payable to the Health and Welfare, Pension and Legal and Educational Assistance Funds pursuant to Sections 20.1, 20.2 and 20.3 above shall be increased as follows:

    (a)    It is agreed that the Employer shall contribute additional amounts over and above those required in Sections 20.1(a), 20.2(a) and 20.3(a) to the Health and Welfare, Pension

16

and/or Legal and Educational Assistance Funds, combined, on behalf of each full time employee as follows:

Effective 3/1/2022          $112.64 per month
Effective 3/1/2023............$TBD Per Sec. 8.1
Effective 3/1/2024............$TBD Per Sec. 8.1
Effective 3/1/2025.............$TBD Per Sec. 8.1
Effective 3/1/2026............$TBD Per Sec. 8.1

    (b)    The distribution of the additional contributions required in (a) above to the Health and Welfare, Pension, and/or Legal and Educational Assistance Funds shall be left to the decision of the Board of Trustees of the respective Funds.

    (c)    It is further agreed that the Employer shall contribute an equivalent additional hourly amount over and above those required in Sections 20.1(b), 20.2(b) and 20.3(b) to the Health and Welfare, Pension and/or Legal and Educational Assistance Funds on behalf of part time employees.

20.5    For the purpose of contributions to the Health and Welfare, Pension and Legal and Educational Assistance Funds only, any part-time employee who works one hundred twenty eight(128) hours or more in a calendar month shall be considered a regular full-time employee and full-time employee contributions will be required for that month. Payments to the Health and Welfare, Pension and Legal and Educational Assistance Funds on behalf of part time employees shall be made at least monthly although the Employer may make the payments on a per payroll basis.

20.6    Part time per hour contributions to the Health and Welfare, Pension and Legal and Educational Assistance Funds are due only up to the amount of the applicable full time contribution.

20.7    No contributions to the Health and Welfare, Pension, and Legal and Educational Assistance, Funds shall be required on behalf of any employee who is on a leave of absence, except as required by law.

20.8    By the execution of this Agreement, each Employer authorizes the Trustees to enter into appropriate trust agreements necessary for the administration of such funds, and hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

20.9    It is also agreed that in the event the Employer is delinquent at the end of a month in the payment of its contributions to the Health and Welfare, Pension or Legal and Educational Assistance Funds created under this Agreement; in accordance with the rules and regulations of the Trustees of such Funds, the employees or their representatives shall have the right to take such action as they deem necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employee for losses resulting therefrom.

20.10    Should the Trustees of the Health and Welfare, Pension or Legal and Educational Assistance Funds audit the records of the Employer, such audit shall not exceed three (3) years from the date of notice of audit.

17

The payment of accrued and unused paid time off (e.g. vacation, personal and or sick days etc.) to an employee who is separated from the Employer regardless of reason (quit, retirement, termination, lay off etc.) regardless of the month in which paid, shall not trigger the obligation to make a contribution to the Pension Fund

### ARTICLE 21
### MANAGEMENT RIGHTS

21.1  All rights, powers, and authority customarily exercised by the Employer are retained and reserved by the Employer except as otherwise specifically modified by express provisions of this Agreement.

### ARTICLE 22
### DOCTORS' EXAMINATIONS

22.1  All doctors' examinations requested by the Employer will be paid for by the Employer. In the event the employment of the employee is terminated on the basis of the report of the Employer's doctor, or in the event of questionable status of employee's health upon being rehired due to a layoff, the Union may, at its own cost, have such report checked by a doctor of its election.

### ARTICLE 23
### TIME RECORDS

23.1  The Employer shall keep accurate time records and make them available for inspection by the Union upon request so that there will be no misunderstanding about the employee's time. The Union consents to the continued use of the Employer's current timekeeping practices/system Prior to installing a new device or using such identifying measures to control admission to or exit from the premises or to record the time spent working by an employee the Employer shall discuss the new measure with the Union.

### ARTICLE 24
### ACCESS TO FACILITY

24.1  Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes and investigating working conditions; provided, however, that there is no interruption of the Employer's working schedule.

### ARTICLE 25
### SHIFT CHANGES

25.1  If the Employer has legitimate cause, it may change shifts provided that it provides employees with the required advance notice. Employees must receive seven (7) days' notice of a shift change. The layoff of an employee that does not result in a bump is not a shift change for purposes of this Article.

### ARTICLE 26
### PAYDAY

26.1  Payday shall be at least as often as biweekly (every two weeks). Employees must receive a paper or electronic paycheck; an Employer is prohibited from paying an employee in cash.

## ARTICLE 27
## MAINTENANCE OF BENEFITS

27.1 Employees covered by this Agreement receiving wages or conditions (excluding overtime) over and above those listed in this Agreement shall suffer no economic loss as the result of signing this Agreement or during the term of this Agreement. No employee covered by this Agreement shall receive less than the terms and conditions therein specified.

## ARTICLE 28
## INDIVIDUAL AGREEMENTS

28.1 There shall be no side deals or individual agreements whether orally or in writing between any Employer and employee or between Employers. No employee or Employer, either orally or in writing, shall enter into any agreement, contract, or arrangement covering any employment to which this Agreement applies which is contrary to or conflicting with the terms and conditions of this Agreement.

## ARTICLE 29
## NON-DISCRIMINATION

29.1 It is the policy of both the Employer and the Union to comply with all Federal and State Equal Employment Opportunity Laws and not to discriminate against any employee because of race, sex, color, religion, national origin, age, membership or non-membership in the Union, or any protected category.

## ARTICLE 30
## PENSION - UNFUNDED LIABILITY

30.1 Upon the request in writing from any Employer signatory hereto, addressed to the Benefit Funds, the Benefit Funds shall be required to furnish such Employer an annual statement for the most recent period available on the Employer's withdrawal liability, if any. It is agreed that such requests shall be limited to one (1) each year from each Employer.

## ARTICLE 31
## SHORTAGES

31.1 Employees shall be accountable for all receipts collected by them and responsible for their errors in the collection of parking tickets. Employers shall have the right to summarily dismiss an employee for stealing, misrepresentation of the receipts, or for failure to explain to the satisfaction of the Employer repeated errors in parking tickets, reports, and collections, except as set forth below.

31.2 Employees shall be informed of their shortages, if any, within thirty (30) days after discovery of the shortage, but in no event later than sixty (60) days after the shortage occurred. Shortages, if any, shall be recovered within two (2) pay periods after the employee is notified of the shortage, or longer if required by law.

31.3 In the event of shortages of $5.00 or more, the Employer will follow the progression of discipline set forth below when appropriate, subject to such facts as may be present in each case, and subject to the just cause requirement of the collective bargaining agreement:

GUIDELINES

| CASHIER SHORTAGE OCCURRING IN A SINGLE TWELVE MONTH PERIOD | ACTION TO BE TAKEN GENERALLY APPLIED |
|---|---|
| 1st | Oral Warning |
| 2nd | Written Warning |
| 3rd | 3-Day Suspension without pay |
| 4th | Discharge |

31.4    It is understood that the foregoing constitute agreed-upon disciplinary guidelines. However, if unusual situations or extenuating circumstances are present, the situation may warrant consideration of deviation from the guidelines based upon all the facts available for review. Accordingly, these guidelines are intended to be used as a guide for the considered judgment of supervisory personnel who must in each case view all of the facts of an employee shortage in their proper context.

31.5    If the employee disagrees with the shortage charge, the matter may be processed through the grievance procedure.

## ARTICLE 32
## EMPLOYEE LIABILITY

32.1    Except as provided for in Article 31, no employee shall be held financially responsible for damages incurred in the performance of his or her daily duties.

32.2    No employee shall be charged for any insurance premiums or for any deductibles or costs (excluding Health & Welfare Insurance or claims) related to any insurance claim, or any other claim, of damage to person or property.

## ARTICLE 33
## LOSS OF OR CHANGE IN OWNERSHIP OR MANAGEMENT

33.1    In the event an Employer acquires, loses, closes, or anticipates losing a location which falls within the scope of this Agreement, the Employer will give the Union fifteen (15) days written notice, on the form provided by the Union, prior to the effective date thereof, or immediate written notice if the acquisition or loss is to take place in less than fifteen (15) days, and said Employer will meet at the Union's request before the acquisition or loss to discuss all matters pertinent to said acquisition or loss. At the time of location change, the former Employer shall pay out all wages and benefits owned under this Agreement, including accrued vacation, to all former employees, unless the former Employer operates a location with a "pass through" contractual provision.

33.2    Subject to the provisions herein, any employee who has continuously worked at a location for one hundred and eighty (180) days or more will be retained by the acquiring Employer when an Employer acquires a new location. The Employer losing the location will be obligated to retain all

20

other employees. Provided, however, that regardless of length of service at the location, the Employer losing the location upon notice by the acquiring Employer (said notice must be made within thirty (30) days of hire) shall retain any employee who was previously terminated by the acquiring Employer, if such termination was upheld through the Grievance and Arbitration Procedure, or the Union decided not to pursue such termination through the Grievance and Arbitration Procedure. Employees who do not respond to a second new hire notice by the acquiring Employer (sent five work days apart) within the time limits under Article 4 above shall be terminated and shall lose all rights under this Agreement. If an Employer losing a location makes a promise of employment in writing to any employee currently working at the location, the Employer shall be obligated to retain that employee. Full time Employees of the Employer losing the location who work less than 20 hours per week on average at the location being transitioned shall be retained by the Employer losing the location. Full time employees of the Employer losing the location who work 20 hours or more per week on average at the location being transitioned shall be retained by the acquiring Employer and shall be provided with a full time schedule which can be created by laying off a part time employee employed elsewhere.

33.3    Within fifteen (15) days of the loss of a location, the Employer who lost the location shall pay to employees who are retained by the acquiring Employer the value of all accrued vacation, accrued sick/personal days not taken and/or paid (unless the former Employer operates a location with a "pass through" contractual provision) and compensation earned under this Agreement.. In addition, the Employer who lost the location shall pay the respective Benefit Funds any amounts owed. The acquiring Employer (unless the location is a pass through location) shall provide said employees with corresponding time-off without pay which the employee may use by December 31st. Upon commencing employment with the acquiring Employer, employees shall be credited with all seniority, as described in Article 4, Section 4.1, as though there had not been an Employer change.

## ARTICLE 34
## CREDIT UNION

34.1    The Employer agrees to deduct from the employee's regular paycheck and forward to the credit union designated by the Union such sums as the employee may voluntarily decide to deposit. The employee will notify the Employer by written authorization of the amount to be deducted and deposited. Such deduction will be on a biweekly basis and forwarded to the credit union.

## ARTICLE 35
## DRIVE AUTHORIZATION AND DEDUCTION

35.1    The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his or her regular paycheck on a biweekly basis. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

## ARTICLE 36
## OPEN FULL-TIME POSITIONS

36.1    Any full-time positions that become open must be offered to part-time employees at that location as follows:

21

(a)    Only part time employees who work at the location in which the full time position is available must be offered the position.

(b)    These part time employees are to be offered the position in seniority order, starting with the part time employee with the most seniority.

(c)    Such seniority is not length of time at the location, but rather Union seniority, as defined in Article 4, Section 4.1.

## ARTICLE 37
## LABOR MANAGEMENT COMMITTEE

37.1   The Employer agrees to contribute five dollars ($5.00) per month to the Parking Industry Labor Management Committee (PILMC) for each employee covered by this Agreement.

## ARTICLE 38
## LOCATION/FACILITY CLASSIFICATION

38.1   The parties recognize that it is necessary to classify locations/facilities for purposes of this Agreement and the Agreement applicable to valet service locations. All locations/facilities that are covered under these Agreements as of November 1, 2001 will retain their current classification. Any location/facility not covered by these Agreements as of November 1, 2001 will be classified by mutual agreement between the Employer and the Union using the following guidelines:

(a)    Commercial: All locations in which fifty percent (50%) or more of the vehicles parked at the location belong to the general public are commercial locations. Commercial locations include locations with valet parking services where there is any parking spaces in the building where the location exists.

(b)    Residential: All locations of employer members of ABOMA and all other locations in which more than fifty percent (50%) of the vehicles parked at the location belong to residents of the property are residential locations.

(c)    Valet: All locations that strictly provide valet parking services without any physical parking facility are valet locations and are covered by the Agreement covering valet service locations.

38.2   The Employer and the Union agree that employees employed as bellmen or doormen will be covered under the classification for the location where they are employed.

38.3   Employees are permitted to work at multiple locations/facilities. While performing such work, employees shall be compensated for all hours worked at the location/facility under the Agreement covering that location/facility; provided, however, that where an Employer transfers an employee to another location/facility under the provisions of Article 18, such employee shall be paid the highest wage rate in effect under any of the Agreements the employee works under.

## ARTICLE 39
## TEAMSTERS-NATIONAL 401(K) SAVINGS PLAN

39.1   The Employer hereby agrees to participate in the Teamsters-National 401(k) Savings Plan ("the Plan") on behalf of all employees represented for purposes of collective bargaining under this Agreement. The Employer will make or cause to be made payroll deductions from participating

employees' wages, in accordance with each employee's salary deferral election subject to compliance with ERISA and the relevant tax code provisions. The Employer will forward withheld sums to the Plan at such time, in such form and manner as required pursuant to the Plan and Declaration of Trust (the "Trust"). The Employer will execute a Participation Agreement with the Union and the Trustees of the Plan evidencing employer participation the Plan effective prior to any employee deferral being received by the Plan. In addition, the Employer agrees to require the payroll system provide separate paycheck deductions so that the Plan may allow participant loans. The Employer further agrees, at such times as it is administratively feasible, to require the payroll system to provide separate paycheck deductions so that the Plan may allow after-tax contributions.

## ARTICLE 40
## MISCELLANEOUS

40.1   Once employed, no employee shall be required to take a polygraph, behavioral analysis, background check or other similar test.

40.2   Employees, except for porters, may not be required to perform janitorial services; however, in accordance with past practices, employees may be directed to clean immediate areas visible to customers as well as office.. Employees who are not classified as porters may not be required to clean restrooms, as the cleaning of rest rooms is not bargaining unit work.

40.3   An employee may not be discharged or disciplined because his/her earnings have been subjected to two (2) or less wage garnishment deduction orders within one (1) year.

40.4   Past practices regarding car washing will prevail at each location, except that an agreement must be reached with the Union regarding the wages, hours, terms and conditions of employment for such work in any one of the following circumstances:

(a)   where the method of washing cars or the number of cars to be washed per shift or otherwise is to be substantially changed;

(b)   instituting car washing at any location where cars have not been washed during the past twelve (12) months; or

(c)   instituting car washing at new garages.

40.5   Drug and alcohol testing will only be permitted for probationary employees and reasonable suspicion under the terms and conditions of the Drug and Alcohol Policy and Testing Program agreed to by the Employer and the Union. An Employer acquiring a location pursuant to Article 33 (Change in Ownership or Management) shall have the right to perform one (1) Drug and Alcohol or Background test pursuant to the existing policy and practices within the acquiring employer's first thirty (30) days of employing acquired employee. Under these circumstances, an acquired employee's refusal to submit to the Drug and Alcohol or Background test shall result in termination of employment. Positive test results from the Drug and Alcohol test under these circumstances shall be handled in accordance with the terms of the existing policy and practices.

40.6   An Employer acquiring an location pursuant to Article 33 (Change in Ownership or Management) may conduct a Background check and refuse to employ an individual whose Background check under such circumstances reports the conviction of a Class 3 (or more serious) Felony. If the background check results in the refusal to employ the employee, the former employer is under no obligation to retain the employee, provided that the former employer can establish just cause that

it would not have otherwise retained the employee due to a violation of company policy to disclose a class 3 (or more serious) Felony.

40.7     On or after November 15, 2016 the Union agrees that in the event any agreement is executed by the Union with any other Parking Industry Employer which provides for a lower wage rate, reduced benefits, or changed working conditions than those provided in this Agreement, then the Employer may have such lower wage rates, or reduced benefits, or changed working conditions substituted in this Agreement. The Union shall provide advance, written notice to the Chicago Parking Association in the event it requests an exception to this provision for any newly organized Employer, or for any Employer who has not previously been signatory to an agreement with the Union. Upon receipt of such notice, the Chicago Parking Association agrees to designate representatives to meet and confer with the Union regarding this request. If the Chicago Parking Association does not respond, within seven (7) working days, to such a request by the Union, then the Union may enter into any such agreement without agreement from the Employer.

40.8     Members of ABOMA other than those listed in Schedule A who elect to adopt this Agreement shall notify ABOMA to that effect. Notice of election to adopt this Agreement shall be made by members of ABOMA in writing and ABOMA shall in turn notify the Union. Such notice shall state the name, and location of the building to which the election applies and the name of the Employer. If any building which is paying its employees who are covered by this Agreement wages higher than those provided in this Agreement shall desire to adopt this Agreement, it shall not reduce such higher wages during the term of this Agreement.

40.9     On the next scheduled pay period after separation of employment, an employee shall be paid all compensation owed including wages, accrued and unused vacation days, and accrued and unused sick/personal days, and applicable contributions will be made to the Teamsters Local 727 Health and Welfare, Pension and Legal and Educational Assistance Funds. This payment shall not constitute the basis for the obligation to make contributions to the Pension Plan beyond the employee's last day of active work.

40.10     Subject to Article 4 and 12 in the event a client or a governmental entity, imposes a qualification or certification standard e.g. vaccination, licensure, the completion of special training, or other requirement at a location, employees who fail to or refuse to meet that requirement will be laid off and placed on the recall list, *unless* at the time of layoff a vacancy exists for which the employee is qualified.

THIS AGREEMENT shall be binding upon and inure to the benefit of the parties hereto and their respective administrators, executors, successors, and assigns.

THIS AGREEMENT shall be constructed as divisible as to each Employer and the failure of any Employer to abide by the terms hereof shall not operate to terminate this Agreement as to any other Employer. No breach of this Agreement by any Employer shall operate to subject ABOMA or another Employer to any legal liability to the Union.

THIS AGREEMENT shall go into effect November 1, 2021, and shall continue in full force and effect until and including October 31, 2026, and shall continue thereafter on an annual basis from year to year unless written notice of desire to amend the Agreement is given by either party sixty (60) days prior to October 31, 2026, or sixty (60) days prior to October 31 of any subsequent year. Employer agrees that the Chicago Parking Association or ABOMA (if it is a member of ABOMA) shall bargain any successor Agreement on the Employer's behalf unless Employer provides written notice otherwise to the Union, the Chicago Parking Association, and ABOMA as appropriate sent via certified mail sixty (60) days prior to October 31, 2026, or sixty (60) days prior to October 31 of any subsequent year should this Agreement be extended.

EXECUTED at Chicago, Illinois, this 4th day of January, 2022.

FOR THE ASSOCIATION

Se. APOOrA.

FOR THE UNION

25

SCHEDULED A: The ABOMA Member Buildings (Employers) indicated below have notified ABOMA that they wish to be included into the collective bargaining labor agreement by and Between ABOMA and Teamsters Local Union No. 727 effective on November 1, 2021 and covering employees as define in Article 1 1.1 of the collective bargaining agreement. Report date 12/7/2021

| Building Name | Building Address | EIN |
|---|---|---|
| 1100 Lake Shore Drive Condo Assoc | 1100 North Lake Shore Drive | 36-2706360 |
| 1110 Lake Shore Apartments Homeowners Association | 1110 North Lake Shore Drive | 36-2706360 |
| 1300 Lake Shore Drive Condominium Association | 1300 N. Lake Shore Drive | 36-2802902 |
| 1420 Sheridan Road Condominium Corporation | 1420 Sheridan Road | 36-2695462 |
| 1550 Condominium Association | 1550 Lake Shore Drive | 36-2969127 |
| 1555 Astor Condominium Association | 1555 N. Astor Street | 36-2914087 |
| 1616 Condominium Association | 1616 Sheridan Road | 36-2729391 |
| 1700 East 56th Street Condominium | 1700 E. 56th Street | 36-3958004 |
| 200 East Delaware Condominium Association | 200 East Delaware | 36-2919061 |
| 2500 Lakeview Condominium Association | 2500 North Lakeview | 36-2806277 |
| 2909 Sheridan Condominium Homeowners Association | 2909 N. Sheridan Road | |
| 3150 Lake Shore Condominiums | 3150 N. Lake Shore Drive | 36-2948124 |
| 3180 Condominium Association | 3180 North Lake Shore Drive | 36-2808390 |
| 33 East Cedar Condominiums | 33 E. Cedar | 36-4066507 |
| 399 Corporation | 399 W. Fullerton Parkway | 36-2236866 |
| 555 Cornelia Condominium Association | 555 West Cornelia Avenue | 36-3091276 |
| 990 North Lake Shore Drive Condominium Association | 990 N. Lake Shore Drive | 23-7271481 |
| Carl Sandburg Village Condo Assn. #1(Cummings/Dickinson) | 1355 North Sandburg Terrace, | 36-3030049 |
| Drake Tower Apartments, Inc. | 179 East Lake Shore Drive | 36-2080979 |
| Faulkner House Condominium Association | 70 West Burton Place | 36-3055822 |
| Harbor House Condominiums | 3200 N. Lake Shore Drive | 36-2880374 |
| Horizon House Condominium Association | 5733 N. Sheridan Road | 36-2596126 |
| Lowell House Condominium Association | 88 West Schiller | 36-3055822 |
| Palmolive Building Condominium Association | 159 Walton Place | 20-3754457 |
| Park Astor Condominium Association | 1515 N. Astor | 36-4367429 |
| Park Tower Condominium Association | 5415 N. Sheridan Road | 36-3021311 |
| Sheridan Tower Condominiums | 2930 N. Sheridan Road | 26-0341852 |
| Shoreline Park | 4950 N. Marine | 36-4456917 |
| The Residences at RiverBend | 333 N. Canal Street | 36-4516292 |

29 Buildings

## Memorandum of Understanding With Respect to Collective Bargaining Agreement

### by and Between ABOMA and Teamsters Local Union No. 727 effective on November 1, 2021 and covering employees as define in Article 1 1.1 of the collective bargaining agreement.

### <u>COVID-19 Vaccination Mandate</u>

Should an Employer mandate employees be vaccinated as a condition of being scheduled to work (subject to medical or good faith religious exemptions), in which case upon proof of vaccination the Employer shall pay the employee four (4) hours of pay per shot including a booster. Employees who refuse to be vaccinated shall be laid off.

The following stipend is only required if the Employer implements the above vaccine mandate. Full -time employees who have received a complete regimen of COVID vaccination shots by October 31, 2021, shall receive a cash stipend of $150.00 (a part time employee shall receive seventy-five dollars ($75.00)) upon submitting a copy of the Vaccination certification card issued by the vaccination site. Employees shall have until November 30, 2021, to submit their vaccination card or shall lose the right to receive this stipend.

**The Apartment Building Owners and Managers Association of Illinois ("ABOMA")**

By: _____

: _Sec. ABOMA_

Date: _12/2·/2021_

**Teamsters Local Union No. 727**

By: _____

Title: _Secretary-Treasurer_

Date: _1 4 2022_

**ABOMA**
**10 S. Riverside Plaza, Suite 875**
**PMB #7209**
**Chicago, Illinois 60606**

Apartment Building Owners and Managers Association
Voice: (312) 902-2266      FAX (312) 902-4538

Building Name: 1150 Lake Shore Drive Condo

Address: 1150 N Lake Shore Drive
Chicago, IL 60611

**ABOMA Member Number if known:**

_____

## COMPLETE AND RETURN THIS FORM ONLY IF YOU HAVE GARAGE (Local 727) EMPLOYEES EMPLOYED BY THE BUILDING

## INCLUSION INTO THE ABOMA/TEAMSTERS LOCAL 727 LABOR CONTRACT
### Covering Teamsters Local 727 employees employed BY ABOMA Member Buildings

PLEASE NOTE: If the building garage is run by a garage management firm and the employees are employees of the management firm, do not complete this authorization form as the labor agreement covering these employees is not negotiated by ABOMA. If you no longer have garage employees employed by the building (i.e., service has been sub-contracted out or service is suspended) please advise ABOMA via email at ABOMAsecretary@gmail.com and it will be noted in the ABOMA files.

### RETURN IMMEDIATELY - 2021 ABOMA LABOR AUTHORIZATION FORM - Teamsters Local 727

By this notice to ABOMA, the ABOMA Member Building indicated below (Employer) hereby adopts inclusion into the labor negotiations and the resulting Agreement by and Between Apartment Building Owners and Managers Association of Illinois and the Auto Livery Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxicab Drivers, Miscellaneous Garage Employees, Car Washers, Polishers and Wash Rack Attendants Union, Local 727 for the period beginning on or after November 1, 2021 and cover employees as specified in Article 1 of the present labor agreement which expires on October 31, 2021.

Building Name: 1150 Lake Shore Drive Condominium Association

Building Address: 1150 N Lake Shore Drive City: Chicago Zip: 60611

Building FEIN: 36 - 2959029

Number of Garage Employees: 9 (Full & Part Time)

Authorized by: Suzette B Johnson     Title: Account Supervisor Managing Agent
               Please print                    Please print

Date: 2/28/24     SIGNATURE

## COMPLETED FORM SHOULD BE IMMEDIATELY RETURNED TO ABOMA BY

## EMAIL: ABOMAsecretary@gmail.com   OR   FAX: 312-284-4577

Maintain the original form in the building files. On Questions please phone the ABOMA Office at (312) 902-2266.

### DO NOT RETURN THIS FORM BY MAIL.

## Anabel

| | |
|---|---|
| **From:** | John Jr <local727vp@gmail.com> |
| **Sent:** | Wednesday, February 28, 2024 1:59 PM |
| **To:** | Jayna; Anabel |
| **Subject:** | Fwd: ABOMA Local 727 Contract Addition |
| **Attachments:** | 2024 - 1150 N Lake Shore Drive LA.pdf |

Please make the necessary changes
Sent from my iPhone

Begin forwarded message:

> **From:** Christine Friend <ccfriend@att.net>
> **Date:** February 28, 2024 at 12:00:49 PM CST
> **To:** "John Coli Jr." <john@teamsterslocal727.org>, "John Coli Jr." <local727vp@gmail.com>
> **Cc:** ABOMA Secretary <abomasecretary@gmail.com>
> **Subject: Fw: ABOMA Local 727 Contract Addition**

Hello John,

Google indicated that the email below and its attachment were blocked from delivery to you, so I am forwarding the email from a personal account which seems to avoid Google's issues. Please do add ABOMAsecretary@gmail.com to your permitted list when you have a moment, and hopefully that will correct the delivery issue.

Thank you!

### *Christine*
*Christine Friend*
*Corporate Secretary*

Apartment Building Owners and Managers Association of Illinois
10 South Riverside Plaza, Suite 875
PMB # 7209, Chicago, Illinois 60606
Voice: 312-902-2266   Fax: 312-284-4577
e-mail: ABOMASecretary@gmail.com  Web site: www.aboma.com

---------- Forwarded message ---------
From: **ABOMA Secretary** <abomasecretary@gmail.com>
Date: Wed, Feb 28, 2024 at 11:41 AM
Subject: ABOMA Local 727 Contract Addition
To: John Coli Jr. <john@teamsterslocal727.org>
Cc: John Coli Jr. <local727vp@gmail.com>

Hello John,

Hope all is well with you. My name is Christine Friend, and I am now filling the role of ABOMA's Corporate Secretary and Executive Director, stepping into the very big shoes of Bob Wiggs after his almost sixty (60!) years with ABOMA (and as if anyone could ever really replace Bob).

1

**ABOMA BUILDINGS PARTICIPATING IN THE ABOMA/TEAMSTERS LOCAL 727 CBA ENDING 10/31/2021**
Report updated: February 28, 2024

| ABOMA MEMBER # | Employer | Address | CITY | Zipcode |
|---|---|---|---|---|
| 228 | 1100 Lake Shore Drive Condo Assoc | 1100 North Lake Shore Drive | Chicago, IL | 60611 |
| 194 | 1110 Lake Shore Apartments Homeowners Association | 1110 North Lake Shore Drive | Chicago, IL | 60611 |
| 7209 | 1150 Lake Shore Drive Condominium | 1150 Norht Lake Shore Drive | Chicago, IL | 60611 |
| 7 | 1240 Lake Shore Drive | 1240 Lake Shore Drive | Chicago, IL | 60610 |
| 83 | 1300 Lake Shore Drive Condominium Association | 1300 N. Lake Shore Drive | Chicago, IL | 60610 |
| 233 | 1410 North State Parkway Condominium Association | 1410 N. State Parkway | Chicago, IL | 60610 |
| 477 | 1420 Sheridan Road Condominium Corporation | 1420 Sheridan Road | Wilmette, IL | 60091 |
| 11 | 1500 Lake Shore Drive Building Corporation | 1500 Lake Shore Drive | Chicago, IL | 60610 |
| 114 | 1550 Condominium Association | 1550 Lake Shore Drive | Chicago, IL | 60605 |
| 61 | 1555 Astor Condominium Association | 1555 N. Astor Street | Chicago, IL | 60610 |
| 55 | 1700 East 56th Street Condominium | 1700 E. 56th Street | Chicago, IL | 60637 |
| 138 | 200 East Delaware Condominium Association | 200 East Delaware | Chicago, IL | 60611 |
| 350 | 209 East Lake Shore Drive Corp. | 209 E. Lake Shore Drive | Chicago, IL | 60611 |
| 41 | 2400 North Lakeview Condominium Association | 2400 N. Lakeview | Chicago, IL | 60614 |
| 139 | 2500 Lakeview Condominium Association | 2500 North Lakeview | Chicago, IL | 60614 |
| 403 | 30 East Elm | 30 E. Elm | Chicago, IL | 60611 |
| 84 | 3150 Lake Shore Condominiums | 3150 N. Lake Shore Drive | Chicago, IL | 60657 |
| 100 | 3180 Condominium Association | 3180 North Lake Shore Drive | Chicago, IL | 60657 |
| 42 | 33 East Cedar Condominiums | 33 E. Cedar | Chicago, IL | 60611 |
| 245 | 3800 Lake Shore Drive Condominium Association | 3800 N. Lake Shore Drive | Chicago, IL | 60613 |
| 6 | 399 Corporation | 399 W. Fullerton Parkway | Chicago, IL | 60614 |
| 205 | 555 Cornelia Condominium Association | 555 West Cornelia Avenue | Chicago, IL | 60657 |
| 212 | 5757 N. Sheridan Road Condominium Association | 5757 N. Sheridan Road | Chicago, IL | 60626 |
| 29 | 777 Condominium Association | 777 N. Michigan Avenue | Chicago, IL | 60611 |
| 181 | 990 North Lake Shore Drive Home Owners Association | 990 N. Lake Shore Drive | Chicago, IL | 60611 |
| 89 | Carl Sandburg Village Condo Assn. #1(Cummings/Dickinson) | 1355 North Sandburg Terrace, Room 104 | Chicago, IL | 60610 |
| 146 | Drake Tower Apartments, Inc. | 179 East Lake Shore Drive | Chicago, IL | 60611 |
| 90 | Faulkner House Condominium Association | 70 West Burton Place | Chicago, IL | 60610 |
| 68 | Harbor House Condominiums | 3200 N. Lake Shore Drive | Chicago, IL | 60657 |
| 273 | Horizon House Condominium Association | 5733 N. Sheridan Road | Chicago, IL | 60660 |
| 94 | Lowell House Condominium Association | 88 West Schiller | Chicago, IL | 60610 |
| 309 | One East Schiller | 1 East Schiller Street | Chicago, IL | 60610 |
| 365 | Palmolive Building Condominium Association | 159 Walton Place | Chicago, IL | 60611 |
| 144 | Park Astor Condominium Association | 1515 N. Astor | Chicago, IL | 60610 |
| 169 | Park Tower Condominium Association | 5415 N. Sheridan Road | Chicago, IL | 60640 |
| 353 | Shoreline Park | 4950 N. Marine | Chicago, IL | 60640 |
| 81 | The 100 Bellevue Place Condominium Association | 100 E. Bellevue | Chicago, IL | 60611 |

**37 BUILDINGS**

# Exhibit E

STATEMENT OF COLLECTION PROCEDURES
TEAMSTERS LOCAL UNION NO. 727 BENEFIT FUNDS
April 22, 2024

**OBJECTIVE**

It is the intent of the Trustees that the following procedure be implemented so that the Trustees may fulfill their statutory and fiduciary obligations. The Trustees also intend to ensure that each employer is following the requirements of its Collective Bargaining Agreement and the Restated Agreement and Declaration of Trust.

**COLLECTION PROCEDURE**

1.  Due Date

    **Contributions and signed remittance reports are due by the 10th day of the month following the month in which the work was performed.** If **a pay period ends in a month, other than the month in which work is performed, the employer may remit its payment for such work in the next month.**

    **References in this statement to receipt by a particular date shall mean by the close of business on that day, or by the close of business on the last business day prior to that day in the case of a Saturday, Sunday or holiday.**

2.  Delinquent Payments

    A.  The Fund Office will provide the Collection and Field Representative responsible for the employer with a monthly report showing delinquencies by the 15th of the month. The Collection and Field Representative will immediately begin collection efforts. If **the payment has not been received by the last business day of the month, interest at a rate of 0.75% per month of the delinquent contribution will be assessed. Interest will be compounded monthly with a minimum charge of $25.00 per month per Fund.** In no event will the amount of interest charged for a particular month exceed the amount of the contributions due for that month for that Fund.

    B.  If the employer does not pay the entire amount due by the 15th day of the month following the month in which it was due, the Fund Office will notify the Collection and Field Representative responsible for the employer. **If the payment has not been received by the 20th of the month, liquidated damages in the amount of 5% of the contribution owed**

**will be added to the delinquency. In addition, interest at the rate of 0.75% per month of the delinquent contribution will continue to accrue with a minimum charge of $25.00 per month per Fund.** In no event will the amount of interest charged for a particular month exceed the amount of the contributions due for that month for that Fund. The Fund Office will also advise the employer of the imposition of these additional charges for a continued delinquency.

C.    If the employer does not pay the entire amount due by the 15th day of the second month following the month in which it was due, the Fund Office will notify the Fund Manager. If **the employer does not make its payment by the 20th of the month, liquidated damages in the amount of 10% of the contribution owed will be added to the delinquency (5% for each month delinquent). In addition, interest at the rate of 0.75% per month of the delinquent contribution will continue to accrue with a minimum charge of $25.00 per month per Fund.** In no event will the amount of interest charged for a particular month exceed the amount of the contributions due for that month for that Fund. The Fund Manager will also advise the employer of the impositions of these additional charges for a continued delinquency. If the Employer has not paid the entire amount after the above procedure, the Fund Manager will refer the matter to the Trustees for further action.

**D.** If after following the above procedure, the employer still has not paid the delinquency, the Trustees may refer the matter to Fund Counsel, or take any other action available to collect the delinquency. If so referred to Fund Counsel, Fund Counsel may pursue collection efforts without litigation, recommend that a lawsuit be filed or recommend that other appropriate action be taken. Fund Counsel, if so instructed, will be responsible for pursuing collection efforts against the employer until the delinquency has been paid and contributions are current, or the Trustees determine that delinquency is not collectable. **All payments by the employer on account of the delinquency shall also include all attorney's fees and costs associated with the collection of the delinquency, including losses to the employees as a result of the delinquency and a result of any action taken to collect the delinquency.**

**E.** If, upon the recommendation of Fund Counsel, the Trustees decide to file a lawsuit to compel payment, the Fund Office will order a full audit of the employer's payroll records. **All payments by the employer on account of the delinquency shall also include all attorney's fees and costs associated with the collection of the delinquency, including the cost of the audit of the employer's payroll records and losses to the employees as a result of the delinquency and a result of any action taken to collect the delinquency.**

3.  Reports by Fund Counsel

    Fund Counsel shall report to the Trustees monthly as to the status of matters Fund Counsel is handling.

4.  Separate Delinquency

    If the employer owes contributions to more than one Fund, the payment due to each Fund will be considered a separate delinquency. In addition, the contribution report of an employer, for each month, will be considered a separate delinquency subject to the interest charges and liquidated damages as set forth above. Whenever an employer's account is turned over to Fund Counsel, all past and future reports may be combined for collection purposes and amounts then owed by the employer will include attorney's fees and all other costs associated with collecting the delinquency.

5.  Waivers of Interest and Liquidated Damages

    The Trustees reserve the right to waive interest, liquidated damages and other delinquent amounts, provided such a waiver is in the best interest of the Funds and is consistent with the Trustees fiduciary duties.

6.  The Trustees will review the rate of interest assessed against delinquent contributions in January of each year to ensure that it meets the Trustees' intent.

7.  The Trustees are not bound to follow the procedures as set forth herein, when the Trustees or their designee determine that normal procedures are inappropriate to any particular matter, and that the matter may be handled in such manner as is determined appropriate by the Trustees or their designee, aside from the normal collection procedures.

# Exhibit F

TEAMSTERS LOCAL UNION NO. 727 BENEFIT FUNDS
STATEMENT OF AUDIT PROCEDURES
April 22, 2024

OBJECTIVE

This document sets forth the procedures under which audits of employers will be conducted. This document sets forth the rights and responsibilities of employers under the Plan. Audits are performed to determine what moneys, if any are owed to the Funds. Audits will not determine if the employer has made any excessive contributions. Any potential excessive employer contributions will be handled pursuant to the "Teamsters Local Union. No. 727 Benefit Funds' policy for Erroneous Payments Made by an Employer." It is the intent of the Trustees that audit procedures be implemented so as to fulfill the statutory and fiduciary obligations of the Trustees and to maximize the receipts due the Funds pursuant to the collective bargaining agreements. The Trustees are confident that a substantial majority of contributing employers are making timely contributions to the Funds in accordance with the labor agreements and the Trust Agreements. It is hoped that active implementation of the following procedures will encourage all contributing employers to comply on a timely basis.

AUDIT PROCEDURES

I.      Employers will be selected for Audit on a routine basis or for cause. It is the goal of the Board of Trustees to conduct an audit of each contributing employer no less frequently than once every three (3) years, except as provided in D, below

A.      FOR CAUSE: The Fund Office will direct the Contribution Compliance Department to perform audits on employers for cause. The Collection and Field Representatives will communicate the information that led to the audit.

B.      ROUTINE: Each employer will be audited once approximately each three years. The Fund Office will promptly advise the Auditor by letter when such selection has been made.

C.      NEW EMPLOYERS: The Fund Office will direct the Contribution Compliance Department to perform an audit on all new employers after they have contributed to the Benefit Funds for at least six (6) months.

D.      An Employer performs work under a collective bargaining agreement for a short period of time (e.g., on a project basis), or who has not performed a substantial amount of work, will not be audited unless the

Audit and Collection Committee has reason to believe the required contributions have not been made.


II.     PRE-AUDIT

A.      AUDIT FILE: Once an employer has been selected for audit by one of these processes, the Contribution Compliance Department will promptly open an audit file to compile information and to monitor the status of the audit.

B.      TOLLING AGREEMENTS: The Collection and Field Representative(s) will obtain tolling agreements for all audits with a risk of loss of claims due to the defense of the Statute of Limitations. The Fund Office will notify the Collection and Field Representative(s) at least one (1) month prior to the date the tolling agreement is needed, or as soon as is thereafter possible. If the Collection and Field Representative(s) is unable to obtain in a timely manner so as to eliminate the risk of loss, the matter will be referred to the Fund Manager, who will seek Trustees action.

C.      SCHEDULING OF AUDIT: Within seven (7) days after an employer has been selected for audit by either process above, the Contribution Compliance Department will send to the employer an initial contact letter to schedule an appointment for an audit.

1.      Within five (5) days after sending the letter, the Contribution Compliance Department will contact the employer by phone and/or email in order to schedule the audit.

2.      The Contribution Compliance Department will attempt to schedule an audit. If they are not able to do so within four (4) weeks, the auditor will request assistance from the Collection and Field Representative(s). The Collection and Field Representative(s), will then attempt to contact the employer to facilitate the scheduling of the audit. The Collection and Field Representative(s) will keep written records of all such attempts. If not successful within a two (2) week period, the Fund Office will send a letter to the Employer informing them that the matter will be referred to Fund Counsel and legal action will be initiated if the Employer fails to contact the auditor to schedule an audit within a

one (1) week period. A copy of that letter is attached as "Attachment A."

III.    AUDIT

A.    Once an audit is started, it is expected that the audit will be completed in a reasonable time frame. A reasonable time frame will be determined by factors such as the number of employees who performed bargaining unit work for the employer, the availability of records and the time period being audited. The Contribution Compliance Department shall include an estimate of the time needed to complete the audit in their regular updates on the status of audits. It is the expectation of the Trustees that the audit will be completed within ninety (90) days from the date the audit is assigned.

B.    If the employer fails to provide all the necessary records to complete the audit, the Contribution Compliance Department will notify the Fund Management, at the earliest possible date. Fund Management and Collection and Field Representative(s), will then attempt to contact the employer to facilitate the completion of the audit. If not successful within a two (2) week period, the matter will be presented to the Trustees at the next meeting for further direction.

IV.    DRAFT AUDIT REPORT

A.    The Contribution Compliance Department and the Collection and Field Representative assigned to the Employer will meet (if requested by employer) with the Employer to review the initial findings. The Collection and Field Representative will work with the employer to reach an agreement as to the findings. In doing this, they should use their knowledge of the Collective Bargaining Agreement and the industry and information obtained about the Employer in the course of their work as a Collection and Field Representative. They may also use internal files and/or consult with stewards and/or members and/or non-members.

B.    A draft audit report will be sent to the Collection and Field Representative(s) for review by Fund Management or their designee and appropriate Collection and Field Representative(s), the Collection and Field Representative will attempt to obtain a consensus on the findings within 30 days from the date the initial findings are provided to the employer.

-3-

1.        The Collection and Field Representative(s), under the direction of Fund Management, will review the report for any apparent errors or potential problems. This review will be completed within two (2) weeks of receipt of the draft copy.

2.        The results of the review by Fund Management will be communicated by email to the Contribution Compliance Department within four (4) weeks after the draft report is received by the Collection and Field Representative(s).

V.      FINAL AUDIT REPORT

A.      After receipt of the email from Fund Management, the Contribution Compliance Department will prepare a final report with corrections, updated interest/liquidated damages as of date, ninety (90) days after transmitted. A copy of the Final Report will be emailed to the Collection and Field Representative(s).

B.      Within one (1) week of receipt of the final report from the Contribution Compliance Department, the Collection and Field Representative(s) will forward a copy to the employer along with a cover letter from Fund Management attached as "Attachment B."

C.      Within ten (10) days after the final report is forwarded to the employer, the Collection and Field Representative(s) will contact the employer to begin attempts to collect the delinquencies. Recognizing that each situation is unique, the following are guidelines on collection attempts:

1.        If attempts to contact the employer by phone are unsuccessful, the Collection and Field Representative(s) should visit the employer's office.

2.        The Collection and Field Representative(s) should offer his/her availability, including at a meeting, to discuss the report and any questions or issues the employer may have concerning the report.

-4-

3.      If the employer disputes any of the findings, (the Collection and Field Representative(s) should investigate the employer's claims. This investigation must include requests for documentation from the employer, interviews of members and employees and research of internal Fund records. If the Collection and Field Representative(s) needs assistance in the investigation, he/she should consult with Fund Management for assistance.)

4.      It is essential that the Collection and Field Representative(s) continually follow up throughout the process and keep accurate records of collection attempts for a report to be given to Fund Management. The Collection and Field Representative(s) must keep contemporaneous notes on all conversations. While the Trustees rely on the professional judgment of the Contribution Compliance Department, all matters in dispute are subject to Trustees' final approval. The Collection and Field Representative(s) and Fund Management will file a report with the Trustees at the conclusion of their collection attempts. The report will summarize the status of the matter and request further direction from the Trustees. Preferably, this report will be filed at a Trustees meeting. In no event, however, shall collection attempts exceed two (2) months unless directed otherwise by the Trustees.

5.      Fund Management will send the Employer a letter by certified mail advising the employer that its payment has not been received. A copy of the letter is attached as "Attachment C." Fund Management will file a report with the Trustees at the conclusion of the collection attempts. The report will summarize the status of the matter and request further direction from the Trustees. Preferably, this report will be filed at a Trustees Meeting. In no event, however, shall collection attempts exceed two (2) months unless directed otherwise by the Trustees.

VI.     RESOLUTION OF THE AUDIT

A.      PAYMENT: If the employer has agreed to pay the delinquencies, the Fund Office will monitor the payment(s) including the distributions to the appropriate Funds. If the delinquency does not exceed $5,000, the Trustees will waive the audit fee as long as the delinquency is paid in full prior to referral to Fund Counsel. Once payment is made in full, the audit file will be closed.

B.      SETTLEMENT: The Trustees authorize the Fund Manager to negotiate a settlement prior to a matter being turned over to Fund Counsel.

The Trustees further authorize the Fund Manager to waive liquidated damages if he believes it appropriate. If a settlement is reached, the Fund Office will monitor the payment(s) including the distributions to the appropriate Funds. Once payment is made in full, the audit file will be closed.

C.      REFERRAL TO THE ATTORNEY: The Trustees may direct the matter to be referred to Fund Counsel for litigation and/or settlement. Once a matter is turned over to Fund Counsel, the Fund Office will not actively attempt to settle the matter.

## VIII.   COLLECTION AND FIELD REPRESENTATIVE RESPONSIBILITIES

A.      AVAILABILITY: The Collection and Field Representative(s) will be made available to the Contribution Compliance Department and to Fund's Counsel concerning the payroll audit or any collection issues, including as a potential witness in litigation.

B.      PROVISIONS: The Collection and Field Representative(s) should be aware of all governing provisions not only in the Audit Procedures but also in the Trust Agreements and Collective Bargaining Agreements.

## MONITORING AUDIT PROCEDURES

Generally, the entire audit procedure will be monitored by Fund Management. To keep the Trustees advised of the process, reports will be given at each Trustees Meeting. The Contribution Compliance Department, Fund Counsel and Fund Management will provide reports to the Trustees. These reports will be combined into a master report of the status of all audits. The Collection and Field Representative should monitor his or her own payroll audits, including tolling agreements until the payroll audit is resolved. As such, he or she should monitor its status, even if referred to Fund Management, Board of Trustees or Fund Counsel. The Collection and Field Representative should work with the Fund Office to obtain updates on the status of payroll audits.

The Trustees reserve the right to amend these procedures when the Trustees or their designee determine that the normal procedures are inappropriate to any particular matter. Audits may be handled in such a manner as determined appropriate by the Trustees or their designee, aside from the normal collection procedures.

Case: 1:26-cv-07723 Document #: 1 Filed: 07/01/26 Page 192 of 267 PageID #:192

Table of Contents for Exhibits

The following documents are only examples of communications used by the Funds. The Funds may use different communication when it is deemed appropriate to a particular circumstance.

Attachment A:
Notification Letter, used to inform an employer that records are needed for a payroll audit

Attachment B:
Report Transmittal Letter, sent to employer with completed audit report

Attachment C:
Final Notice Letter, sent to employer when the Fund Office cannot collect amounts due

ATTACHMENT A

January 1, 2024

John Smith
ABC Corporation
123 N. La Salle Street
Chicago, IL 60601-1234

Dear Mr. Smith:

The Teamsters Local Union No. 727 Benefit Funds Contribution Compliance Department has sent you a letter and contacted you by phone and/or email to schedule an audit. In addition, I have contacted you to schedule an audit. However, you have not complied with their request. If you fail to contact the Contribution Compliance Department and schedule an audit within a one (l) week period, this matter may be referred to the Funds' Attorney for resolution.

Sincerely,

Ben Affetto
Collection and Field Representative

ATTACHMENT  B

January 1, 2024

John Smith
ABC Corporation
123 N. La Salle Street
Chicago, IL 60601-1234

Dear Mr. Smith:

     Enclosed please find the audit report prepared by the Contribution Compliance Department of ABC Corporation reflecting amounts due the Health and Welfare, Pension and Legal and Educational Assistance Funds for the period January 1, 2004 through March 31, 2008.

     After you review this report, contact our office to discuss payment of the delinquent contributions and the associated amounts for interest, liquidated damages and audit fees. We must hear from you by November 17, 2008 in order for you to avoid unnecessary expenses and litigation.

     Our Collection and Field Representative, Ben Affetto, is  available to discuss any questions you may have regarding the audit report, as well as the payment of the delinquent contributions and associated fees.

Sincerely,

Robert Laino
Fund Manager

cc:     Ben Affetto, Collection and Field Representative

Enclosure

-9-

ATTACHMENT  C

January 1, 2024

John Smith
ABC Corporation
123 N. La Salle Street
Chicago, IL 60601-1234

Dear Mr. Smith:

On November 3, 2008, our office forwarded a copy of the audit report for ABC Corporation prepared by the Contribution Compliance Department reflecting amounts due to the Teamsters Local Union No. 727 Benefit Funds for the period January 1, 2004 through March 31, 2008. We have made several attempts to collect the delinquent contributions and the associated amounts for interest, liquidated damages and audit fees. You have, however, failed to pay the amounts owed.

Please be advised that this is your final notice to settle the matter without proceeding to litigation. If we do not hear from you by January 26, 2009, I will recommend to the Trustees that the matter be referred to litigation and no further attempts at settlement will be considered.

Sincerely,


Robert Laino
Fund Manager



Cc:    Ben Affetto, Collection and Field Representative

-10-

# Exhibit G

209 EAST LAKE SHORE DRIVE CORP
209 E. LAKE SHORE DRIVE
CHICAGO, IL 60611


MARCH 1, 2023 – FEBRUARY 28, 2025

<u>209 EAST LAKE SHORE DRIVE CORP</u>

<u>CONTENTS</u>

| | |
|---|---|
| AUDIT REPORT LETTER | 1 |
| SUMMARY REPORT | 2 |
| DETAILED CONTRIBUTION EXCEPTION REPORTS | 3 - 7 |
| INTEREST SCHEDULE | 8 - 13 |

## TEAMSTERS LOCAL UNION NO. 727 BENEFIT FUNDS

*1300 West Higgins Road, Suite 103, Park Ridge, Illinois 60068, Telephone 773-685-0340*

October 22, 2025

Board of Trustees
Teamsters Local 727 I.B. of T. Health and Welfare,
Pension and Legal and Educational Assistance Funds
1300 West Higgins Road, Suite 303
Park Ridge, IL 60068

We have applied certain procedures, as discussed below, to the payroll records of 209 Eat Lake Shore Drive Corp, a contributing employer to the Teamsters Local 727 I.B. of T. Health and Welfare, Pension and Legal and Educational Assistance Funds, for the period March 1, 2023 to February 28, 2025. The purpose of our review was to assist you in determining whether contributions to the Trust Funds are being made in accordance with the collective bargaining agreement in effect and with the Trust Agreement of the Fund. The propriety of the contributions is the responsibility of the employer's management.

Our procedures generally include a review of the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to Fund contribution records. The employer records we review may include payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, drivers logbooks, contracts and general disbursement records. The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Funds. Any compensation paid to employees not disclosed to us or made part of the written record is not determinable by us and is not included in our review.

The exceptions to employer contributions are noted on the accompanying report.

Teamsters 727 Benefit Funds



<u>209 EAST LAKE SHORE DRIVE CORP</u>

<u>CONTENTS</u>

| | |
|---|---|
| AUDIT REPORT LETTER | 1 |
| SUMMARY REPORT | 2 |
| DETAILED CONTRIBUTION EXCEPTION REPORTS | 3 - 7 |
| INTEREST SCHEDULE | 8 - 13 |

# Teamsters Local Union No. 727 Benefit Funds
## Reconciliation of Differences Per Year

| Fiscal Year Ending | 2-29 2024 | 2-28 2025 | Total Due |
|---|---|---|---|
| **Part-Time Commerical Employees** | | | |
| Welfare | 19.02 | 404.26 | 423.28 |
| Pension | 6.60 | 153.75 | 160.35 |
| Legal & Educational Assistance | 2.10 | 43.05 | 45.15 |
| Totals | 27.72 | 601.06 | 628.78 |
| | | | |
| **Full-Time Commercial Employees** | | | |
| Welfare | 3,296.16 | 3,546.50 | 6,842.66 |
| Pension | 1,143.78 | 1,269.40 | 2,413.18 |
| Legal & Educational Assistance | 363.94 | 363.85 | 727.79 |
| Totals | 4,803.88 | 5,179.75 | 9,983.63 |
| | | | |
| **Total Dollar Amount Due** | | | |
| Welfare | 3,315.18 | 3,950.76 | 7,265.94 |
| Pension | 1,150.38 | 1,423.15 | 2,573.53 |
| Legal & Educational Assistance | 366.04 | 406.90 | 772.94 |
| PILMC | - | - | - |
| Totals | 4,831.60 | 5,780.81 | 10,612.41 |

| | Welfare | Pension | L&E Assistance | PILMC | Total Due |
|---|---|---|---|---|---|
| Total Deficiencies | 7,265.94 | 2,573.53 | 772.94 | 0.00 | 10,612.41 |
| Liquidated Damages | 1,453.19 | 514.71 | 154.59 | 0.00 | 2,122.48 |
| Interest | 1,403.34 | 491.69 | 150.94 | 0.00 | 2,045.97 |
| Payroll Audit Fee | 1,007.40 | 350.40 | 87.60 | 14.60 | 1,460.00 |
| Totals | 11,129.87 | 3,930.33 | 1,166.07 | 14.60 | 16,240.86 |

**Employer Name -** 209 Lake Shore Drive          **Person Contacted -** Felicia Perkins

**Date of Audit -** N/A          **Telephone -** (312) 257-2402

**Audit Period -** March 1, 2023 - February 28, 2025          **Auditor -** Tom Marino

# Teamsters Local Union No. 727 Benefit Funds

**Reconciliation Between Actual and Reported Part-Time Commercial Employees**

### Part-Time Employees With Incorrect Contributions

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2023 | | | | | | 2024 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | - | - | - | - | | - | 2 | - | - | - | 2 |
| | | Total | - | - | - | - | - | - | - | - | 2 | - | - | - | 2 |

| | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | $9.51 | - | - | - | - | - | - | - | - | 19.02 | - | - | - | 19.02 |
| Pension | $3.30 | - | - | - | - | - | - | - | - | 6.60 | - | - | - | 6.60 |
| Legal & Educational Assistance | $1.05 | - | - | - | - | - | - | - | - | 2.10 | - | - | - | 2.10 |
| **Total** | | - | - | - | - | - | - | - | - | 19.02 | - | - | - | 19.02 |

## Totals for Year

| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | - | - | - | - | - | - | - | - | 19.02 | - | - | - | 19.02 |
| Pension | - | - | - | - | - | - | - | - | 6.60 | - | - | - | 6.60 |
| Legal & Educational Assistance | - | - | - | - | - | - | - | - | 2.10 | - | - | - | 2.10 |
| **Total** | - | - | - | - | - | - | - | - | 27.72 | - | - | - | 27.72 |

3

# Teamsters Local Union No. 727 Benefit Funds

**Reconciliation Between Actual and Reported Full-Time Commercial Employees**

### Full-Time Employees Without Contributions

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **2023** | | | | | | | | **2024** | |
| xxx-xx-8573 | Woodson, Edward L. | | - | - | - | 1.00 | 1.00 | - | - | - | - | - | - | - | 2.00 |
| | | Total | - | - | - | 1.00 | 1.00 | - | - | - | - | - | - | - | 2.00 |

| | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | - | - | - | 1 | 1 | - | - | - | - | - | - | - | 2 |
| Health & Welfare | $1,648.08 | - | - | - | 1,648.08 | 1,648.08 | - | - | - | - | - | - | - | 3,296.16 |
| Pension | $571.89 | - | - | - | 571.89 | 571.89 | - | - | - | - | - | - | - | 1,143.78 |
| Legal & Educational Assistance | $181.97 | - | - | - | 181.97 | 181.97 | - | - | - | - | - | - | - | 363.94 |
| **Total** | | - | - | - | 1,466.11 | 1,466.11 | - | - | - | - | - | - | - | 2,932.22 |

### Totals for Year

| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | - | - | - | 1,648.08 | 1,648.08 | - | - | - | - | - | - | - | 3,296.16 |
| Pension | - | - | - | 571.89 | 571.89 | - | - | - | - | - | - | - | 1,143.78 |
| Legal & Educational Assistance | - | - | - | 181.97 | 181.97 | - | - | - | - | - | - | - | 363.94 |
| **Total** | - | - | - | 2,401.94 | 2,401.94 | - | - | - | - | - | - | - | 4,803.88 |

# Teamsters Local Union No. 727 Benefit Funds

### Reconciliation Between Actual and Reported Part-Time Commercial Employees

**Part-Time Employees With Incorrect Contributions**

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2024 | | | | | | | | | | 2025 | | |
| N/A | 209 Lake Shore Drive | | - | - | | - | - | - | - | - | - | - | - | 29 | 29 |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | | - | - | - | - | - | - | 12 | - | - | 12 |
| | Total | | - | - | - | - | - | - | - | - | - | 12 | - | 29 | 41 |

Note: The deficiency noted above for 209 Lake Shore Drive is the result of the employer not reporting sufficient hours to staff the garage during the hours of operations.

| | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | $9.86 | - | - | - | - | - | - | - | - | - | 118.32 | - | 285.94 | 404.26 |
| Pension | $3.75 | - | - | - | - | - | - | - | - | - | 45.00 | - | 108.75 | 153.75 |
| Legal & Educational Assistance | $1.05 | - | - | - | - | - | - | - | - | - | 12.60 | - | 30.45 | 43.05 |
| Total | | - | - | - | - | - | - | - | - | - | 118.32 | - | 285.94 | 404.26 |

## Totals for Year

| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | - | - | - | - | - | - | - | - | - | 118.32 | - | 285.94 | 404.26 |
| Pension | - | - | - | - | - | - | - | - | - | 45.00 | - | 108.75 | 153.75 |
| Legal & Educational Assistance | - | - | - | - | - | - | - | - | - | 12.60 | - | 30.45 | 43.05 |
| Total | - | - | - | - | - | - | - | - | - | 175.92 | - | 425.14 | 601.06 |

# Teamsters Local Union No. 727 Benefit Funds
## Reconciliation Between Actual and Reported Full-Time Commercial Employees

### Full-Time Employees With Part-Time Contributions to Welfare

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2024 | | | | | | 2025 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | 1,114.76 | - | 1,114.76 | 922.56 | 922.56 | 922.56 | - | - | - | - | 4,997.20 |
| | Total | | - | - | 1,114.76 | - | 1,114.76 | 922.56 | 922.56 | 922.56 | - | - | - | - | 4,997.20 |

Note: Amount Due = Full-TIme Rate - Amount Contributed

| | Rate | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | | - | - | 1 | - | 1 | 1 | 1 | 1 | - | - | - | - | 5 |
| Welfare Due | $1,708.74 | | - | - | 1,708.74 | - | 1,708.74 | 1,708.74 | 1,708.74 | 1,708.74 | - | - | - | - | 8,543.70 |
| Less Welfare Due | | | - | - | 1,114.76 | - | 1,114.76 | 922.56 | 922.56 | 922.56 | - | - | - | - | 4,997.20 |
| **Total** | | | - | - | 593.98 | - | 593.98 | 786.18 | 786.18 | 786.18 | - | - | - | - | 3,546.50 |

### Full-Time Employees With Part-Time Contributions to Pension

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2024 | | | | | | 2025 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | 471.60 | - | 471.60 | 345.60 | 345.60 | 345.60 | - | - | - | - | 1,980.00 |
| | Total | | - | - | 471.60 | - | 471.60 | 345.60 | 345.60 | 345.60 | - | - | - | - | 1,980.00 |

Note: Amount Due = Full-TIme Rate - Amount Contributed

| | Rate | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | | - | - | 1 | - | 1 | 1 | 1 | 1 | - | - | - | - | 5 |
| FT Pension Rate | $649.88 | | - | - | 649.88 | - | 649.88 | 649.88 | 649.88 | 649.88 | - | - | - | - | 3,249.40 |
| Less Pension Due | | | - | - | 471.60 | - | 471.60 | 345.60 | 345.60 | 345.60 | - | - | - | - | 1,980.00 |
| **Total** | | | - | - | 178.28 | - | 178.28 | 304.28 | 304.28 | 304.28 | - | - | - | - | 1,269.40 |

### Full-Time Employees With Part-Time Contributions to L/E

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2024 | | | | | | 2025 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | 121.80 | - | 121.80 | 100.80 | 100.80 | 100.80 | - | - | - | - | 546.00 |
| | Total | | - | - | 121.80 | - | 121.80 | 100.80 | 100.80 | 100.80 | - | - | - | - | 546.00 |

Note: Amount Due = Full-TIme Rate - Amount Contributed

| | Rate | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | | - | - | 1 | - | 1 | 1 | 1 | 1 | - | - | - | - | 5 |
| FT L/E Rate | $181.97 | | - | - | 181.97 | - | 181.97 | 181.97 | 181.97 | 181.97 | - | - | - | - | 909.85 |
| Less L/E Due | | | - | - | 121.80 | - | 121.80 | 100.80 | 100.80 | 100.80 | - | - | - | - | 546.00 |
| **Total** | | | - | - | 60.17 | - | 60.17 | 81.17 | 81.17 | 81.17 | - | - | - | - | 363.85 |

## Totals for Year

| | | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | | | - | - | 593.98 | - | 593.98 | 786.18 | 786.18 | 786.18 | - | - | - | - | 3,546.50 |
| Pension | | | - | - | 178.28 | - | 178.28 | 304.28 | 304.28 | 304.28 | - | - | - | - | 1,269.40 |
| Legal & Educational Assistance | | | - | - | 60.17 | - | 60.17 | 81.17 | 81.17 | 81.17 | - | - | - | - | 363.85 |
| **Total** | | | - | - | 832.43 | - | 832.43 | 1,171.63 | 1,171.63 | 1,171.63 | - | - | - | - | 5,179.75 |

9

# Teamsters Local Union No. 727 Benefit Funds

### Reconciliation Between Actual and Reported Contributions - PILMC

| | Rate | 2023 Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2024 Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total # of Employees Working | | 6 | 6 | 6 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 67 |
| Total # of Employees Contributed | | 6 | 6 | 6 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 67 |
| Total # of Employees Owed | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Contributions Due | $4.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Rate | 2024 Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2025 Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total # of Employees Working | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 4 | 70 |
| Total # of Employees Contributed | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 4 | 70 |
| Total # of Employees Owed | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Contributions Due | $4.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

8

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - HEALTH & WELFARE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 1648.08 | 9.25% | 12.70 | 1660.78 |
| Jul | 1660.78 | 1648.08 | 9.25% | 25.51 | 3334.37 |
| Aug | 3334.37 | 0.00 | 9.50% | 26.40 | 3360.77 |
| Sep | 3360.77 | 0.00 | 9.50% | 26.61 | 3387.37 |
| Oct | 3387.37 | 0.00 | 9.50% | 26.82 | 3414.19 |
| Nov | 3414.19 | 19.02 | 9.50% | 27.18 | 3460.39 |
| Dec | 3460.39 | 0.00 | 9.50% | 27.39 | 3487.78 |
| Jan | 3487.78 | 0.00 | 9.50% | 27.61 | 3515.40 |
| Feb | 3515.40 | 0.00 | 9.50% | 27.83 | 3543.23 |
| Total | | 3315.18 | | 228.05 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 3543.23 |
| Mar | 3543.23 | 0.00 | 9.50% | 28.05 | 3571.28 |
| Apr | 3571.28 | 0.00 | 9.50% | 28.27 | 3599.55 |
| May | 3599.55 | 593.98 | 9.50% | 33.20 | 4226.73 |
| Jun | 4226.73 | 0.00 | 9.50% | 33.46 | 4260.19 |
| Jul | 4260.19 | 593.98 | 9.50% | 38.43 | 4892.60 |
| Aug | 4892.60 | 786.18 | 9.50% | 44.96 | 5723.74 |
| Sep | 5723.74 | 786.18 | 9.50% | 51.54 | 6561.45 |
| Oct | 6561.45 | 786.18 | 9.00% | 55.11 | 7402.74 |
| Nov | 7402.74 | 0.00 | 9.00% | 55.52 | 7458.26 |
| Dec | 7458.26 | 118.32 | 8.75% | 55.25 | 7631.83 |
| Jan | 7631.83 | 0.00 | 8.50% | 54.06 | 7685.88 |
| Feb | 7685.88 | 285.94 | 8.50% | 56.47 | 8028.29 |
| Total | | 3950.76 | | 534.31 | |

9

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - HEALTH & WELFARE FUND

EMPLOYER:    209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 8028.29 |
| Mar | 8028.29 | 0.00 | 8.50% | 56.87 | 8085.16 |
| Apr | 8085.16 | 0.00 | 8.50% | 57.27 | 8142.43 |
| May | 8142.43 | 0.00 | 8.50% | 57.68 | 8200.10 |
| Jun | 8200.10 | 0.00 | 8.50% | 58.08 | 8258.19 |
| Jul | 8258.19 | 0.00 | 8.50% | 58.50 | 8316.68 |
| Aug | 8316.68 | 0.00 | 8.50% | 58.91 | 8375.59 |
| Sep | 8375.59 | 0.00 | 8.50% | 59.33 | 8434.92 |
| Oct | 8434.92 | 0.00 | 8.25% | 57.99 | 8492.91 |
| Nov | 8492.91 | 0.00 | 8.25% | 58.39 | 8551.30 |
| Dec | 8551.30 | 0.00 | 8.25% | 58.79 | 8610.09 |
| Jan | 8610.09 | 0.00 | 8.25% | 59.19 | 8669.28 |
| Feb | 8669.28 | 0.00 | 0.00% | 0.00 | 8669.28 |
| Total | | 0.00 | | 640.99 | |

| Totals | | 7265.94 | | 1403.34 | |

10

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - PENSION FUND

EMPLOYER:  209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 571.89 | 9.25% | 4.41 | 576.30 |
| Jul | 576.30 | 571.89 | 9.25% | 8.85 | 1157.04 |
| Aug | 1157.04 | 0.00 | 9.50% | 9.16 | 1166.20 |
| Sep | 1166.20 | 0.00 | 9.50% | 9.23 | 1175.43 |
| Oct | 1175.43 | 0.00 | 9.50% | 9.31 | 1184.74 |
| Nov | 1184.74 | 6.60 | 9.50% | 9.43 | 1200.77 |
| Dec | 1200.77 | 0.00 | 9.50% | 9.51 | 1210.27 |
| Jan | 1210.27 | 0.00 | 9.50% | 9.58 | 1219.86 |
| Feb | 1219.86 | 0.00 | 9.50% | 9.66 | 1229.51 |
| Total | | 1150.38 | | 79.13 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 1229.51 |
| Mar | 1229.51 | 0.00 | 9.50% | 9.73 | 1239.25 |
| Apr | 1239.25 | 0.00 | 9.50% | 9.81 | 1249.06 |
| May | 1249.06 | 178.28 | 9.50% | 11.30 | 1438.64 |
| Jun | 1438.64 | 0.00 | 9.50% | 11.39 | 1450.03 |
| Jul | 1450.03 | 178.28 | 9.50% | 12.89 | 1641.20 |
| Aug | 1641.20 | 304.28 | 9.50% | 15.40 | 1960.88 |
| Sep | 1960.88 | 304.28 | 9.50% | 17.93 | 2283.09 |
| Oct | 2283.09 | 304.28 | 9.00% | 19.41 | 2606.78 |
| Nov | 2606.78 | 0.00 | 9.00% | 19.55 | 2626.33 |
| Dec | 2626.33 | 45.00 | 8.75% | 19.48 | 2690.81 |
| Jan | 2690.81 | 0.00 | 8.50% | 19.06 | 2709.87 |
| Feb | 2709.87 | 108.75 | 8.50% | 19.97 | 2838.58 |
| Total | | 1423.15 | | 185.92 | |

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - PENSION FUND

EMPLOYER:      209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/29/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 2838.58 |
| Mar | 2838.58 | 0.00 | 8.50% | 20.11 | 2858.69 |
| Apr | 2858.69 | 0.00 | 8.50% | 20.25 | 2878.94 |
| May | 2878.94 | 0.00 | 8.50% | 20.39 | 2899.33 |
| Jun | 2899.33 | 0.00 | 8.50% | 20.54 | 2919.87 |
| Jul | 2919.87 | 0.00 | 8.50% | 20.68 | 2940.55 |
| Aug | 2940.55 | 0.00 | 8.50% | 20.83 | 2961.38 |
| Sep | 2961.38 | 0.00 | 8.50% | 20.98 | 2982.35 |
| Oct | 2982.35 | 0.00 | 8.25% | 20.50 | 3002.86 |
| Nov | 3002.86 | 0.00 | 8.25% | 20.64 | 3023.50 |
| Dec | 3023.50 | 0.00 | 8.25% | 20.79 | 3044.29 |
| Jan | 3044.29 | 0.00 | 8.25% | 20.93 | 3065.22 |
| Feb | 3065.22 | 0.00 | 0.00% | 0.00 | 3065.22 |
| Total | | 0.00 | | 226.64 | |

| | | | | | |
|---|---|---|---|---|---|
| Totals | | 2573.53 | | 491.69 | |

12

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - LEGAL AND EDUCATIONAL ASSISTANCE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 181.97 | 9.25% | 1.40 | 183.37 |
| Jul | 183.37 | 181.97 | 9.25% | 2.82 | 368.16 |
| Aug | 368.16 | 0.00 | 9.50% | 2.91 | 371.07 |
| Sep | 371.07 | 0.00 | 9.50% | 2.94 | 374.01 |
| Oct | 374.01 | 0.00 | 9.50% | 2.96 | 376.97 |
| Nov | 376.97 | 2.10 | 9.50% | 3.00 | 382.07 |
| Dec | 382.07 | 0.00 | 9.50% | 3.02 | 385.10 |
| Jan | 385.10 | 0.00 | 9.50% | 3.05 | 388.15 |
| Feb | 388.15 | 0.00 | 9.50% | 3.07 | 391.22 |
| Total | | 366.04 | | 25.18 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 391.22 |
| Mar | 391.22 | 0.00 | 9.50% | 3.10 | 394.32 |
| Apr | 394.32 | 0.00 | 9.50% | 3.12 | 397.44 |
| May | 397.44 | 60.17 | 9.50% | 3.62 | 461.23 |
| Jun | 461.23 | 0.00 | 9.50% | 3.65 | 464.88 |
| Jul | 464.88 | 60.17 | 9.50% | 4.16 | 529.21 |
| Aug | 529.21 | 81.17 | 9.50% | 4.83 | 615.21 |
| Sep | 615.21 | 81.17 | 9.50% | 5.51 | 701.89 |
| Oct | 701.89 | 81.17 | 9.00% | 5.87 | 788.94 |
| Nov | 788.94 | 0.00 | 9.00% | 5.92 | 794.85 |
| Dec | 794.85 | 12.60 | 8.75% | 5.89 | 813.34 |
| Jan | 813.34 | 0.00 | 8.50% | 5.76 | 819.10 |
| Feb | 819.10 | 30.45 | 8.50% | 6.02 | 855.57 |
| Total | | 406.90 | | 57.45 | |

13

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - LEGAL AND EDUCATIONAL ASSISTANCE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/29/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 855.57 |
| Mar | 855.57 | 0.00 | 8.50% | 6.06 | 861.63 |
| Apr | 861.63 | 0.00 | 8.50% | 6.10 | 867.73 |
| May | 867.73 | 0.00 | 8.50% | 6.15 | 873.88 |
| Jun | 873.88 | 0.00 | 8.50% | 6.19 | 880.07 |
| Jul | 880.07 | 0.00 | 8.50% | 6.23 | 886.30 |
| Aug | 886.30 | 0.00 | 8.50% | 6.28 | 892.58 |
| Sep | 892.58 | 0.00 | 8.50% | 6.32 | 898.90 |
| Oct | 898.90 | 0.00 | 8.25% | 6.18 | 905.08 |
| Nov | 905.08 | 0.00 | 8.25% | 6.22 | 911.31 |
| Dec | 911.31 | 0.00 | 8.25% | 6.27 | 917.57 |
| Jan | 917.57 | 0.00 | 8.25% | 6.31 | 923.88 |
| Feb | 923.88 | 0.00 | 0.00% | 0.00 | 923.88 |
| Total | | 0.00 | | 68.31 | |

| Totals | | 772.94 | | 150.94 | |

# Exhibit H



April 30, 2026

**SENT VIA CERTIFIED MAIL**

Felicia Perkins
Property Manager
209 East Lakeshore Drive Corp.
209 E. Lakeshore Dr.
Chicago, Illinois 60611

King Harris
President
209 East Lakeshore Drive Corp.
209 E. Lakeshore Dr.
Chicago, Illinois 60611

**Re:    Teamsters Local Union No. 727 Benefit Funds Audit of 209 East Lakeshore Drive Corp.**

Ms. Perkins and Mr. Harris:

This law firm serves as collection counsel for the Teamsters Local Union No. 727 Health and Welfare Fund, the Teamsters Local Union No. 727 Legal and Educational Assistance Fund, the Teamsters Local Union No. 727 Pension Fund, and the Parking Industry Labor Management Committee (collectively "Funds").

As you know, 209 East Lakeshore Drive Corp. ("209 LSD Corp.") is a member of the Apartment Building Owners and Managers Association ("ABOMA") and is bound to a Collective Bargaining Agreement ("CBA") with a term of November 1, 2021 to October 31, 2026 with the International Brotherhood of Teamsters, Local Union No. 727.  Under the terms of the CBA, 209 LSD Corp. is obligated to make contributions to the Funds on behalf of certain individuals whose employment is covered by the CBA. A copy of the CBA is attached for your reference.

The Funds conducted a compliance audit of 209 LSD Corp.'s payroll records to determine contribution compliance under the terms of the CBA. The audit covered the period from March 1, 2023 to February 28, 2025 (the "Audit"). The Audit revealed that 209 LSD Corp. was deficient in its contributions to the Funds during that period of time. Also, pursuant to the Funds' respective Trust Agreements and the Funds' Collection Policy, and Fund's Audit Policy, 209 LSD Corp. is required to pay interest and liquidated damages on the total amount due plus the costs of the payroll audit itself.

Additional interest has accrued since completion of the Audit. As calculated through April 2026, 209 LSD Corp. owes the Funds **$16,475.97**[1]. This amount includes the audit deficiency, interest, liquidated damages, and audit fees.  A copy of the Audit Report and additional interest calculations are enclosed for your reference.

The Funds' Board of Trustees is required, as a matter of law, to promptly collect all monies due and owing to the Funds.  A review of the Funds' records reveals that all administrative attempts

---

[1] Figures are calculated in good faith, subject to adjustment upon discovery or re-evaluation of underlying circumstances.

by the Funds to secure an amicable resolution of the Audit have proven unsuccessful. As a result, these deficiencies have been forwarded to our office to pursue appropriate legal remedies to obtain payment.

**This letter constitutes a formal and final demand by the Funds for 209 LSD Corp.'s prompt submission of all amounts due. 209 LSD Corp.'s failure to comply with this demand within thirty (30) days from the date of this letter may result in the initiation of appropriate legal proceedings in federal court without further notice.**

In the event litigation becomes necessary, 209 LSD Corp.'s liability will substantially increase. Applicable federal law provides not only for the mandatory award of statutory liquidated damages and interest, but also reimbursement to the Funds for all attorneys' fees and costs incurred in collection matters. *See* Employee Retirement Income and Security Act, as amended ("ERISA"), at 29 U.S.C. § 1132(g).

Should you have any questions, please do not hesitate to contact me at (312) 818-6700 or via email at jmagna@ctmlegalgroup.com. Thank you for your prompt attention to this matter.

Very truly yours,

Jonathan C. Magna
Attorney At Law

*Enclosures*

*cc Via Email*
*Bobby Laino, Fund Manager*
*Zach Frankenbach, Assistant Fund Manager*
*James Beall, Willig Williams and Davidson, Counsel to the Funds*
*Scott Browdy, CTM Legal Group, Counsel to the Funds*

2

# TEAMSTERS LOCAL UNION NO. 727



## ABOMA

## NOVEMBER 1, 2021 – OCTOBER 31, 2026

## ARTICLES OF AGREEMENT

**AGREEMENT made and entered into by and between Apartment Building Owners and Managers Association** (hereinafter referred to as the "Employer" or "ABOMA"), and AUTO LIVERY CHAUFFEURS, EMBALMERS, FUNERAL DIRECTORS, APPRENTICES, AMBULANCE DRIVERS AND HELPERS, TAXICAB DRIVERS, MISCELLANEOUS GARAGE EMPLOYEES, CAR WASHERS, GREASERS, POLISHERS AND WASH RACK ATTENDANTS UNION, MOTION PICTURE, THEATRICAL, EXPOSITION, CONVENTION AND TRADE SHOW EMPLOYEES, PHARMACISTS, BUS DRIVERS, PARKING LOT ATTENDANTS, AND HIKERS, HOTEL INDUSTRY AND RACETRACK INDUSTRY EMPLOYEES NEWSPAPER MAGAZINE, PERIODICAL SALESMEN, DRIVERS DIVISION MEN DISTRICT MANAGERS CHECKERS VENDORS AND HANDLERS, AND ELECTRONIC MEDIA WORKERS, CHICAGO AND VICINITY, ILLINOIS LOCAL 727, an affiliate of the I.B. of T. (hereinafter referred to as the "Union"). It is understood that this Agreement also applies to Apartment Building Owners and Managers Association ("ABOMA") and is made and entered into by ABOMA on behalf of such of its member buildings as are listed on Schedule A which ABOMA has presented to the Union and that each of the members of ABOMA as now are or may hereafter become parties hereto is the Employer.

## ARTICLE 1
## RECOGNITION

1.1    It is agreed that the Union shall be the sole and exclusive bargaining agent for all employees of the Employer, including, but not limited to: Cashiers, hikers, attendants, porters, maintenance men/custodians, drive men, washers, collectors, customer service representatives (excluding those who do sales and/or marketing), drivers, dispatchers, bellmen, doormen and supervisors who perform bargaining unit work, but excluding clerical employees, guards, professional employees and supervisors as defined in the National Labor Relations Act, who do not perform bargaining unit work.

1.2    The Employer agrees not to discriminate in any way against any members of the Union.

1.3    The Employer shall assign the work covered under this Agreement to employees covered by this Agreement as described in Article 1, Section 1.1 of this Agreement. Non-bargaining unit employees, including supervisors, shall not regularly perform bargaining unit work normally assigned to employees in job classifications covered by this Agreement; provided, however, that they may perform such work in emergencies or in the instruction and/or training of employees. Nothing in this Article shall be construed to limit the Employer's ability to subcontract out maintenance and construction projects.

1.4    Should a new classification arise, the parties agree to meet and negotiate terms and conditions of employment for such new classification.

## ARTICLE 2
## UNION SECURITY

2.1    It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the date on which this Agreement is signed shall remain members in good standing, or pay fees in lieu thereof, and those who are not members on the date on which this Agreement is signed shall, on the thirty-first day following the date on which this Agreement is signed, become and remain members in good standing in the Union, or pay fees in lieu thereof. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after the date on which the Agreement is signed shall,

on the thirty-first day following the beginning of such employment, become and remain members in the Union, or pay fees in lieu thereof.

2.2 When specifically authorized in writing by each employee, the Employer will deduct, from the first paycheck of each month, dues and/or fees owing the Union and forward them to the Secretary-Treasurer of the Union, not later than ten (10) days after each monthly deduction. Such authorization, once given, shall be irrevocable for a period of not less than one (1) year or the term of this Agreement whichever occurs sooner. Employers who do not submit company-wide dues pursuant to this paragraph by the end of the month in which deducted, shall receive a written notice (email) of the delinquency . Failure to pay the dues within fourteen(14) calendar days of written notice (email) to an individual designated from time to time by the Company shall result in a penalty of the greater of: (i) 1.75% of the amount of the monthly dues for each month which the dues are not submitted, or (ii) five hundred dollars ($500.00) per month for each month which the dues are not submitted. Disputes involving the obligation to withhold dues for an individual or a group of individuals shall not be subject to a penalty. If an Employer is six months or more in arrears it shall pay the costs of collection.

2.3 Upon hiring an employee or upon the request of the Union, it shall be the responsibility of the Employer to obtain from the employee a completed Application and Authorization form provided by the Union and an Enrollment Card provided by the Teamsters Local Union No. 727 Benefit Funds. The Employer will forward the same to the Union by the employee's thirty first (31) day of employment or within thirty (30) days after a request by the Union is made.

2.4 The Union agrees to further the interests of the Employer to the best of its ability.

2.5 The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to Teamsters Local 727 Political Action Committee (PAC). The PAC shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from each paycheck of every month. The Employer shall transmit such deductions to the Union on a monthly basis, not later than ten (10) days after the last deduction of the month.

## ARTICLE 3
## UNIFORMS

3.1 Should an employee be required to wear a uniform, the Employer agrees to furnish said uniforms and replace worn-out or damaged uniforms. The Employer shall supply such employees with uniforms that, in the opinion of the Employer, are reasonable for the season in light of the specific requirements at each location.

## ARTICLE 4
## SENIORITY

4.1 Seniority shall mean length of continuous service from an employee's first day of continuous employment in the industry as a member of the Union. Separate seniority lists shall be maintained for full-time and part-time employees by classification as provided below and further separated by residential and commercial locations. Employees (voluntarily) changing from one seniority list to the other shall go to the bottom of that seniority list but retain their original seniority date.

The Employer shall keep and make copies available to a representative of the Union accurate and up-to-date separate seniority lists, showing employees' names and first date of employment. During the first week of September of each calendar year, the Employer will post, or distribute a seniority list to all bargaining unit employees via an electronic system, which shall remain posted

during the month of September (if posted). Employees will have thirty (30) calendar days to grieve an incorrect seniority date measured from the date of distribution or September 30th if posted. The posted seniority list (as revised due to protests) shall be conclusive of an employee's seniority date until reposted.

**Seniority is to prevail at all times, except that seniority shall not apply to bargaining unit supervisors nor to the selection of bargaining unit supervisors. Employees who are promoted to bargaining unit supervisor shall continue to accrue seniority on the seniority list from which promoted. Employees who were previously classified as bargaining unit supervisors shall be grandfathered as bargaining unit supervisors even if not currently serving in that role. The total number of employees who are actively employed as bargaining unit supervisors shall not exceed thirty six percent (36%) of the total employees actively employed by the Employer under this Agreement.

All seniority shall be considered on a classification basis for purposes of layoffs with four classifications: (1) hikers; (2) porters; (3) shuttle drivers, and (4) all other employees. In case of layoffs, the last employee hired in a particular classification is to be the first laid off in respect to the separately maintained seniority lists. An employee laid off from one seniority list shall not use his or her seniority to replace an employee on the other seniority list. Seniority shall also apply to recalls, in that the last employee laid off in a particular classification, shall be the first to be recalled in respect to separately maintained seniority lists. In the event of a lay off or a recall of a bargaining unit supervisor, the bargaining unit supervisor shall be placed on the seniority list from which promoted for purposes of layoff or recall.

In the event of a layoff, a senior employee who does not possess a qualification, certification, or license, required by a client shall not be entitled to bump the junior employee holding that qualification, certification, or license, unless the training is completed or the certification is obtained within thirty days or the next available training session. The Employee shall be placed on layoff until the training is completed or certification obtained. When recalling employees, employees who do not possess a qualification, certification, or license required for a position shall be by-passed, but shall retain their position on the recall list. The Employer shall make its best effort to provide or arrange for the certification or training.

The Employer may mandate employees be vaccinated as a condition of being scheduled to work (subject to medical or good faith religious exemptions), in which case upon proof of vaccination the Employer shall pay the employee four (4) hours of pay per shot including a booster which shall not constitute hours worked. Employees who refuse to be vaccinated shall be laid off. A request for pay must be submitted with fourteen calendar days of vaccination.

4.2    Seniority shall be broken for any one or more of the following reasons:

(a)    Voluntarily quitting.

(b)    Discharge for cause.

(c)    Absence from work for three (3) consecutive working days without notifying the Employer unless prevented from doing so through no fault of the employee.

(d)    Failure to return to work after expiration of leave of absence unless due to circumstances beyond the control of the employee or unless excused by the Employer.

(e)    Failure to return to work within seventy-two (72) hours following recall after layoff, which notice will be made by the Employer by email or text message read receipt (if possible) or both to the employee's last known address according to the records of the Employer. The Employer must also make a telephone call to contact the employee being recalled.

(f)    Is laid off for a continuous period of more than twelve months (12) months; however if laid off between March 1, 2020 and August 31, 2021 the employee shall have recall rights until April 15, 2022.

(g)    Engages in other employment while on authorized leave of absence without the consent of the Employer.

4.3    The first one hundred twenty (120) days of employment (exclusive of any leave periods) shall constitute a probationary period during which time an employee may be discharged at the sole discretion of the Employer without resort to the grievance procedure. After one hundred twenty (120) days of employment (exclusive of any leave periods), an employee's seniority date shall date from his or her first day of continuous employment in the industry as a member of the Union.

## ARTICLE 5
## DISCIPLINE AND DISCHARGE

5.1    No employee who has completed his or her probationary period will be discharged or disciplined except for just cause, adhering to the principles of progressive discipline as outlined in Article 31, Section 31.3 and 31.4.

5.2    The Union shall have the right to investigate the reasons for any discharge or discipline of a non-probationary employee and to protest the same through the grievance and arbitration procedure. The determination of whether an employee has completed his/her probationary period will be subject to the grievance and arbitration procedure.

5.3    An employee must be notified as soon as possible of any disciplinary action.

5.4    Warning notices (including suspensions) shall not remain in effect, nor be relied upon for the next step of progressive discipline, for more than one (1) year from date of said warning notice.

## ARTICLE 6
## GRIEVANCE PROCEDURE

6.1    Any complaint, grievance, or dispute arising under or concerning the meaning, application, or compliance with the terms of this Agreement shall first be taken up for adjustment by a representative of the Employer and a representative of the Union. The Employer and the Union shall meet at a time and place mutually agreed upon after the request by either party for such a meeting.

6.2    The following Grievance Procedure shall be followed in resolving said disputes:

STEP ONE: Grievant will meet with Union Representative and Facility Manager as outlined above..

STEP TWO: In failing to have the dispute resolved in STEP ONE, grievant will meet with a representative of the Union and a representative of the Employer at a mutually convenient time and place to resolve the grievance.

If the parties cannot agree, the dispute may then be referred by the Union to arbitration as provided for in this Section. Demand for arbitration shall be made within forty-five (45) calendar days from the date of the Step 2 grievance meeting unless the parties mutually agree to extend said timeline.

In cases wherein the Employer is not an ABOMA member, the parties may agree to an expedited Grievance Panel in lieu of FMCS arbitration provided below. Such Grievance Panel shall be selected within ten (10) business days from the receipt of the written statement of grievance, and shall consist of one (1) person selected by the Chicago Parking Association who is not a representative of the Employer against whom the grievance was filed, and one (1) person selected by the Union, and shall endeavor to settle the dispute. The Grievance Panel shall meet within ten (10) business days after being selected and shall render their decision within ten (10) business days after the meeting. Unanimous decisions by the Grievance Panel shall be final and binding on the parties, and there shall be no further recourse to Arbitration procedures or court litigation. If said Grievance Panel fails to resolve the dispute within thirty (30) business days after it is referred to the Grievance Panel, the dispute may be submitted by the Union to arbitration as outlined below in Section 6.3. The fees and expenses of the Grievance Panel shall be divided equally between the Union and the Employer.

In the case of members of ABOMA only, the dispute shall be referred to a "Board of Arbitration". A written statement of the grievance to be arbitrated shall be furnished by the Union to the Employer and ABOMA setting forth in detail the grievance requiring arbitration. The "Board of Arbitration" shall be selected within ten (10) business days from the receipt of the written statement of grievance, and shall consist of one (1) person selected by ABOMA and one (1) person selected by the Union, and shall endeavor to settle the dispute . The "Board of Arbitration" shall meet within ten (10) business days after being selected and shall render their decision within ten (10) business days after the meeting. If said "Board of Arbitration" fails to resolve the dispute within thirty (30) business days after it is referred to said Board, the matter may be submitted by the Union to arbitration as outlined below. The fees and expenses of the "Board of Arbitration" shall be divided equally between the Union and the Employer. Decisions decided under this subparagraph shall have no precedential effect and shall not be cited in arbitrations involving an Employer who is a member of the Chicago Parking Association.

6.3 Arbitration shall be by an arbitrator selected from a panel supplied by the Federal Mediation and Conciliation Service (FMCS), and his or her decision shall be final and binding upon both parties. The Union shall request a panel of seven (7) arbitrators who shall be members of the National Academy of Arbitrators ("NAA") located within the Chicagoland geographical region. The Employer shall have the first strike and the parties shall then alternate striking arbitrator names until one is chosen. Notwithstanding any past practices, the Arbitrator shall have no authority to alter, delete, amend, or modify the terms of this Agreement. For Grievances filed after ratification of this Agreement only the arbitration hearing must be scheduled and occur within eighteen months of the Step I meeting or the Employer's liability will be tolled until the hearing is conducted. The tolling shall not apply if the employer cancels the hearing or agrees to a postponement of the hearing.

The Union and the Employer will each be responsible for one-half of the cost for such arbitration proceeding. All other expenses of the arbitration shall be assumed by the party incurring them. The arbitration hearing will not be transcribed except when the arbitrator may deem necessary. At the conclusion of the hearing, the arbitrator will issue a decision with any award in writing.

6

6.4 A monetary grievance must be filed in writing within thirty (30) days after knowledge of the alleged violation or it shall be waived.

6.5 A non-monetary (policy) grievance must be filed in writing within ten (10) days after knowledge of the alleged violation or it shall be waived.

## ARTICLE 7
## STRIKES AND LOCKOUTS

7.1 The Union agrees that there shall be no strike, slow-down, or cessation of work and the Employer agrees there shall be no lock-out during the time of this Agreement.

7.2 Should there be an unauthorized strike, slow-down, walk-out, or other unauthorized cessation of work, the Union shall not be liable for damages resulting from such unauthorized acts from its members, and the Union shall undertake every reasonable means to induce the employees to immediately return to their jobs. In the event of an unauthorized strike, slow-down, walk-out, or any unauthorized cessation of work, the Employer shall have the sole and exclusive right to discipline or discharge the employees who participate in such an event.

7.3 No employee covered by this Agreement shall be required to go through a picket line when the picket line is approved by Teamsters' Joint Council No. 25.

## ARTICLE 8 WAGES

8.1 (a) All employees covered by this Agreement shall receive contract anniversary wage increases over and above their present hourly wage rate. The Employer agrees to increase the total package for the compensation to be paid (i) for all hours worked or paid in the form of additional hourly wages (Article 8.1), (ii) additional hourly contributions to the Health & Welfare, Pension and/or Legal & Educational Assistance fund (Article 20) as follows:

Effective November 1, 2021 ..............$1.80 per hour

Effective November 1, 2022 ..............$1.75 per hour

Effective November 1, 2023 ..............$1.65 per hour

Effective November 1, 2024 ..............$1.65 per hour

Effective November 1, 2025 ..............$1.60 per hour

(b) The allocation of the annual increase required in Section 8.1 shall be determined by the Union. The Union shall notify the Employer of its determination of the allocation between Wages (Article 8.1) and additional contributions to the Health & Welfare, Pension and/or Legal & Educational Assistance fund (Article 20) by September 1st of each contract year. The maximum amount that may be allocated to wages as determined by the Union whenever the funding of the Pension Fund falls below 90% of its actuarial fully funded amount shall not exceed $0.10 per hour for each $0.05 per hour to the Pension Fund.

The maximum amount which can be allocated to the Legal & Educational Assistance Fund each year may not exceed $0.15 per hour. The minimum amount that must be allocated to wages during the final year of the contract shall be $0.25 per hour.

7

8.2 Employees who perform work at COMMERCIAL LOCATIONS hired between November 1, 2011 and October 31, 2021 shall receive anniversary increases, if not yet received, of: Year 1 of employment $1.25 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75; Year 5 of employment $1.40 per hour, plus the allocation described in 8.1(a) above.

Employees hired after November 1, 2021 shall be hired at the rate of $16.60 per hour which shall be increased by an anniversary increase of: Year 1 of employment $0.75 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75; Year 5 of employment $0.75 per hour plus the wage allocation from the increase provided in Year 1 in 8.1(a) above.

8.3 Employees who perform work at RESIDENTIAL LOCATIONS hired between November 1, 2011 and October 31, 2021 shall receive anniversary increases, if not yet received, of: Year 1 of employment $1.25 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75 per hour; Year 5 of employment $1.40 per hour, plus the allocation described in 8.1(a) above.

Employees working at a Residential location hired after November 1, 2021 shall be hired at the rate of $17.35 per hour which shall be increased by an anniversary increase: Year 1 of employment $0.75 per hour; Year 2 of employment $0.75 per hour; Year 3 of employment $0.75 per hour; Year 4 of employment $0.75 per hour; Year 5 of employment $0.75 per hour plus the wage allocation from the increase provided in Year 1 in 8.1(a) above.

8.4 In applying the wage scales in 8.2 and 8.3 above, only employees with less than 5 years of service shall automatically receive longevity and contract anniversary increases. The two dollar per hour wage differential shall be maintained between the employees hired before 11/1/2011 and those hired after that date.

8.5 Employees functioning (1) in a cashier's capacity, (2) in primarily self-service parking surface lots, (3) as customer service representatives or (4) in ground transportation shall receive twenty-five cents ($.25) per hour over the above-schedules. If applicable, such employees shall also receive the premium set forth below in Section 8.6.

8.6 Bargaining unit supervisors employed at a residential facility, including all bargaining unit supervisors employed by members of ABOMA, shall receive thirty-six cents ($ .36) per hour over the above residential schedules (Section 8.3 above). If applicable, such employees shall also receive the premium set forth in Section 8.5 above. Employer may remove the premium only if the employee is returned to his or her previous classification at the applicable contractual wage rate as if the employee had never been made a supervisor.

8.7 The Employer agrees for the purpose of determining the wage rate of its employees (see schedules above) to give credit to any employee the amount of continuous days, months, and years of service said employee acquired under collective bargaining agreements with employers bound by Chicago Parking Association Agreements with the Union and said employees shall be paid as set forth above.

8.8 It is understood and agreed that the red-circle provisions in Sections 8.2 and 8.3 and section 27.1 shall incorporate and include any pay increase(s) granted to employees since October 31, 2011 regardless of the reason for the increase.

## ARTICLE 9
## HOLIDAYS

9.1 Regular full-time employees shall receive additional compensation for the nine (9) holidays listed below equal to their normal workday hours but not less than eight (8) hours pay at their regular daily straight-time rate of pay. Those employees who are scheduled and do work on any of these nine (9) holidays will receive their regular daily straight-time rate of pay in addition to time and one-half (1 ½) per hour for all hours actually worked on said nine (9) holidays. To be entitled to holiday pay under this clause, the employee must work for the Employer six (6) months and work his or her scheduled workday before and his or her scheduled workday after said holiday if the employee is scheduled to work. An employee who is scheduled to work on a holiday but fails to report to work shall forfeit his or her right to holiday pay unless his or her absence is due to extenuating circumstances. For the purpose of holiday pay and overtime pay on holidays, the holidays listed below will be celebrated on the calendar days they fall on:

New Year's Day

Martin Luther King, Jr.'s Birthday

Memorial Day

Juneteenth

Independence Day

Labor Day

Thanksgiving Day

Christmas Day

Employee's Birthday

9.2 A holiday for which an employee is paid and during which he or she did not work shall be considered as time actually worked by him or her under the terms of this Agreement. No employee shall receive holiday pay unless he or she has attained six (6) months' seniority with the Employer on or before the date of the holiday.

9.3 Part-time employees, when working on said holidays, shall be entitled to time and one-half (1 ½) per hour for hours worked. All work performed on the employee's sixth (6th) work day of a holiday week shall be paid at the overtime rate.

The additional compensation for each holiday (holiday pay) for part-time employees shall be based upon the average weekly hours scheduled as follows:

Weekly Hours

| Scheduled | Holiday Pay |
| --- | --- |
| Up to 19 hours | 2 hours |
| 20 to 29 hours | 4 hours |
| 30 to 39 hours | 6 hours |

## ARTICLE 10
## MILITARY SERVICE

10.1 Employees who become members of the U.S. Armed Services shall have such rights of reemployment as may be prescribed by the Military Selective Service Law.

## ARTICLE 11
## JURY DUTY

11.1 Employees on the payroll with ninety (90) days or more of service will be reimbursed for any loss of income incurred during the time spent on jury service with a maximum of ten (10) days annually.

## ARTICLE 12
## SICK AND PERSONAL LEAVE

12.1 A full-time employee who has worked for the Employer for six (6) months or longer shall be entitled to ten (10) combined sick and/or personal days per year at the employees normal rate of pay for their normal workday hours but not less than eight (8) hours pay. The paid vaccination time under Section 4.1 above shall not be considered a sick and or personal day if taken. An employee who has received a complete regimen of COVID vaccination shots by October 31, 2021, shall receive a cash stipend of $150.00 upon submitting a copy of the Vaccination cortication card issued by the vaccination site. Employees shall have until November 30, 2021, to submit their vaccination card or shall lose the right to receive this stipend.

12.2 A part-time employee who has worked for the Employer for six (6) months or longer shall be entitled to ten (10) combined sick and/or personal days per year based upon the average weekly hours scheduled as follows:

| Weekly Hours Scheduled | Personal/Sick Leave Pay |
|---|---|
| Up to 19 hours | 2 hours |
| 20 to 29 hours | 4 hours |
| 30 to 39 hours | 6 hours |

12.3 The employee shall give one week's notice to the Employer for days used for personal leave. The employee shall phone a designated phone number and, if no answer, a designated back-up phone number at least two (2) hours before his or her regularly scheduled starting time for days used for sick leave. Sick and personal days shall be non-cumulative.

12.4 Sick and/or personal days shall be earned and taken on a calendar year basis. All employees who have completed six (6) months of employment by December 31st shall receive their full complement of sick and/or personal days on January 1st of each year, to be used by December 31st of each year. All employees who have not completed six (6) months of employment by December 31st shall receive their full complement of sick and/or personal days upon completion of six (6) months of employment, to be used by December 31st of that year. In the event that all of the employee's earned sick and/or personal days are not taken by December 31st, the Employer shall pay the employee the value of said sick and/or personal days. Employees terminated for proven theft shall not be paid out unused personal and/or sick days.

12.5 Employees shall receive an accounting of all their accrued sick and/or personal days, no less frequently than monthly.

12.6 A sick and/or personal day for which an employee is paid and during which he or she did not work shall be considered as time actually worked by him or her under the terms of this Agreement.

12.7 The provisions of this Article are in lieu of the rights and benefits provided by the Cook County Earned Sick Leave Ordinance and the City of Chicago Paid Sick Leave Ordinance. The parties expressly agree that all rights and benefits under the Cook County Earned Sick Leave Ordinance and the City of Chicago Paid Sick Leave Ordinance are hereby waived.

## ARTICLE 13
## FUNERAL LEAVE

13.1 A regular full-time or regular part time employee who loses time from his or her employment due to a death in his or her immediate family shall be entitled to receive his or her regular pay during said absence for four (4) days. Part-time employees will receive up to four (4) days of Funeral leave provided the employee is regularly scheduled at least four (4) days per week. Immediate family members are defined to be father, mother, brother, sister, spouse, child, father-in-law, mother-in-law or grandparents.

13.2 In order to qualify for funeral leave pay, the employee must have worked for the Employer for six (6) months or longer.

13.3 Employees must, upon request from the Employer, furnish satisfactory proof of death and relationship.

13.4 Funeral leave shall only be granted for the purpose of attending the funeral of the deceased, grieving and settling the affairs of the deceased.

## ARTICLE 14
## VACATIONS

14.1 Employees shall receive vacation in accordance with the following schedule:

After one (1) year of employment, one (1) weeks vacation

After two (2) years of employment, two (2) weeks vacation

After five (5) years of employment, three (3) weeks vacation

After ten (10) years of employment, four (4) weeks vacation

After twenty-five (25) years of employment, five (5) weeks vacation

14.2

(a)     A vacation bank shall be established for each employee. The Employer shall deposit the amount of all vacation time that is owed to the employee. In addition, employees shall begin to accrue vacation on a monthly basis in accordance with (b), which accrued vacation time shall be added to the employee's vacation bank.

(b)     Vacations shall be earned on a monthly basis in accordance with the following schedule:

After one (1) year of employment: .417 vacation days per month (equivalent to one (1) weeks vacation):

Beginning with the first month of employment and continuing through the month prior to the month in which the employee completes two (2) years of employment (1st month through 23rd month of employment), employees accrue .417 vacation days per month.

After two (2) years of employment, .834 vacation days per month (equivalent to two (2) weeks vacation):

Beginning with the month in which the employee completes two (2) years of employment and continuing through the month prior to the month in which the employee completes five (5) years of employment (24th month through 59th month of employment), employees accrue .834 vacation days per month.

After five (5) years of employment, 1.25 vacation days per month (equivalent to three (3) weeks vacation):

Beginning with the month in which the employee completes five (5) years of employment and continuing through the month prior to the month in which the employee completes ten (10) years of employment (60th month through 119 month), employees accrue 1.25 vacation days per month.

After ten (10) years of employment, 1.67 vacation days per month (equivalent to four (4) weeks vacation):

Beginning with the month in which the employee completes ten (10) years of employment and continuing through the month prior to the month in which the employee completes twenty-five (25) years of employment (120th month through 299th month), employees accrue 1.67 vacation days per month.

After twenty-five (25) years of employment, 2.084 vacation days per month (equivalent to five (5) weeks vacation):

Beginning with the month in which the employee completes twenty-five (25) years of employment and continuing for each month thereafter (300th month and beyond), employees accrue 2.084 vacation days per month.

(c)     The month in which employment begins and the month in which employment ends shall be considered a full month for purposes of this Section.

(d) Employees shall be entitled to use vacation time immediately after accruing. Vacations shall be taken on a first in (first accrued) first out basis and shall be paid at the rate of pay in effect at the time the vacation is taken.

(e) Every December 1st, each employee shall be given the option of a payout or carry-over of unused vacation days in his or her vacation bank; provided, however, that the carry-over will be limited to accruals in the prior twelve (12) months. Should the employee receive a payout, such employee shall receive the payout on the next scheduled pay period.

(f) Employees shall receive an accounting of all their accrued vacation, no less frequently than monthly.

14.3 Vacation pay for part-time employees shall be prorated in accordance with the above schedule.

14.4 Employees shall be paid their earned vacation pay prior to the time they leave on vacation.

14.5 Preference by seniority shall be given to an employee's choice of vacation period. Employees who take virtually the entirety of their vacation outside the United States of America or Canada shall be entitled to take up to four weeks of vacation consecutively at a time consistent with the Employer's operational and staffing needs.

14.6 Employees shall receive vacation pay on the basis of average hours worked in the previous calendar year. All hours worked or paid for (vacation, personal days, holidays, sick days, funeral leave pay) shall be considered as hours worked in determining compensation. Employees shall also accrue vacation time while on Workers' Compensation.

14.7 Vacation checks shall be issued separately.

14.8 A vacation day for which an employee is paid and during which he or she did not work shall be considered as time actually worked by him or her under the terms of this Agreement.

## ARTICLE 15
## LEAVE OF ABSENCE

15.1 The Employer may, at its sole discretion, grant a personal leave of absence to an employee with seniority provided:

(a) The employee requests the leave, in writing, at least one (1) week in advance of such a leave, unless there was no possibility that the employee had such prior knowledge of the necessity of the leave. Approved leaves shall be in writing with a copy to the Union; and

(b) The leave is for a specified time not to exceed thirty (30) calendar days in duration which may be extended for an additional specified time not to exceed an additional thirty (30) calendar days in duration at the sole discretion of the Employer.

(c) Upon the expiration of an employee's authorized personal leave of absence, said employee shall be reinstated with full seniority to the same or substantially equivalent employment.

15.2 The Employer may implement the Family Medical Leave Act (FMLA) consistent with applicable law, and the provisions of this section. The Employer shall grant family and medical leaves to employees entitled by law to such leaves.

15.3    The Employer shall continue to contribute to the Health and Welfare Fund during FMLA leaves, to the extent required by law.

15.4    In all cases of medical leave, regardless of whether the leave is FMLA leave, the Employer may require employees to submit to medical examinations by a physician chosen by the Employer at the Employer's expense, during the leave and before the employee returns to work.

15.5    Upon expiration of an authorized medical or family or medical leave, an employee shall be reinstated with full seniority to the same or substantially equivalent employment (unless the employee would have been laid off or terminated had the employee not taken a leave). It is understood that employees returning to work from a leave (or any illness or injury) must be able to acceptably perform all essential job functions and may not constitute a threat to safety.

## ARTICLE 16
## HOURS OF WORK

16.1    Full-time employees covered by this Agreement who are called to work shall receive not less than six (6) hours work or its equivalent per day.

16.2    Part-time employees covered by this Agreement who are called to work shall receive not less than four (4) hours work or its equivalent per day.

16.3    There shall be no split shift assignments for employees within a twenty-four (24) hour period covered by this Agreement unless agreed to by the employee and approved by a Business Agent .

16.4    Any regular employee shall forfeit his or her weekly guarantee in that week in which he or she takes off a regularly scheduled workday or any portion thereof on his or her own initiative or when an employee is discharged for cause.  However, an employee before leaving the Employer's premises shall be required to punch out.

16.5    All regular full-time employees covered by this Agreement shall be guaranteed a workweek consisting of forty (40) hours exclusive of one-half (1/2) hour for a lunch period each day. Said workweek shall contain two (2) consecutive days off where possible for the Employer to so operate. The Employer shall discuss the application of this guarantee for the week of the recall in the event a full time employee is recalled on a day other than a Monday. For employees employed at residential locations only, time and one-half (1 ½) shall be paid for all hours worked over eight (8) hours daily. For all employees, time and one- half (1 ½) shall be paid for all hours worked over forty (40) hours in any one (1) week exclusive of the thirty (30) minute lunch period each day. Overtime shall not be paid twice for the same hours worked.

16.6    If an Employer has any employees covered by the Fair Labor Standards Act, overtime shall be paid in accordance with said Act and at least thirty (30) minutes shall be allowed each day without pay for employees' lunch period.

16.7    When feasible, the Employer shall post the employee's schedule at least seven (7) days in advance. The provisions of this Article 16 are in lieu of the rights and benefits provided by the City of Chicago Fair Workweek Ordinance. The Parties expressly agree that all rights and benefits under the City of Chicago Fair Workweek Ordinance are hereby waived.

14

## ARTICLE 17
## LIMITATIONS ON PART TIME EMPLOYEES

17.1   No Employer shall have more than forty-two percent (42%) of total employee covered under this Agreement as part time employees.

## ARTICLE 18
## TRANSFERS

18.1   Transfers may not be made except for good cause subject to recourse through the grievance procedure or by agreement between the Employer and the Union. A transfer made as a consequence of a client's good faith request made in writing shall be for good cause. In emergency situations, however, an employee may be required to work at a different location for one (1) day. In the event an employee is transferred to a new location which requires a drug test the employee will have the option to refuse the drug test and shall be subject to layoff should his seniority warrant layoff. If the employee submits to the drug test and the test is positive, the employee will be subject to the terms and conditions of the drug testing policy.

## ARTICLE 19
## DRIVER'S LICENSE

19.1   All employees shall continuously have and shall exhibit to the Employer upon request an unrestricted State Driver's License if necessary to perform his or her job. Any employee found not to have same in his or her possession will be suspended for up to thirty (30) days until a valid license is presented. After that time, the employee may be subject to termination. The Employer has the right to run MVR checks semi-annually and may terminate/not hire based only upon a lack of valid license.

## ARTICLE 20
## HEALTH AND WELFARE, PENSION AND LEGAL AND EDUCATIONAL ASSISTANCE

20.1   Health and Welfare

(a)   The Employer shall contribute to Teamsters Local Union No. 727 Health and Welfare Fund on account of each regular full-time employee covered by this Agreement the following:

Commencing November 1, 2021 ..........................................$ 1,544.10 per month

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(b)   The Employer shall contribute monthly to Teamsters Local Union No. 727 Health and Welfare Fund on account of each part-time employee covered by this Agreement the following:

Commencing November 1, 2021...........................................$ 8.91 per hour

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(c)   Contributions due hereunder to the Health and Welfare Fund for all employees hired on or after November 1, 2016, shall commence with the month in which their employment begins.

15

20.2    Pension

(a)    The Employer shall contribute to Teamsters Local Union No. 727 Pension fund on account of each regular full-time employee covered by this Agreement the following:

Commencing November 1, 2021 ........................................$.511.24 per month

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(b)    The Employer shall contribute monthly to Teamsters Local Union No. 727 Pension Fund on account of each part-time employee covered by this Agreement the following:

Commencing November 1, 2021 ........................................$ 2.95 per hour

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(c)    Contributions due hereunder to the Pension Fund for all employees shall commence with the month succeeding that month in which employment begins; provided, however, that contributions to the Pension Fund on account of newly hired employees shall commence with their seventh (7th) month of employment. For purposes of this Section, a newly hired employee is defined as an employee hired on or after November 1, 2021 for which no contributions were received by the Pension Fund within the six (6) months prior to hire.

20.3    Legal and Educational Assistance

(a)    The Employer shall contribute to Teamsters Local Union No. 727 Legal and Educational Assistance Fund on account of each regular full-time employee covered by this Agreement the following:

Commencing November 1, 2021 ........................................$ 129.98 per month

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below. The Employer shall contribute monthly to Teamsters Local Union No. 727 Legal and Educational Assistance Fund on account of each part-time employee covered by this Agreement the following:

Commencing November 1, 2021 ........................................$ 0.75 per hour

Such rate shall continue except as adjusted by the Board of Trustees pursuant to the provisions of Article 20, Section 20.4 below.

(b)    Contributions due hereunder to the Legal and Educational Assistance Fund for all employees shall commence with the month in which employment begins.

20.4    The contribution rates payable to the Health and Welfare, Pension and Legal and Educational Assistance Funds pursuant to Sections 20.1, 20.2 and 20.3 above shall be increased as follows:

(a)    It is agreed that the Employer shall contribute additional amounts over and above those required in Sections 20.1(a), 20.2(a) and 20.3(a) to the Health and Welfare, Pension

16

and/or Legal and Educational Assistance Funds, combined, on behalf of each full time employee as follows:

Effective 3/1/2022          $112.64 per month
Effective 3/1/2023............$TBD Per Sec. 8.1
Effective 3/1/2024............$TBD Per Sec. 8.1
Effective 3/1/2025.............$TBD Per Sec. 8.1
Effective 3/1/2026............$TBD Per Sec. 8.1

(b)     The distribution of the additional contributions required in (a) above to the Health and Welfare, Pension, and/or Legal and Educational Assistance Funds shall be left to the decision of the Board of Trustees of the respective Funds.

(c)     It is further agreed that the Employer shall contribute an equivalent additional hourly amount over and above those required in Sections 20.1(b), 20.2(b) and 20.3(b) to the Health and Welfare, Pension and/or Legal and Educational Assistance Funds on behalf of part time employees.

20.5     For the purpose of contributions to the Health and Welfare, Pension and Legal and Educational Assistance Funds only, any part-time employee who works one hundred twenty eight(128) hours or more in a calendar month shall be considered a regular full-time employee and full-time employee contributions will be required for that month. Payments to the Health and Welfare, Pension and Legal and Educational Assistance Funds on behalf of part time employees shall be made at least monthly although the Employer may make the payments on a per payroll basis.

20.6     Part time per hour contributions to the Health and Welfare, Pension and Legal and Educational Assistance Funds are due only up to the amount of the applicable full time contribution.

20.7     No contributions to the Health and Welfare, Pension, and Legal and Educational Assistance, Funds shall be required on behalf of any employee who is on a leave of absence, except as required by law.

20.8     By the execution of this Agreement, each Employer authorizes the Trustees to enter into appropriate trust agreements necessary for the administration of such funds, and hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

20.9     It is also agreed that in the event the Employer is delinquent at the end of a month in the payment of its contributions to the Health and Welfare, Pension or Legal and Educational Assistance Funds created under this Agreement; in accordance with the rules and regulations of the Trustees of such Funds, the employees or their representatives shall have the right to take such action as they deem necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employee for losses resulting therefrom.

20.10    Should the Trustees of the Health and Welfare, Pension or Legal and Educational Assistance Funds audit the records of the Employer, such audit shall not exceed three (3) years from the date of notice of audit.

17

The payment of accrued and unused paid time off (e.g. vacation, personal and or sick days etc.) to an employee who is separated from the Employer regardless of reason (quit, retirement, termination, lay off etc.) regardless of the month in which paid, shall not trigger the obligation to make a contribution to the Pension Fund

## ARTICLE 21
## MANAGEMENT RIGHTS

21.1 All rights, powers, and authority customarily exercised by the Employer are retained and reserved by the Employer except as otherwise specifically modified by express provisions of this Agreement.

## ARTICLE 22
## DOCTORS' EXAMINATIONS

22.1 All doctors' examinations requested by the Employer will be paid for by the Employer. In the event the employment of the employee is terminated on the basis of the report of the Employer's doctor, or in the event of questionable status of employee's health upon being rehired due to a layoff, the Union may, at its own cost, have such report checked by a doctor of its election.

## ARTICLE 23
## TIME RECORDS

23.1 The Employer shall keep accurate time records and make them available for inspection by the Union upon request so that there will be no misunderstanding about the employee's time. The Union consents to the continued use of the Employer's current timekeeping practices/system Prior to installing a new device or using such identifying measures to control admission to or exit from the premises or to record the time spent working by an employee the Employer shall discuss the new measure with the Union.

## ARTICLE 24
## ACCESS TO FACILITY

24.1 Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes and investigating working conditions; provided, however, that there is no interruption of the Employer's working schedule.

## ARTICLE 25
## SHIFT CHANGES

25.1 If the Employer has legitimate cause, it may change shifts provided that it provides employees with the required advance notice. Employees must receive seven (7) days' notice of a shift change. The layoff of an employee that does not result in a bump is not a shift change for purposes of this Article.

## ARTICLE 26
## PAYDAY

26.1 Payday shall be at least as often as biweekly (every two weeks). Employees must receive a paper or electronic paycheck; an Employer is prohibited from paying an employee in cash.

## ARTICLE 27
## MAINTENANCE OF BENEFITS

27.1   Employees covered by this Agreement receiving wages or conditions (excluding overtime) over and above those listed in this Agreement shall suffer no economic loss as the result of signing this Agreement or during the term of this Agreement. No employee covered by this Agreement shall receive less than the terms and conditions therein specified.

## ARTICLE 28
## INDIVIDUAL AGREEMENTS

28.1   There shall be no side deals or individual agreements whether orally or in writing between any Employer and employee or between Employers. No employee or Employer, either orally or in writing, shall enter into any agreement, contract, or arrangement covering any employment to which this Agreement applies which is contrary to or conflicting with the terms and conditions of this Agreement.

## ARTICLE 29
## NON-DISCRIMINATION

29.1   It is the policy of both the Employer and the Union to comply with all Federal and State Equal Employment Opportunity Laws and not to discriminate against any employee because of race, sex, color, religion, national origin, age, membership or non-membership in the Union, or any protected category.

## ARTICLE 30
## PENSION - UNFUNDED LIABILITY

30.1   Upon the request in writing from any Employer signatory hereto, addressed to the Benefit Funds, the Benefit Funds shall be required to furnish such Employer an annual statement for the most recent period available on the Employer's withdrawal liability, if any. It is agreed that such requests shall be limited to one (1) each year from each Employer.

## ARTICLE 31
## SHORTAGES

31.1   Employees shall be accountable for all receipts collected by them and responsible for their errors in the collection of parking tickets. Employers shall have the right to summarily dismiss an employee for stealing, misrepresentation of the receipts, or for failure to explain to the satisfaction of the Employer repeated errors in parking tickets, reports, and collections, except as set forth below.

31.2   Employees shall be informed of their shortages, if any, within thirty (30) days after discovery of the shortage, but in no event later than sixty (60) days after the shortage occurred. Shortages, if any, shall be recovered within two (2) pay periods after the employee is notified of the shortage, or longer if required by law.

31.3   In the event of shortages of $5.00 or more, the Employer will follow the progression of discipline set forth below when appropriate, subject to such facts as may be present in each case, and subject to the just cause requirement of the collective bargaining agreement:

## GUIDELINES

| CASHIER SHORTAGE OCCURRING IN A SINGLE TWELVE MONTH PERIOD | ACTION TO BE TAKEN GENERALLY APPLIED |
|---|---|
| 1st | Oral Warning |
| 2nd | Written Warning |
| 3rd | 3-Day Suspension without pay |
| 4th | Discharge |

31.4    It is understood that the foregoing constitute agreed-upon disciplinary guidelines. However, if unusual situations or extenuating circumstances are present, the situation may warrant consideration of deviation from the guidelines based upon all the facts available for review. Accordingly, these guidelines are intended to be used as a guide for the considered judgment of supervisory personnel who must in each case view all of the facts of an employee shortage in their proper context.

31.5    If the employee disagrees with the shortage charge, the matter may be processed through the grievance procedure.

## ARTICLE 32
## EMPLOYEE LIABILITY

32.1    Except as provided for in Article 31, no employee shall be held financially responsible for damages incurred in the performance of his or her daily duties.

32.2    No employee shall be charged for any insurance premiums or for any deductibles or costs (excluding Health & Welfare Insurance or claims) related to any insurance claim, or any other claim, of damage to person or property.

## ARTICLE 33
## LOSS OF OR CHANGE IN OWNERSHIP OR MANAGEMENT

33.1    In the event an Employer acquires, loses, closes, or anticipates losing a location which falls within the scope of this Agreement, the Employer will give the Union fifteen (15) days written notice, on the form provided by the Union, prior to the effective date thereof, or immediate written notice if the acquisition or loss is to take place in less than fifteen (15) days, and said Employer will meet at the Union's request before the acquisition or loss to discuss all matters pertinent to said acquisition or loss. At the time of location change, the former Employer shall pay out all wages and benefits owned under this Agreement, including accrued vacation, to all former employees, unless the former Employer operates a location with a "pass through" contractual provision.

33.2    Subject to the provisions herein, any employee who has continuously worked at a location for one hundred and eighty (180) days or more will be retained by the acquiring Employer when an Employer acquires a new location. The Employer losing the location will be obligated to retain all

other employees. Provided, however, that regardless of length of service at the location, the Employer losing the location upon notice by the acquiring Employer (said notice must be made within thirty (30) days of hire) shall retain any employee who was previously terminated by the acquiring Employer, if such termination was upheld through the Grievance and Arbitration Procedure, or the Union decided not to pursue such termination through the Grievance and Arbitration Procedure. Employees who do not respond to a second new hire notice by the acquiring Employer (sent five work days apart) within the time limits under Article 4 above shall be terminated and shall lose all rights under this Agreement. If an Employer losing a location makes a promise of employment in writing to any employee currently working at the location, the Employer shall be obligated to retain that employee. Full time Employees of the Employer losing the location who work less than 20 hours per week on average at the location being transitioned shall be retained by the Employer losing the location. Full time employees of the Employer losing the location who work 20 hours or more per week on average at the location being transitioned shall be retained by the acquiring Employer and shall be provided with a full time schedule which can be created by laying off a part time employee employed elsewhere.

33.3   Within fifteen (15) days of the loss of a location, the Employer who lost the location shall pay to employees who are retained by the acquiring Employer the value of all accrued vacation, accrued sick/personal days not taken and/or paid (unless the former Employer operates a location with a "pass through" contractual provision) and compensation earned under this Agreement.. In addition, the Employer who lost the location shall pay the respective Benefit Funds any amounts owed. The acquiring Employer (unless the location is a pass through location) shall provide said employees with corresponding time-off without pay which the employee may use by December 31st. Upon commencing employment with the acquiring Employer, employees shall be credited with all seniority, as described in Article 4, Section 4.1, as though there had not been an Employer change.

## ARTICLE 34
## CREDIT UNION

34.1   The Employer agrees to deduct from the employee's regular paycheck and forward to the credit union designated by the Union such sums as the employee may voluntarily decide to deposit. The employee will notify the Employer by written authorization of the amount to be deducted and deposited. Such deduction will be on a biweekly basis and forwarded to the credit union.

## ARTICLE 35
## DRIVE AUTHORIZATION AND DEDUCTION

35.1   The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his or her regular paycheck on a biweekly basis. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

## ARTICLE 36
## OPEN FULL-TIME POSITIONS

36.1   Any full-time positions that become open must be offered to part-time employees at that location as follows:

(a) Only part time employees who work at the location in which the full time position is available must be offered the position.

(b) These part time employees are to be offered the position in seniority order, starting with the part time employee with the most seniority.

(c) Such seniority is not length of time at the location, but rather Union seniority, as defined in Article 4, Section 4.1.

## ARTICLE 37
## LABOR MANAGEMENT COMMITTEE

37.1 The Employer agrees to contribute five dollars ($5.00) per month to the Parking Industry Labor Management Committee (PILMC) for each employee covered by this Agreement.

## ARTICLE 38
## LOCATION/FACILITY CLASSIFICATION

38.1 The parties recognize that it is necessary to classify locations/facilities for purposes of this Agreement and the Agreement applicable to valet service locations. All locations/facilities that are covered under these Agreements as of November 1, 2001 will retain their current classification. Any location/facility not covered by these Agreements as of November 1, 2001 will be classified by mutual agreement between the Employer and the Union using the following guidelines:

(a) Commercial: All locations in which fifty percent (50%) or more of the vehicles parked at the location belong to the general public are commercial locations. Commercial locations include locations with valet parking services where there is any parking spaces in the building where the location exists.

(b) Residential: All locations of employer members of ABOMA and all other locations in which more than fifty percent (50%) of the vehicles parked at the location belong to residents of the property are residential locations.

(c) Valet: All locations that strictly provide valet parking services without any physical parking facility are valet locations and are covered by the Agreement covering valet service locations.

38.2 The Employer and the Union agree that employees employed as bellmen or doormen will be covered under the classification for the location where they are employed.

38.3 Employees are permitted to work at multiple locations/facilities. While performing such work, employees shall be compensated for all hours worked at the location/facility under the Agreement covering that location/facility; provided, however, that where an Employer transfers an employee to another location/facility under the provisions of Article 18, such employee shall be paid the highest wage rate in effect under any of the Agreements the employee works under.

## ARTICLE 39
## TEAMSTERS-NATIONAL 401(K) SAVINGS PLAN

39.1 The Employer hereby agrees to participate in the Teamsters-National 401(k) Savings Plan ("the Plan") on behalf of all employees represented for purposes of collective bargaining under this Agreement. The Employer will make or cause to be made payroll deductions from participating

employees' wages, in accordance with each employee's salary deferral election subject to compliance with ERISA and the relevant tax code provisions. The Employer will forward withheld sums to the Plan at such time, in such form and manner as required pursuant to the Plan and Declaration of Trust (the "Trust"). The Employer will execute a Participation Agreement with the Union and the Trustees of the Plan evidencing employer participation the Plan effective prior to any employee deferral being received by the Plan. In addition, the Employer agrees to require the payroll system provide separate paycheck deductions so that the Plan may allow participant loans. The Employer further agrees, at such times as it is administratively feasible, to require the payroll system to provide separate paycheck deductions so that the Plan may allow after-tax contributions.

## ARTICLE 40
## MISCELLANEOUS

40.1    Once employed, no employee shall be required to take a polygraph, behavioral analysis, background check or other similar test.

40.2    Employees, except for porters, may not be required to perform janitorial services; however, in accordance with past practices, employees may be directed to clean immediate areas visible to customers as well as office.. Employees who are not classified as porters may not be required to clean restrooms, as the cleaning of rest rooms is not bargaining unit work.

40.3    An employee may not be discharged or disciplined because his/her earnings have been subjected to two (2) or less wage garnishment deduction orders within one (1) year.

40.4    Past practices regarding car washing will prevail at each location, except that an agreement must be reached with the Union regarding the wages, hours, terms and conditions of employment for such work in any one of the following circumstances:

    (a)    where the method of washing cars or the number of cars to be washed per shift or otherwise is to be substantially changed;

    (b)    instituting car washing at any location where cars have not been washed during the past twelve (12) months; or

    (c)    instituting car washing at new garages.

40.5    Drug and alcohol testing will only be permitted for probationary employees and reasonable suspicion under the terms and conditions of the Drug and Alcohol Policy and Testing Program agreed to by the Employer and the Union. An Employer acquiring a location pursuant to Article 33 (Change in Ownership or Management) shall have the right to perform one (1) Drug and Alcohol or Background test pursuant to the existing policy and practices within the acquiring employer's first thirty (30) days of employing acquired employee. Under these circumstances, an acquired employee's refusal to submit to the Drug and Alcohol or Background test shall result in termination of employment. Positive test results from the Drug and Alcohol test under these circumstances shall be handled in accordance with the terms of the existing policy and practices.

40.6    An Employer acquiring an location pursuant to Article 33 (Change in Ownership or Management) may conduct a Background check and refuse to employ an individual whose Background check under such circumstances reports the conviction of a Class 3 (or more serious) Felony. If the background check results in the refusal to employ the employee, the former employer is under no obligation to retain the employee, provided that the former employer can establish just cause that

it would not have otherwise retained the employee due to a violation of company policy to disclose a class 3 (or more serious) Felony.

40.7    On or after November 15, 2016 the Union agrees that in the event any agreement is executed by the Union with any other Parking Industry Employer which provides for a lower wage rate, reduced benefits, or changed working conditions than those provided in this Agreement, then the Employer may have such lower wage rates, or reduced benefits, or changed working conditions substituted in this Agreement. The Union shall provide advance, written notice to the Chicago Parking Association in the event it requests an exception to this provision for any newly organized Employer, or for any Employer who has not previously been signatory to an agreement with the Union. Upon receipt of such notice, the Chicago Parking Association agrees to designate representatives to meet and confer with the Union regarding this request. If the Chicago Parking Association does not respond, within seven (7) working days, to such a request by the Union, then the Union may enter into any such agreement without agreement from the Employer.

40.8    Members of ABOMA other than those listed in Schedule A who elect to adopt this Agreement shall notify ABOMA to that effect. Notice of election to adopt this Agreement shall be made by members of ABOMA in writing and ABOMA shall in turn notify the Union. Such notice shall state the name, and location of the building to which the election applies and the name of the Employer. If any building which is paying its employees who are covered by this Agreement wages higher than those provided in this Agreement shall desire to adopt this Agreement, it shall not reduce such higher wages during the term of this Agreement.

40.9    On the next scheduled pay period after separation of employment, an employee shall be paid all compensation owed including wages, accrued and unused vacation days, and accrued and unused sick/personal days, and applicable contributions will be made to the Teamsters Local 727 Health and Welfare, Pension and Legal and Educational Assistance Funds. This payment shall not constitute the basis for the obligation to make contributions to the Pension Plan beyond the employee's last day of active work.

40.10  Subject to Article 4 and 12 in the event a client or a governmental entity, imposes a qualification or certification standard e.g. vaccination, licensure, the completion of special training, or other requirement at a location, employees who fail to or refuse to meet that requirement will be laid off and placed on the recall list, *unless* at the time of layoff a vacancy exists for which the employee is qualified.

THIS AGREEMENT shall be binding upon and inure to the benefit of the parties hereto and their respective administrators, executors, successors, and assigns.

THIS AGREEMENT shall be constructed as divisible as to each Employer and the failure of any Employer to abide by the terms hereof shall not operate to terminate this Agreement as to any other Employer. No breach of this Agreement by any Employer shall operate to subject ABOMA or another Employer to any legal liability to the Union.

THIS AGREEMENT shall go into effect November 1, 2021, and shall continue in full force and effect until and including October 31, 2026, and shall continue thereafter on an annual basis from year to year unless written notice of desire to amend the Agreement is given by either party sixty (60) days prior to October 31, 2026, or sixty (60) days prior to October 31 of any subsequent year. Employer agrees that the Chicago Parking Association or ABOMA (if it is a member of ABOMA) shall bargain any successor Agreement on the Employer's behalf unless Employer provides written notice otherwise to the Union, the Chicago Parking Association, and ABOMA as appropriate sent via certified mail sixty (60) days prior to October 31, 2026, or sixty (60) days prior to October 31 of any subsequent year should this Agreement be extended.

EXECUTED at Chicago, Illinois, this 4th day of January , 2022.

FOR THE ASSOCIATION

Se, A POBrA.

FOR THE UNION

25

SCHEDULED A: The ABOMA Member Buildings (Employers) indicated below have notified ABOMA that they wish to be included into the collective bargaining labor agreement by and Between ABOMA and Teamsters Local Union No. 727 effective on November 1, 2021 and covering employees as define in Article 1 1.1 of the collective bargaining agreement. Report date 12/7/2021

| Building Name | Building Address | EIN |
|---|---|---|
| 1100 Lake Shore Drive Condo Assoc | 1100 North Lake Shore Drive | 36-2706360 |
| 1110 Lake Shore Apartments Homeowners Association | 1110 North Lake Shore Drive | 36-2706360 |
| 1300 Lake Shore Drive Condominium Association | 1300 N. Lake Shore Drive | 36-2802902 |
| 1420 Sheridan Road Condominium Corporation | 1420 Sheridan Road | 36-2695462 |
| 1550 Condominium Association | 1550 Lake Shore Drive | 36-2969127 |
| 1555 Astor Condominium Association | 1555 N. Astor Street | 36-2914087 |
| 1616 Condominium Association | 1616 Sheridan Road | 36-2729391 |
| 1700 East 56th Street Condominium | 1700 E. 56th Street | 36-3958004 |
| 200 East Delaware Condominium Association | 200 East Delaware | 36-2919061 |
| 2500 Lakeview Condominium Association | 2500 North Lakeview | 36-2806277 |
| 2909 Sheridan Condominium Homeowners Association | 2909 N. Sheridan Road | |
| 3150 Lake Shore Condominiums | 3150 N. Lake Shore Drive | 36-2948124 |
| 3180 Condominium Association | 3180 North Lake Shore Drive | 36-2808390 |
| 33 East Cedar Condominiums | 33 E. Cedar | 36-4066507 |
| 399 Corporation | 399 W. Fullerton Parkway | 36-2236866 |
| 555 Cornelia Condominium Association | 555 West Cornelia Avenue | 36-3091276 |
| 990 North Lake Shore Drive Condominium Association | 990 N. Lake Shore Drive | 23-7271481 |
| Carl Sandburg Village Condo Assn. #1(Cummings/Dickinson) | 1355 North Sandburg Terrace, | 36-3030049 |
| Drake Tower Apartments, Inc. | 179 East Lake Shore Drive | 36-2080979 |
| Faulkner House Condominium Association | 70 West Burton Place | 36-3055822 |
| Harbor House Condominiums | 3200 N. Lake Shore Drive | 36-2880374 |
| Horizon House Condominium Association | 5733 N. Sheridan Road | 36-2596126 |
| Lowell House Condominium Association | 88 West Schiller | 36-3055822 |
| Palmolive Building Condominium Association | 159 Walton Place | 20-3754457 |
| Park Astor Condominium Association | 1515 N. Astor | 36-4367429 |
| Park Tower Condominium Association | 5415 N. Sheridan Road | 36-3021311 |
| Sheridan Tower Condominiums | 2930 N. Sheridan Road | 26-0341852 |
| Shoreline Park | 4950 N. Marine | 36-4456917 |
| The Residences at RiverBend | 333 N. Canal Street | 36-4516292 |

29 Buildings

**Memorandum of Understanding With Respect to Collective Bargaining Agreement**

**by and Between ABOMA and Teamsters Local Union No. 727 effective on November 1, 2021 and covering employees as define in Article 1 1.1 of the collective bargaining agreement.**

**COVID-19 Vaccination Mandate**

Should an Employer mandate employees be vaccinated as a condition of being scheduled to work (subject to medical or good faith religious exemptions), in which case upon proof of vaccination the Employer shall pay the employee four (4) hours of pay per shot including a booster. Employees who refuse to be vaccinated shall be laid off.

The following stipend is only required if the Employer implements the above vaccine mandate. Full -time employees who have received a complete regimen of COVID vaccination shots by October 31, 2021, shall receive a cash stipend of $150.00 (a part time employee shall receive seventy-five dollars ($75.00)) upon submitting a copy of the Vaccination certification card issued by the vaccination site. Employees shall have until November 30, 2021, to submit their vaccination card or shall lose the right to receive this stipend.

**The Apartment Building Owners and Managers Association of Illinois ("ABOMA")**

By: _____

: _Sec. ABOMA_

Date: _12/21/2021_

**Teamsters Local Union No. 727**

By: _____

Title: _Secretary-Treasurer_

Date: _1 4 2022_

ABOMA BUILDINGS PARTICIPATING IN THE ABOMA/TEAMSTERS LOCAL 727 CBA ENDING 10/31/2021
Report updated: February 28, 2024

| ABOMA MEMBER # | Employer | Address | CITY | Zipcode |
|---|---|---|---|---|
| 228 | 1100 Lake Shore Drive Condo Assoc | 1100 North Lake Shore Drive | Chicago, IL | 60611 |
| 194 | 1110 Lake Shore Apartments Homeowners Association | 1110 North Lake Shore Drive | Chicago, IL | 60611 |
| 7209 | 1150 Lake Shore Drive Condominium | 1150 Norht Lake Shore Drive | Chicago, IL | 60611 |
| 7 | 1240 Lake Shore Drive | 1240 Lake Shore Drive | Chicago, IL | 60610 |
| 83 | 1300 Lake Shore Drive Condominium Association | 1300 N. Lake Shore Drive | Chicago, IL | 60610 |
| 233 | 1410 North State Parkway Condominium Association | 1410 N. State Parkway | Chicago, IL | 60610 |
| 477 | 1420 Sheridan Road Condominium Corporation | 1420 Sheridan Road | Wilmette, IL | 60091 |
| 11 | 1500 Lake Shore Drive Building Corporation | 1500 Lake Shore Drive | Chicago, IL | 60610 |
| 114 | 1550 Condominium Association | 1550 Lake Shore Drive | Chicago, IL | 60605 |
| 61 | 1555 Astor Condominium Association | 1555 N. Astor Street | Chicago, IL | 60610 |
| 55 | 1700 East 56th Street Condominium | 1700 E. 56th Street | Chicago, IL | 60637 |
| 138 | 200 East Delaware Condominium Association | 200 East Delaware | Chicago, IL | 60611 |
| 350 | 209 East Lake Shore Drive Corp. | 209 E. Lake Shore Drive | Chicago, IL | 60611 |
| 41 | 2400 North Lakeview Condominium Association | 2400 N. Lakeview | Chicago, IL | 60614 |
| 139 | 2500 Lakeview Condominium Association | 2500 North Lakeview | Chicago, IL | 60614 |
| 403 | 30 East Elm | 30 E. Elm | Chicago, IL | 60611 |
| 84 | 3150 Lake Shore Condominiums | 3150 N. Lake Shore Drive | Chicago, IL | 60657 |
| 100 | 3180 Condominium Association | 3180 North Lake Shore Drive | Chicago, IL | 60657 |
| 42 | 33 East Cedar Condominiums | 33 E. Cedar | Chicago, IL | 60611 |
| 245 | 3800 Lake Shore Drive Condominium Association | 3800 N. Lake Shore Drive | Chicago, IL | 60613 |
| 6 | 399 Corporation | 399 W. Fullerton Parkway | Chicago, IL | 60614 |
| 205 | 555 Cornelia Condominium Association | 555 West Cornelia Avenue | Chicago, IL | 60657 |
| 212 | 5757 N. Sheridan Road Condominium Association | 5757 N. Sheridan Road | Chicago, IL | 60626 |
| 29 | 777 Condominium Association | 777 N. Michigan Avenue | Chicago, IL | 60611 |
| 181 | 990 North Lake Shore Drive Home Owners Association | 990 N. Lake Shore Drive | Chicago, IL | 60611 |
| 89 | Carl Sandburg Village Condo Assn. #1(Cummings/Dickinson) | 1355 North Sandburg Terrace, Room 104 | Chicago, IL | 60610 |
| 146 | Drake Tower Apartments, Inc. | 179 East Lake Shore Drive | Chicago, IL | 60611 |
| 90 | Faulkner House Condominium Association | 70 West Burton Place | Chicago, IL | 60610 |
| 68 | Harbor House Condominiums | 3200 N. Lake Shore Drive | Chicago, IL | 60657 |
| 273 | Horizon House Condominium Association | 5733 N. Sheridan Road | Chicago, IL | 60660 |
| 94 | Lowell House Condominium Association | 88 West Schiller | Chicago, IL | 60610 |
| 309 | One East Schiller | 1 East Schiller Street | Chicago, IL | 60610 |
| 365 | Palmolive Building Condominium Association | 159 Walton Place | Chicago, IL | 60611 |
| 144 | Park Astor Condominium Association | 1515 N. Astor | Chicago, IL | 60610 |
| 169 | Park Tower Condominium Association | 5415 N. Sheridan Road | Chicago, IL | 60640 |
| 353 | Shoreline Park | 4950 N. Marine | Chicago, IL | 60640 |
| 81 | The 100 Bellevue Place Condominium Association | 100 E. Bellevue | Chicago, IL | 60611 |

37    BUILDINGS

<u>209 EAST LAKE SHORE DRIVE CORP</u>
<u>209 E. LAKE SHORE DRIVE</u>
<u>CHICAGO, IL 60611</u>


<u>MARCH 1, 2023 – FEBRUARY 28, 2025</u>

<u>209 EAST LAKE SHORE DRIVE CORP</u>

<u>CONTENTS</u>

AUDIT REPORT LETTER                                                  1

SUMMARY REPORT                                                      2

DETAILED CONTRIBUTION EXCEPTION REPORTS                      3 - 7

INTEREST SCHEDULE                                               8 - 13

# TEAMSTERS LOCAL UNION NO. 727 BENEFIT FUNDS

*1300 West Higgins Road, Suite 103, Park Ridge, Illinois 60068, Telephone 773-685-0340*

October 22, 2025

Board of Trustees
Teamsters Local 727 I.B. of T. Health and Welfare,
Pension and Legal and Educational Assistance Funds
1300 West Higgins Road, Suite 303
Park Ridge, IL 60068

We have applied certain procedures, as discussed below, to the payroll records of 209 Eat Lake Shore Drive Corp, a contributing employer to the Teamsters Local 727 I.B. of T. Health and Welfare, Pension and Legal and Educational Assistance Funds, for the period March 1, 2023 to February 28, 2025. The purpose of our review was to assist you in determining whether contributions to the Trust Funds are being made in accordance with the collective bargaining agreement in effect and with the Trust Agreement of the Fund. The propriety of the contributions is the responsibility of the employer's management.

Our procedures generally include a review of the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to Fund contribution records. The employer records we review may include payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, drivers logbooks, contracts and general disbursement records. The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Funds. Any compensation paid to employees not disclosed to us or made part of the written record is not determinable by us and is not included in our review.

The exceptions to employer contributions are noted on the accompanying report.

Teamsters 727 Benefit Funds



<u>209 EAST LAKE SHORE DRIVE CORP</u>

<u>CONTENTS</u>

AUDIT REPORT LETTER                                              1

SUMMARY REPORT                                                  2

DETAILED CONTRIBUTION EXCEPTION REPORTS                     3 - 7

INTEREST SCHEDULE                                          8 - 13

# Teamsters Local Union No. 727 Benefit Funds

## Reconciliation of Differences Per Year

| Fiscal Year Ending | 2-29 2024 | 2-28 2025 | Total Due |
|---|---|---|---|
| **Part-Time Commerical Employees** | | | |
| Welfare | 19.02 | 404.26 | 423.28 |
| Pension | 6.60 | 153.75 | 160.35 |
| Legal & Educational Assistance | 2.10 | 43.05 | 45.15 |
| Totals | 27.72 | 601.06 | 628.78 |
| | | | |
| **Full-Time Commercial Employees** | | | |
| Welfare | 3,296.16 | 3,546.50 | 6,842.66 |
| Pension | 1,143.78 | 1,269.40 | 2,413.18 |
| Legal & Educational Assistance | 363.94 | 363.85 | 727.79 |
| Totals | 4,803.88 | 5,179.75 | 9,983.63 |
| | | | |
| **Total Dollar Amount Due** | | | |
| Welfare | 3,315.18 | 3,950.76 | 7,265.94 |
| Pension | 1,150.38 | 1,423.15 | 2,573.53 |
| Legal & Educational Assistance | 366.04 | 406.90 | 772.94 |
| PILMC | - | - | - |
| Totals | 4,831.60 | 5,780.81 | 10,612.41 |

| | Welfare | Pension | L&E Assistance | PILMC | Total Due |
|---|---|---|---|---|---|
| Total Deficiencies | 7,265.94 | 2,573.53 | 772.94 | 0.00 | 10,612.41 |
| Liquidated Damages | 1,453.19 | 514.71 | 154.59 | 0.00 | 2,122.48 |
| Interest | 1,403.34 | 491.69 | 150.94 | 0.00 | 2,045.97 |
| Payroll Audit Fee | 1,007.40 | 350.40 | 87.60 | 14.60 | 1,460.00 |
| Totals | 11,129.87 | 3,930.33 | 1,166.07 | 14.60 | 16,240.86 |

**Employer Name -** 209 Lake Shore Drive       **Person Contacted -** Felicia Perkins

**Date of Audit -** N/A       **Telephone -** (312) 257-2402

**Audit Period -** March 1, 2023 - February 28, 2025       **Auditor -** Tom Marino

2

# Teamsters Local Union No. 727 Benefit Funds

**Reconciliation Between Actual and Reported Part-Time Commercial Employees**

**Part-Time  Employees With Incorrect Contributions**

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **2023** | | | | | | **2024** | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | - | - | - | - | | - | 2 | - | - | - | 2 |
| | Total | | - | - | - | - | - | - | - | - | 2 | - | - | - | 2 |

| | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | $9.51 | - | - | - | - | - | - | - | - | 19.02 | - | - | - | 19.02 |
| Pension | $3.30 | - | - | - | - | - | - | - | - | 6.60 | - | - | - | 6.60 |
| Legal & Educational Assistance | $1.05 | - | - | - | - | - | - | - | - | 2.10 | - | - | - | 2.10 |
| **Total** | | - | - | - | - | - | - | - | - | 19.02 | - | - | - | 19.02 |

## Totals for Year

| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | - | - | - | - | - | - | - | - | 19.02 | - | - | - | 19.02 |
| Pension | - | - | - | - | - | - | - | - | 6.60 | - | - | - | 6.60 |
| Legal & Educational Assistance | - | - | - | - | - | - | - | - | 2.10 | - | - | - | 2.10 |
| **Total** | - | - | - | - | - | - | - | - | 27.72 | - | - | - | 27.72 |

3

# Teamsters Local Union No. 727 Benefit Funds
**Reconciliation Between Actual and Reported Full-Time Commercial Employees**

**Full-Time Employees Without Contributions**

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2023 | | | | | | 2024 | | |
| xxx-xx-8573 | Woodson, Edward L. | | - | - | - | 1.00 | 1.00 | - | - | - | - | - | - | - | 2.00 |
| | Total | | - | - | - | 1.00 | 1.00 | - | - | - | - | - | - | - | 2.00 |

| | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | - | - | - | 1 | 1 | - | - | - | - | - | - | - | 2 |
| Health & Welfare | $1,648.08 | - | - | - | 1,648.08 | 1,648.08 | - | - | - | - | - | - | - | 3,296.16 |
| Pension | $571.89 | - | - | - | 571.89 | 571.89 | - | - | - | - | - | - | - | 1,143.78 |
| Legal & Educational Assistance | $181.97 | - | - | - | 181.97 | 181.97 | - | - | - | - | - | - | - | 363.94 |
| **Total** | | - | - | - | 1,466.11 | 1,466.11 | - | - | - | - | - | - | - | 2,932.22 |

## Totals for Year

| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | - | - | - | 1,648.08 | 1,648.08 | - | - | - | - | - | - | - | 3,296.16 |
| Pension | - | - | - | 571.89 | 571.89 | - | - | - | - | - | - | - | 1,143.78 |
| Legal & Educational Assistance | - | - | - | 181.97 | 181.97 | - | - | - | - | - | - | - | 363.94 |
| **Total** | - | - | - | 2,401.94 | 2,401.94 | - | - | - | - | - | - | - | 4,803.88 |

4

# Teamsters Local Union No. 727 Benefit Funds

**Reconciliation Between Actual and Reported Part-Time Commercial Employees**

**Part-Time  Employees With Incorrect Contributions**

| SS# | Name | Rate | 2024 Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2025 Jan | Feb | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N/A | 209 Lake Shore Drive | | - | - | | - | - | - | - | - | - | - | - | 29 | 29 |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | | - | - | - | - | - | - | 12 | - | - | 12 |
| | | Total | - | - | - | - | - | - | - | - | - | 12 | - | 29 | 41 |

Note: The deficiency noted above for 209 Lake Shore Drive is the result of the employer not reporting sufficient hours to staff the garage during the hours of operations.

| | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | $9.86 | - | - | - | - | - | - | - | - | - | 118.32 | - | 285.94 | 404.26 |
| Pension | $3.75 | - | - | - | - | - | - | - | - | - | 45.00 | - | 108.75 | 153.75 |
| Legal & Educational Assistance | $1.05 | - | - | - | - | - | - | - | - | - | 12.60 | - | 30.45 | 43.05 |
| **Total** | | - | - | - | - | - | - | - | - | - | 118.32 | - | 285.94 | 404.26 |

## Totals for Year

| | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | - | - | - | - | - | - | - | - | - | 118.32 | - | 285.94 | 404.26 |
| Pension | - | - | - | - | - | - | - | - | - | 45.00 | - | 108.75 | 153.75 |
| Legal & Educational Assistance | - | - | - | - | - | - | - | - | - | 12.60 | - | 30.45 | 43.05 |
| **Total** | - | - | - | - | - | - | - | - | - | 175.92 | - | 425.14 | 601.06 |

# Teamsters Local Union No. 727 Benefit Funds

**Reconciliation Between Actual and Reported Full-Time Commercial Employees**

### Full-Time Employees With Part-Time Contributions to Welfare

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2024 | | | | | | 2025 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | 1,114.76 | - | 1,114.76 | 922.56 | 922.56 | 922.56 | - | - | - | - | 4,997.20 |
| | Total | | - | - | 1,114.76 | - | 1,114.76 | 922.56 | 922.56 | 922.56 | - | - | - | - | 4,997.20 |

Note: Amount Due = Full-Time Rate - Amount Contributed

| | | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | | - | - | 1 | - | 1 | 1 | 1 | 1 | - | - | - | - | 5 |
| Welfare Due | $1,708.74 | | - | - | 1,708.74 | - | 1,708.74 | 1,708.74 | 1,708.74 | 1,708.74 | - | - | - | - | 8,543.70 |
| Less Welfare Due | | | - | - | 1,114.76 | - | 1,114.76 | 922.56 | 922.56 | 922.56 | - | - | - | - | 4,997.20 |
| **Total** | | | - | - | 593.98 | - | 593.98 | 786.18 | 786.18 | 786.18 | - | - | - | - | 3,546.50 |

### Full-Time Employees With Part-Time Contributions to Pension

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2024 | | | | | | 2025 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | 471.60 | - | 471.60 | 345.60 | 345.60 | 345.60 | - | - | - | - | 1,980.00 |
| | Total | | - | - | 471.60 | - | 471.60 | 345.60 | 345.60 | 345.60 | - | - | - | - | 1,980.00 |

Note: Amount Due = Full-Time Rate - Amount Contributed

| | | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | | - | - | 1 | - | 1 | 1 | 1 | 1 | - | - | - | - | 5 |
| FT Pension Rate | $649.88 | | - | - | 649.88 | - | 649.88 | 649.88 | 649.88 | 649.88 | - | - | - | - | 3,249.40 |
| Less Pension Due | | | - | - | 471.60 | - | 471.60 | 345.60 | 345.60 | 345.60 | - | - | - | - | 1,980.00 |
| **Total** | | | - | - | 178.28 | - | 178.28 | 304.28 | 304.28 | 304.28 | - | - | - | - | 1,269.40 |

### Full-Time Employees With Part-Time Contributions to L/E

| SS# | Name | Rate | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2024 | | | | | | 2025 | | |
| xxx-xx-6010 | Aguilar, Aaron | | - | - | 121.80 | - | 121.80 | 100.80 | 100.80 | 100.80 | - | - | - | - | 546.00 |
| | Total | | - | - | 121.80 | - | 121.80 | 100.80 | 100.80 | 100.80 | - | - | - | - | 546.00 |

Note: Amount Due = Full-Time Rate - Amount Contributed

| | | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employees Due | | | - | - | 1 | - | 1 | 1 | 1 | 1 | - | - | - | - | 5 |
| FT L/E Rate | $181.97 | | - | - | 181.97 | - | 181.97 | 181.97 | 181.97 | 181.97 | - | - | - | - | 909.85 |
| Less L/E Due | | | - | - | 121.80 | - | 121.80 | 100.80 | 100.80 | 100.80 | - | - | - | - | 546.00 |
| **Total** | | | - | - | 60.17 | - | 60.17 | 81.17 | 81.17 | 81.17 | - | - | - | - | 363.85 |

## Totals for Year

| | | | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Health & Welfare | | | - | - | 593.98 | - | 593.98 | 786.18 | 786.18 | 786.18 | - | - | - | - | 3,546.50 |
| Pension | | | - | - | 178.28 | - | 178.28 | 304.28 | 304.28 | 304.28 | - | - | - | - | 1,269.40 |
| Legal & Educational Assistance | | | - | - | 60.17 | - | 60.17 | 81.17 | 81.17 | 81.17 | - | - | - | - | 363.85 |
| **Total** | | | - | - | 832.43 | - | 832.43 | 1,171.63 | 1,171.63 | 1,171.63 | - | - | - | - | 5,179.75 |

# Teamsters Local Union No. 727 Benefit Funds

### Reconciliation Between Actual and Reported Contributions - PILMC

| | Rate | 2023 Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2024 Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total # of Employees Working | | 6 | 6 | 6 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 67 |
| Total # of Employees Contributed | | 6 | 6 | 6 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 67 |
| Total # of Employees Owed | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Contributions Due | $4.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Rate | 2024 Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2025 Jan | Feb | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total # of Employees Working | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 4 | 70 |
| Total # of Employees Contributed | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 4 | 70 |
| Total # of Employees Owed | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Contributions Due | $4.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

8

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - HEALTH & WELFARE FUND

EMPLOYER:      209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 1648.08 | 9.25% | 12.70 | 1660.78 |
| Jul | 1660.78 | 1648.08 | 9.25% | 25.51 | 3334.37 |
| Aug | 3334.37 | 0.00 | 9.50% | 26.40 | 3360.77 |
| Sep | 3360.77 | 0.00 | 9.50% | 26.61 | 3387.37 |
| Oct | 3387.37 | 0.00 | 9.50% | 26.82 | 3414.19 |
| Nov | 3414.19 | 19.02 | 9.50% | 27.18 | 3460.39 |
| Dec | 3460.39 | 0.00 | 9.50% | 27.39 | 3487.78 |
| Jan | 3487.78 | 0.00 | 9.50% | 27.61 | 3515.40 |
| Feb | 3515.40 | 0.00 | 9.50% | 27.83 | 3543.23 |
| Total | | 3315.18 | | 228.05 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 3543.23 |
| Mar | 3543.23 | 0.00 | 9.50% | 28.05 | 3571.28 |
| Apr | 3571.28 | 0.00 | 9.50% | 28.27 | 3599.55 |
| May | 3599.55 | 593.98 | 9.50% | 33.20 | 4226.73 |
| Jun | 4226.73 | 0.00 | 9.50% | 33.46 | 4260.19 |
| Jul | 4260.19 | 593.98 | 9.50% | 38.43 | 4892.60 |
| Aug | 4892.60 | 786.18 | 9.50% | 44.96 | 5723.74 |
| Sep | 5723.74 | 786.18 | 9.50% | 51.54 | 6561.45 |
| Oct | 6561.45 | 786.18 | 9.00% | 55.11 | 7402.74 |
| Nov | 7402.74 | 0.00 | 9.00% | 55.52 | 7458.26 |
| Dec | 7458.26 | 118.32 | 8.75% | 55.25 | 7631.83 |
| Jan | 7631.83 | 0.00 | 8.50% | 54.06 | 7685.88 |
| Feb | 7685.88 | 285.94 | 8.50% | 56.47 | 8028.29 |
| Total | | 3950.76 | | 534.31 | |

9

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - HEALTH & WELFARE FUND

EMPLOYER: 209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 8028.29 |
| Mar | 8028.29 | 0.00 | 8.50% | 56.87 | 8085.16 |
| Apr | 8085.16 | 0.00 | 8.50% | 57.27 | 8142.43 |
| May | 8142.43 | 0.00 | 8.50% | 57.68 | 8200.10 |
| Jun | 8200.10 | 0.00 | 8.50% | 58.08 | 8258.19 |
| Jul | 8258.19 | 0.00 | 8.50% | 58.50 | 8316.68 |
| Aug | 8316.68 | 0.00 | 8.50% | 58.91 | 8375.59 |
| Sep | 8375.59 | 0.00 | 8.50% | 59.33 | 8434.92 |
| Oct | 8434.92 | 0.00 | 8.25% | 57.99 | 8492.91 |
| Nov | 8492.91 | 0.00 | 8.25% | 58.39 | 8551.30 |
| Dec | 8551.30 | 0.00 | 8.25% | 58.79 | 8610.09 |
| Jan | 8610.09 | 0.00 | 8.25% | 59.19 | 8669.28 |
| Feb | 8669.28 | 0.00 | 0.00% | 0.00 | 8669.28 |
| Total | | 0.00 | | 640.99 | |

| Totals | | 7265.94 | | 1403.34 | |

10

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - PENSION FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 571.89 | 9.25% | 4.41 | 576.30 |
| Jul | 576.30 | 571.89 | 9.25% | 8.85 | 1157.04 |
| Aug | 1157.04 | 0.00 | 9.50% | 9.16 | 1166.20 |
| Sep | 1166.20 | 0.00 | 9.50% | 9.23 | 1175.43 |
| Oct | 1175.43 | 0.00 | 9.50% | 9.31 | 1184.74 |
| Nov | 1184.74 | 6.60 | 9.50% | 9.43 | 1200.77 |
| Dec | 1200.77 | 0.00 | 9.50% | 9.51 | 1210.27 |
| Jan | 1210.27 | 0.00 | 9.50% | 9.58 | 1219.86 |
| Feb | 1219.86 | 0.00 | 9.50% | 9.66 | 1229.51 |
| Total | | 1150.38 | | 79.13 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 1229.51 |
| Mar | 1229.51 | 0.00 | 9.50% | 9.73 | 1239.25 |
| Apr | 1239.25 | 0.00 | 9.50% | 9.81 | 1249.06 |
| May | 1249.06 | 178.28 | 9.50% | 11.30 | 1438.64 |
| Jun | 1438.64 | 0.00 | 9.50% | 11.39 | 1450.03 |
| Jul | 1450.03 | 178.28 | 9.50% | 12.89 | 1641.20 |
| Aug | 1641.20 | 304.28 | 9.50% | 15.40 | 1960.88 |
| Sep | 1960.88 | 304.28 | 9.50% | 17.93 | 2283.09 |
| Oct | 2283.09 | 304.28 | 9.00% | 19.41 | 2606.78 |
| Nov | 2606.78 | 0.00 | 9.00% | 19.55 | 2626.33 |
| Dec | 2626.33 | 45.00 | 8.75% | 19.48 | 2690.81 |
| Jan | 2690.81 | 0.00 | 8.50% | 19.06 | 2709.87 |
| Feb | 2709.87 | 108.75 | 8.50% | 19.97 | 2838.58 |
| Total | | 1423.15 | | 185.92 | |

11

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - PENSION FUND

EMPLOYER:      209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/29/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 2838.58 |
| Mar | 2838.58 | 0.00 | 8.50% | 20.11 | 2858.69 |
| Apr | 2858.69 | 0.00 | 8.50% | 20.25 | 2878.94 |
| May | 2878.94 | 0.00 | 8.50% | 20.39 | 2899.33 |
| Jun | 2899.33 | 0.00 | 8.50% | 20.54 | 2919.87 |
| Jul | 2919.87 | 0.00 | 8.50% | 20.68 | 2940.55 |
| Aug | 2940.55 | 0.00 | 8.50% | 20.83 | 2961.38 |
| Sep | 2961.38 | 0.00 | 8.50% | 20.98 | 2982.35 |
| Oct | 2982.35 | 0.00 | 8.25% | 20.50 | 3002.86 |
| Nov | 3002.86 | 0.00 | 8.25% | 20.64 | 3023.50 |
| Dec | 3023.50 | 0.00 | 8.25% | 20.79 | 3044.29 |
| Jan | 3044.29 | 0.00 | 8.25% | 20.93 | 3065.22 |
| Feb | 3065.22 | 0.00 | 0.00% | 0.00 | 3065.22 |
| Total | | 0.00 | | 226.64 | |

| Totals | | 2573.53 | | 491.69 | |

12

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - LEGAL AND EDUCATIONAL ASSISTANCE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 181.97 | 9.25% | 1.40 | 183.37 |
| Jul | 183.37 | 181.97 | 9.25% | 2.82 | 368.16 |
| Aug | 368.16 | 0.00 | 9.50% | 2.91 | 371.07 |
| Sep | 371.07 | 0.00 | 9.50% | 2.94 | 374.01 |
| Oct | 374.01 | 0.00 | 9.50% | 2.96 | 376.97 |
| Nov | 376.97 | 2.10 | 9.50% | 3.00 | 382.07 |
| Dec | 382.07 | 0.00 | 9.50% | 3.02 | 385.10 |
| Jan | 385.10 | 0.00 | 9.50% | 3.05 | 388.15 |
| Feb | 388.15 | 0.00 | 9.50% | 3.07 | 391.22 |
| Total | | 366.04 | | 25.18 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 391.22 |
| Mar | 391.22 | 0.00 | 9.50% | 3.10 | 394.32 |
| Apr | 394.32 | 0.00 | 9.50% | 3.12 | 397.44 |
| May | 397.44 | 60.17 | 9.50% | 3.62 | 461.23 |
| Jun | 461.23 | 0.00 | 9.50% | 3.65 | 464.88 |
| Jul | 464.88 | 60.17 | 9.50% | 4.16 | 529.21 |
| Aug | 529.21 | 81.17 | 9.50% | 4.83 | 615.21 |
| Sep | 615.21 | 81.17 | 9.50% | 5.51 | 701.89 |
| Oct | 701.89 | 81.17 | 9.00% | 5.87 | 788.94 |
| Nov | 788.94 | 0.00 | 9.00% | 5.92 | 794.85 |
| Dec | 794.85 | 12.60 | 8.75% | 5.89 | 813.34 |
| Jan | 813.34 | 0.00 | 8.50% | 5.76 | 819.10 |
| Feb | 819.10 | 30.45 | 8.50% | 6.02 | 855.57 |
| Total | | 406.90 | | 57.45 | |

13

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - LEGAL AND EDUCATIONAL ASSISTANCE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/29/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 855.57 |
| Mar | 855.57 | 0.00 | 8.50% | 6.06 | 861.63 |
| Apr | 861.63 | 0.00 | 8.50% | 6.10 | 867.73 |
| May | 867.73 | 0.00 | 8.50% | 6.15 | 873.88 |
| Jun | 873.88 | 0.00 | 8.50% | 6.19 | 880.07 |
| Jul | 880.07 | 0.00 | 8.50% | 6.23 | 886.30 |
| Aug | 886.30 | 0.00 | 8.50% | 6.28 | 892.58 |
| Sep | 892.58 | 0.00 | 8.50% | 6.32 | 898.90 |
| Oct | 898.90 | 0.00 | 8.25% | 6.18 | 905.08 |
| Nov | 905.08 | 0.00 | 8.25% | 6.22 | 911.31 |
| Dec | 911.31 | 0.00 | 8.25% | 6.27 | 917.57 |
| Jan | 917.57 | 0.00 | 8.25% | 6.31 | 923.88 |
| Feb | 923.88 | 0.00 | 0.00% | 0.00 | 923.88 |
| Total | | 0.00 | | 68.31 | |

| Totals | | 772.94 | | 150.94 | |

# Teamsters Local Union No. 727 Benefit Funds
## <u>Reconciliation of Differences Per Year</u>

| Fiscal Year Ending | 2-29 2024 | 2-28 2025 | Total Due |
|---|---|---|---|
| **Part-Time Commerical Employees** | | | |
| Welfare | 19.02 | 404.26 | 423.28 |
| Pension | 6.60 | 153.75 | 160.35 |
| Legal & Educational Assistance | 2.10 | 43.05 | 45.15 |
| Totals | 27.72 | 601.06 | 628.78 |
| **Full-Time Commercial Employees** | | | |
| Welfare | 3,296.16 | 3,546.50 | 6,842.66 |
| Pension | 1,143.78 | 1,269.40 | 2,413.18 |
| Legal & Educational Assistance | 363.94 | 363.85 | 727.79 |
| Totals | 4,803.88 | 5,179.75 | 9,983.63 |
| **Total Dollar Amount Due** | | | |
| Welfare | 3,315.18 | 3,950.76 | 7,265.94 |
| Pension | 1,150.38 | 1,423.15 | 2,573.53 |
| Legal & Educational Assistance | 366.04 | 406.90 | 772.94 |
| PILMC | - | - | - |
| Totals | 4,831.60 | 5,780.81 | 10,612.41 |

| | Welfare | Pension | L&E Assistance | PILMC | Total Due |
|---|---|---|---|---|---|
| Total Deficiencies | 7,265.94 | 2,573.53 | 772.94 | 0.00 | 10,612.41 |
| Liquidated Damages | 1,453.19 | 514.71 | 154.59 | 0.00 | 2,122.48 |
| Interest | 1,564.36 | 548.62 | 168.10 | 0.00 | 2,281.08 |
| Payroll Audit Fee | 1,007.40 | 350.40 | 87.60 | 14.60 | 1,460.00 |
| Totals | 11,290.89 | 3,987.26 | 1,183.23 | 14.60 | 16,475.97 |

**Employer Name -** 209 Lake Shore Drive      **Person Contacted -** Felicia Perkins

**Date of Audit -** N/A      **Telephone -** (312) 257-2402

**Audit Period -** March 1, 2023 - February 28, 2025      **Auditor -** Tom Marino

8

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - HEALTH & WELFARE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 1648.08 | 9.25% | 12.70 | 1660.78 |
| Jul | 1660.78 | 1648.08 | 9.25% | 25.51 | 3334.37 |
| Aug | 3334.37 | 0.00 | 9.50% | 26.40 | 3360.77 |
| Sep | 3360.77 | 0.00 | 9.50% | 26.61 | 3387.37 |
| Oct | 3387.37 | 0.00 | 9.50% | 26.82 | 3414.19 |
| Nov | 3414.19 | 19.02 | 9.50% | 27.18 | 3460.39 |
| Dec | 3460.39 | 0.00 | 9.50% | 27.39 | 3487.78 |
| Jan | 3487.78 | 0.00 | 9.50% | 27.61 | 3515.40 |
| Feb | 3515.40 | 0.00 | 9.50% | 27.83 | 3543.23 |
| Total | | 3315.18 | | 228.05 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 3543.23 |
| Mar | 3543.23 | 0.00 | 9.50% | 28.05 | 3571.28 |
| Apr | 3571.28 | 0.00 | 9.50% | 28.27 | 3599.55 |
| May | 3599.55 | 593.98 | 9.50% | 33.20 | 4226.73 |
| Jun | 4226.73 | 0.00 | 9.50% | 33.46 | 4260.19 |
| Jul | 4260.19 | 593.98 | 9.50% | 38.43 | 4892.60 |
| Aug | 4892.60 | 786.18 | 9.50% | 44.96 | 5723.74 |
| Sep | 5723.74 | 786.18 | 9.50% | 51.54 | 6561.45 |
| Oct | 6561.45 | 786.18 | 9.00% | 55.11 | 7402.74 |
| Nov | 7402.74 | 0.00 | 9.00% | 55.52 | 7458.26 |
| Dec | 7458.26 | 118.32 | 8.75% | 55.25 | 7631.83 |
| Jan | 7631.83 | 0.00 | 8.50% | 54.06 | 7685.88 |
| Feb | 7685.88 | 285.94 | 8.50% | 56.47 | 8028.29 |
| Total | | 3950.76 | | 534.31 | |

9

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - HEALTH & WELFARE FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 8028.29 |
| Mar | 8028.29 | 0.00 | 8.50% | 56.87 | 8085.16 |
| Apr | 8085.16 | 0.00 | 8.50% | 57.27 | 8142.43 |
| May | 8142.43 | 0.00 | 8.50% | 57.68 | 8200.10 |
| Jun | 8200.10 | 0.00 | 8.50% | 58.08 | 8258.19 |
| Jul | 8258.19 | 0.00 | 8.50% | 58.50 | 8316.68 |
| Aug | 8316.68 | 0.00 | 8.50% | 58.91 | 8375.59 |
| Sep | 8375.59 | 0.00 | 8.50% | 59.33 | 8434.92 |
| Oct | 8434.92 | 0.00 | 8.25% | 57.99 | 8492.91 |
| Nov | 8492.91 | 0.00 | 8.00% | 56.62 | 8549.53 |
| Dec | 8549.53 | 0.00 | 8.00% | 57.00 | 8606.53 |
| Jan | 8606.53 | 0.00 | 7.75% | 55.58 | 8662.11 |
| Feb | 8662.11 | 0.00 | 7.75% | 55.94 | 8718.05 |
| Total | | 0.00 | | 689.76 | |

| Y/E 2/28/2027 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 8662.11 |
| Mar | 8662.11 | 0.00 | 7.75% | 55.94 | 8718.05 |
| Apr | 8718.05 | 0.00 | 7.75% | 56.30 | 8774.36 |
| May | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Jun | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Jul | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Aug | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Sep | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Oct | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Nov | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Dec | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Jan | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Feb | 8774.36 | 0.00 | 0.00% | 0.00 | 8774.36 |
| Total | | 0.00 | | 112.25 | |

| Totals | | 7265.94 | | 1564.36 | |

10

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - PENSION FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 571.89 | 9.25% | 4.41 | 576.30 |
| Jul | 576.30 | 571.89 | 9.25% | 8.85 | 1157.04 |
| Aug | 1157.04 | 0.00 | 9.50% | 9.16 | 1166.20 |
| Sep | 1166.20 | 0.00 | 9.50% | 9.23 | 1175.43 |
| Oct | 1175.43 | 0.00 | 9.50% | 9.31 | 1184.74 |
| Nov | 1184.74 | 6.60 | 9.50% | 9.43 | 1200.77 |
| Dec | 1200.77 | 0.00 | 9.50% | 9.51 | 1210.27 |
| Jan | 1210.27 | 0.00 | 9.50% | 9.58 | 1219.86 |
| Feb | 1219.86 | 0.00 | 9.50% | 9.66 | 1229.51 |
| Total | | 1150.38 | | 79.13 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 1229.51 |
| Mar | 1229.51 | 0.00 | 9.50% | 9.73 | 1239.25 |
| Apr | 1239.25 | 0.00 | 9.50% | 9.81 | 1249.06 |
| May | 1249.06 | 178.28 | 9.50% | 11.30 | 1438.64 |
| Jun | 1438.64 | 0.00 | 9.50% | 11.39 | 1450.03 |
| Jul | 1450.03 | 178.28 | 9.50% | 12.89 | 1641.20 |
| Aug | 1641.20 | 304.28 | 9.50% | 15.40 | 1960.88 |
| Sep | 1960.88 | 304.28 | 9.50% | 17.93 | 2283.09 |
| Oct | 2283.09 | 304.28 | 9.00% | 19.41 | 2606.78 |
| Nov | 2606.78 | 0.00 | 9.00% | 19.55 | 2626.33 |
| Dec | 2626.33 | 45.00 | 8.75% | 19.48 | 2690.81 |
| Jan | 2690.81 | 0.00 | 8.50% | 19.06 | 2709.87 |
| Feb | 2709.87 | 108.75 | 8.50% | 19.97 | 2838.58 |
| Total | | 1423.15 | | 185.92 | |

11

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - PENSION FUND

EMPLOYER:     209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/29/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 2838.58 |
| Mar | 2838.58 | 0.00 | 8.50% | 20.11 | 2858.69 |
| Apr | 2858.69 | 0.00 | 8.50% | 20.25 | 2878.94 |
| May | 2878.94 | 0.00 | 8.50% | 20.39 | 2899.33 |
| Jun | 2899.33 | 0.00 | 8.50% | 20.54 | 2919.87 |
| Jul | 2919.87 | 0.00 | 8.50% | 20.68 | 2940.55 |
| Aug | 2940.55 | 0.00 | 8.50% | 20.83 | 2961.38 |
| Sep | 2961.38 | 0.00 | 8.50% | 20.98 | 2982.35 |
| Oct | 2982.35 | 0.00 | 8.25% | 20.50 | 3002.86 |
| Nov | 3002.86 | 0.00 | 8.00% | 20.02 | 3022.88 |
| Dec | 3022.88 | 0.00 | 8.00% | 20.15 | 3043.03 |
| Jan | 3043.03 | 0.00 | 7.75% | 19.65 | 3062.68 |
| Feb | 3062.68 | 0.00 | 7.75% | 19.78 | 3082.46 |
| Total | | 0.00 | | 243.88 | |

| Y/E 2/28/2027 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 3062.68 |
| Mar | 3062.68 | 0.00 | 7.75% | 19.78 | 3082.46 |
| Apr | 3082.46 | 0.00 | 7.75% | 19.91 | 3102.37 |
| May | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Jun | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Jul | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Aug | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Sep | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Oct | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Nov | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Dec | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Jan | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Feb | 3102.37 | 0.00 | 0.00% | 0.00 | 3102.37 |
| Total | | 0.00 | | 39.69 | |

| Totals | | 2573.53 | | 548.62 | |

12

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - LEGAL AND EDUCATIONAL ASSISTANCE FUND

EMPLOYER:      209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/28/2024 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 0.00 |
| Mar | 0.00 | 0.00 | 8.75% | 0.00 | 0.00 |
| Apr | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| May | 0.00 | 0.00 | 9.00% | 0.00 | 0.00 |
| Jun | 0.00 | 181.97 | 9.25% | 1.40 | 183.37 |
| Jul | 183.37 | 181.97 | 9.25% | 2.82 | 368.16 |
| Aug | 368.16 | 0.00 | 9.50% | 2.91 | 371.07 |
| Sep | 371.07 | 0.00 | 9.50% | 2.94 | 374.01 |
| Oct | 374.01 | 0.00 | 9.50% | 2.96 | 376.97 |
| Nov | 376.97 | 2.10 | 9.50% | 3.00 | 382.07 |
| Dec | 382.07 | 0.00 | 9.50% | 3.02 | 385.10 |
| Jan | 385.10 | 0.00 | 9.50% | 3.05 | 388.15 |
| Feb | 388.15 | 0.00 | 9.50% | 3.07 | 391.22 |
| Total | | 366.04 | | 25.18 | |

| Y/E 2/28/2025 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 391.22 |
| Mar | 391.22 | 0.00 | 9.50% | 3.10 | 394.32 |
| Apr | 394.32 | 0.00 | 9.50% | 3.12 | 397.44 |
| May | 397.44 | 60.17 | 9.50% | 3.62 | 461.23 |
| Jun | 461.23 | 0.00 | 9.50% | 3.65 | 464.88 |
| Jul | 464.88 | 60.17 | 9.50% | 4.16 | 529.21 |
| Aug | 529.21 | 81.17 | 9.50% | 4.83 | 615.21 |
| Sep | 615.21 | 81.17 | 9.50% | 5.51 | 701.89 |
| Oct | 701.89 | 81.17 | 9.00% | 5.87 | 788.94 |
| Nov | 788.94 | 0.00 | 9.00% | 5.92 | 794.85 |
| Dec | 794.85 | 12.60 | 8.75% | 5.89 | 813.34 |
| Jan | 813.34 | 0.00 | 8.50% | 5.76 | 819.10 |
| Feb | 819.10 | 30.45 | 8.50% | 6.02 | 855.57 |
| Total | | 406.90 | | 57.45 | |

13

SCHEDULE OF COMPOUND INTEREST
TEAMSTERS LOCAL UNION 727 - LEGAL AND EDUCATIONAL ASSISTANCE FUND

EMPLOYER: 209 EAST LAKE SHORE DRIVE CORP

| Y/E 2/29/2026 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 855.57 |
| Mar | 855.57 | 0.00 | 8.50% | 6.06 | 861.63 |
| Apr | 861.63 | 0.00 | 8.50% | 6.10 | 867.73 |
| May | 867.73 | 0.00 | 8.50% | 6.15 | 873.88 |
| Jun | 873.88 | 0.00 | 8.50% | 6.19 | 880.07 |
| Jul | 880.07 | 0.00 | 8.50% | 6.23 | 886.30 |
| Aug | 886.30 | 0.00 | 8.50% | 6.28 | 892.58 |
| Sep | 892.58 | 0.00 | 8.50% | 6.32 | 898.90 |
| Oct | 898.90 | 0.00 | 8.25% | 6.18 | 905.08 |
| Nov | 905.08 | 0.00 | 8.00% | 6.03 | 911.12 |
| Dec | 911.12 | 0.00 | 8.00% | 6.07 | 917.19 |
| Jan | 917.19 | 0.00 | 7.75% | 5.92 | 923.12 |
| Feb | 923.12 | 0.00 | 7.75% | 5.96 | 929.08 |
| Total | | 0.00 | | 73.51 | |

| Y/E 2/28/2027 | Beginning Balance | Discrepancies | Rate | Interest | Ending Balance |
|---|---|---|---|---|---|
| Beginning Balance | | | | | 923.12 |
| Mar | 923.12 | 0.00 | 7.75% | 5.96 | 929.08 |
| Apr | 929.08 | 0.00 | 7.75% | 6.00 | 935.08 |
| May | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Jun | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Jul | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Aug | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Sep | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Oct | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Nov | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Dec | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Jan | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Feb | 935.08 | 0.00 | 0.00% | 0.00 | 935.08 |
| Total | | 0.00 | | 11.96 | |

| Totals | | 772.94 | | 168.10 | |